UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATSY'S BRAND, INC., <br><br> *Plaintiff,* <br><br> *v.* <br><br> I.O.B REALTY, INC., PATSY'S INC., FRANK BRIJA, JOHN BRECEVICH, and NICK TSOULOS, <br><br> *Defendants.* | Civil Action No. <br><br> 99-cv-10175 (KMW) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION TO HOLD DEFENDANTS IN CIVIL CONTEMPT OF COURT FOR FAILURE TO COMPLY WITH PERMANENT INJUNCTION ORDER**

Joel G. MacMull
**MANDELBAUM SALSBURG, P.C.**
1270 Avenue of the Americas,
Suite 1808
New York, NY 10020
Tel. (212) 776-1834
jmacmull@lawfirm.ms

*Attorneys for Plaintiff*
*Patsy's Brand, Inc.*

## INTRODUCTION

For nearly two decades, defendants I.O.B Realty, Inc. and Isa "Frank" Brija (collectively, "Defendants") have engaged in a long-running, pernicious campaign to trade on the good will and valuable business reputation of plaintiff, Patsy's Brand, Inc. ("Patsy's Brand"). Defendants have continued to do so in the wake of adverse summary judgment rulings, a permanent injunction, and two prior determinations by this Court finding them in contempt of Court.

As shown below and in the accompanying declarations of Salvatore Scognamillo ("Scognamillo Decl.") and Joel G. MacMull ("MacMull Decl."), Defendants are continuing to engage in commercial activities in violation of the permanent injunction order previously entered by the Honorable John S. Martin, U.S.D.J., on April 17, 2001, as modified by the Second Circuit in 2003 (the "Injunction"). Consequently, in light of the Defendants' continued intransigence and obvious disrespect for the authority of this Court and rule of law, Patsy's Brand respectfully requests the Court once again hold Defendants in civil contempt for repeatedly and continuously violating the Injunction.

## STATEMENT OF FACTS

In order to avoid repetition of the salient facts and procedural history relevant to the relief requested herein, the Court is respectfully referred to the accompanying Scognamillo Decl. and MacMull Decl., which are herein incorporated by reference.

## ARGUMENT

I.     <u>A CIVIL CONTEMPT ORDER IS WARRANTED</u>

A district court has the authority to enforce its own orders. *See In re Debs*, 158 U.S. 564, 594 (1895) ("[T]he power of a court to make an order carries with it equal power to punish for a disobedience of that order"); *accord Shilitani v. United States*, 384 U.S. 364, 369-70 (1966)

1

(explaining courts have "inherent power to enforce compliance with their lawful orders" through contempt proceedings); *see also In re Lafayette Radio Elec. Corp.*, 761 F.2d 84, 93 (2d Cir. 1985) (explaining that a court's jurisdiction to enforce its own orders "is recognized as part of [the] court's inherent power to prevent its judgments and orders from being ignored or avoided with impunity"). As a party to the original action, Patsy's Brand may invoke the Court's enforcement power by initiating a proceeding for civil contempt in the same action. *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 444-45 (1911).

A finding of civil contempt is proper if "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedic Electromedia Comercial, LTDA v. GE Medical Sys. Information Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004); *see also S.E.C. v. Musella*, 818 F. Supp. 600, 601 (S.D.N.Y. 1993) (Wood, J.). Moreover, movants need not establish that Defendants willfully violated the order to hold a party in civil contempt. *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995). An enjoined party must exhibit "[d]iligent compliance with the terms of an injunction to avoid contempt. More is required than a grudging, half-hearted or foot dragging attempt at compliance." *Chere Amie, Inc. v. Windstar Apparel, Corp.*, 175 F. Supp. 2d 562, 565 (S.D.N.Y. 2001) (quoting 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition ("McCarthy") § 30:22, at 43 (4th ed. 1999)). "A party who does not 'take all reasonable steps to prevent the violation' of an injunction will be found in contempt." McCarthy, § 30:22 (quoting *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376 (9th Cir. 1986)). Incomplete compliance due to inadequate compliance measures merits a contempt finding. *Id.* (collecting cases).

2

Here, as set out in accompanying declarations, the evidence establishes the clear and convincing standard necessary to hold Defendants in civil contempt. The first element is not in contention. The Injunction is clear from its face and the Defendants most recent violations are contrary to the plain language of the Injunction, in particular paragraphs 4(a) and (g).

Moreover, Defendants' non-compliance with the Injunction is unequivocal. By engaging in the conduct described in the Scognamillo Decl., Defendants are in gross violation of the limitations imposed by paragraph 4(a) and (g) of the Injunction, which prohibits or otherwise limits the Defendants from:

> (a) manufacturing, importing, distributing, advertising, promoting, selling, or offering for sale to the consuming public sauces or other packaged food products bearing plaintiff's trademark PATSY'S or plaintiff's trade dress as shown in the photograph attached as Exhibit B to the Complaint (hereafter "trade dress"), or any colorable variations thereof or any confusingly similar trademark or trade dress;
>
> . . . .
>
> (g) unfairly competing with Plaintiff with respect to the mark PATSY'S for sauces or other packaged food products; and

(MacMull Decl., ¶4 (quoting Injunction)).  Specifically, Defendants:

- have manufactured sauces and pre-packaged frozen pizza bearing plaintiff's trademark PATSY'S and a colorable variation of Patsy's Brand's trademark and trade dress. (*Compare* Scognamillo Decl., ¶¶4-5, 12, 20, 23, 26-35, *with* MacMull Decl., ¶4).

- are advertising, promoting, selling, and offering for sale to the consuming public, on social media including Facebook and Instagram, sauces and pre-packaged frozen pizza bearing plaintiff's trademark PATSY'S and a colorable variation of Patsy's Brand's trademark and trade dress. (*Compare* Scognamillo Decl., ¶¶25-34, *with* MacMull Decl., ¶4).

The Defendants have likewise ignored and violated the Second Circuit's modifications to the Injunction.  The Second Circuit ruled that Defendants may only:

3

> include in their labeling of pasta sauce and other packaged food products that they produce a modestly sized identification that the product comes from the establishment that operates "Patsy's Pizzeria"; such identification must not exceed 10–point type, must be a minor component of the labeling, must use the name "Patsy's Pizzeria" in full with the lettering of both words in the same size and font, must not use a font that is similar to that used by the Plaintiff, and must use the name only to identify the maker or distributor of the product."

(MacMull Decl., ¶5 (quoting *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 222-23 (2d Cir. 2003)). Specifically, the Defendants:

- have emblazoned the words "Patsy's" or "Patsy's Pizzeria" on both its jarred sauce and pre-packaged frozen pizza in a font that far exceeds a 10-point typeface and which is not a "minor component" of the labeling (*Compare* Scognamillo Decl., ¶¶20-31, *with* MacMull Decl., ¶5);

- used lettering for words "Patsy's" and "Pizzeria" that is not in the same size and typeface (*Compare* Scognamillo Decl., ¶¶20-31, *with* MacMull Decl., ¶5);

- used a typeface that is similar to that used by Patsy Brand on its sauces (*Compare* Scognamillo Decl., ¶¶20-31, *with* MacMull Decl., ¶5); and

- used "Patsy's Pizzeria" in a way far beyond simply identifying the maker or distributor of Defendants' products. (*Compare* Scognamillo Decl., ¶¶20-31, *with* MacMull Decl., ¶5).

Considering the Court's repeated findings that Defendants have been in contempt, coupled the more recent events described in the Scognamillo Decl., it is beyond dispute that there is clear and convincing evidence of Defendants' recent violation of the Injunction.

Further, it is nothing short of inexcusable given the protracted procedural history of this case for the Defendants to continue to advertise, promote, sell, or otherwise offer for sale to the public, products that clearly violate the Injunction. That Defendants have seen fit to utilize the tools of social media in furtherance of their violations of the Injunction readily indicates they have failed "to take all reasonable steps to prevent violation" of the Injunction. In fact, Defendants' conduct outlined in the Scognamillo Declaration clearly evidences intentional, calculated conduct.

4

Most importantly, this Court has already recognized and addressed the seriousness of Defendants delinquent conduct, imposing a monetary sanction in the amount of $100,000.00 for any future violations. (MacMull Decl., ¶13). Defendants' pattern of behavior indicates that they fail to appreciate the gravity of their duty to comply with this Court's Injunction. Defendants' multiple violations of the Injunction have lost them the benefit of the doubt. Another contempt order is warranted both for their newest failings set forth in the Scognamillo Decl., and to incentivize them to comply going forward and beyond as the Court sees fit.

Courts may also impose sanctions for civil contempt "to coerce the contemnor into future compliance with the court's order . . . ." *New York State Nat'l Org. For Women v. Terry*, 886 F.2d 1339, 1352-53 (2d. Cir. 1989) (citing *United States v. United Mine Workers*, 330 U.S. 258, 303-04 (1946)). Sanctions that may be imposed for civil contempt include fines that cease to accrue when the noncomplying party purges himself of the contempt. *See Penfield Co. v. SEC*, 330 U.S. 585, 590 (1947). To the extent that a contempt sanction is coercive, the court has broad discretion to design a remedy that will bring about compliance." *Paramedics*, 369 F.3d at 657.

In deciding whether to impose a coercive remedy, the district court must consider "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon him." *Dole Fresh Fruit Co. v. United Banana Co.,* 821 F.2d 106, 110 (2d Cir. 1987); *accord Perfect Fit Industries, Inc. v. Acme Quilting Co. Inc*., 673 F.2d 53, 57 (2d Cir. 1981).

In this situation, Defendants' recidivism in refusing to comply with the Injunction raises serious concerns. Moreover, the recent swell of violative activity that tracks the very conduct prohibited by the Injunction foreshadows potentially serious compliance issues going forward.

Thus, the Defendants' more recent conduct amplifies the need for a coercive sanction aimed at bringing about swift compliance. The requested sanction should effectively coerce Defendants' compliance because, as a business enterprise, they are presumably motivated by economic considerations. Hence the Court should "impose a fine sizeable enough to make it economically unwise" for Defendants to continue to ignore the provisions of the Court's prior orders.[1] *See Perfect Fit industries*, 673 F.2d at 57.

Given the prior contempt findings by the Court, in order to coerce full compliance with the Injunction, the Court should assess a sanction of an additional $10,000 per day during any period in which Defendants fail to comply with the requirements of the Proposed Order. Of course, if Defendants comply immediately with the order, they need not pay any additional fines.

## CONCLUSION

Patsy's Brand requests that the Court enter the accompanying Proposed Order. Defendants I.O.B Realty, Inc. and Frank Brija have failed to comply with numerous key provisions of the Injunction that are vital to Patsy's Brand's long-standing business success. Defendants' continued refusal to comply thwarts the Court's ability to protect consumers and flouts the Injunction. Patsy's Brand further seeks a monetary sanction that will swiftly coerce Defendants to comply.

Accordingly, Patsy's Brand respectfully requests that the Court impose a sanction of $10,000 per day to be paid to the Court registry for any period in which Defendants fail to comply with the requirements of the Proposed Order. This is in addition to an award of (i) its reasonable attorneys' fees and costs associated with bringing this motion; (ii) compensatory damages to be

---

[1] It is, of course, conceivable that the Defendants' continued contemptuous conduct calls for the consideration of additional sanctions. *See Shillitani*, 384 U.S. at 372 (observing a court may "resort to criminal sanctions only after [it] determines, for good reason, that the civil remedy would be inappropriate"); *In re Irving*, 600 F.2d 1027, 1037 (2d Cir. 1979) ("A judge should resort to criminal contempt only after he determines that holding the contemnor in civil contempt would be inappropriate or fruitless.").

determined at a forthcoming hearing or subsequent application by Patsy's Brand following the completion of limited expedited discovery on this issue; and (iii) the imposition of at least a $100,000.00[2] sanction as this Court previously ordered for any future violations of the Injunction as set forth in the August 27, 2002 order issued by the late Hon. John S. Martin, U.S.D.J.

**MANDELBAUM SALSBURG, P.C.**

By: _____
Joel G. MacMull (JM 8239)
1270 Avenue of the Americas, Suite 1808
New York, NY 10020
Tel. (212) 776-1834
jmacmull@lawfirm.ms

*Attorneys for Attorneys for Plaintiff
Patsy's Brand, Inc.*

Dated: July 26, 2019

---

[2] The Court's prior ruling imposing a sanction of $100,000.00 was decided seventeen years ago in August 2002. (Dkt. No. 82). Pursuant to Fed. R. Evid. 201, Patsy's Brand respectfully requests that, in connection with issuing its order, the Court take judicial notice of the present-day value of its prior $100,000 sanction order. Under Rule 201(d) courts shall take judicial notice of adjudicative facts if requested by a party and supplied with the necessary information. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Here, using an inflation rate of 2.5% per annum, and therefore, a cumulative rate of inflation of 42.4% (2.5 x 17 years) equals $142,380.77 in present day dollars. *See* https://www.usinflationcalculator.com/ (last visited July 23, 2019).