| UNITED STATES DISTRICT COURT | USDC SDNY |
| SOUTHERN DISTRICT OF NEW YORK | DOCUMENT |
| ------------------------------------------------------X | ELECTRONICALLY FILED |
| PATSY'S BRAND, INC., | DOC #: _____ |
| | DATE FILED: May 18, 2021 |

PATSY'S BRAND, INC.,

                Plaintiff,

-against-                                      99-CV-10175 (KMW)

I.O.B. REALTY, INC., PATSY'S INC.,        **ORDER**
FRANK BRIJA, JOHN BRECEVICH, and
NICK TSOULOS,

                Defendants.

------------------------------------------------------X

KIMBA M. WOOD, United States District Judge:

       On May 11, 2021, Plaintiff filed objections to the written direct testimony of Paul Grandinetti. (ECF No. 317.) The Court rules on Plaintiff's objections as follows:

1. **Objection(s) One: Sustained.**
   a. <u>Plaintiff's objections</u>: (1) hearsay (Rules 801 and 802); (2) lack of personal knowledge (Rules 602 and 701); (3) relevance (Rule 401); and (4) confusing the issues (Rule 403).
   b. <u>Testimony to be stricken</u>:
      i. *"In late 1999 or 2000, my colleague, Mr. Joseph J. Zito, showed up in my office and told me that we were going to New York City the next day. Mr. Zito wanted to introduce me to his cousin, Mr. Donald E. Creadore. Mr. Creadore did not practice trademark law in any substantive manner."*
      ii. *"Mr. Creadore introduced me to his client, Mr. Isa (Frank) Brija, the owner of Patsy's Pizzeria. Mr. Brija had been sued by Patsy's Brand, Inc. (Patsy's Brand), and was preparing for a hearing before Judge John S. Martin. I was asked by Mr. Brija to attend the hearing."*
      iii. *"At the hearing Judge Martin permitted me to show him specimens of the respective marks of the parties, and we discussed whether there was a likelihood of confusion between the marks."*
      iv. *"During the meeting, Judge Martin stated that he would permit use of one of the specimens as long as Patsy's Pizzeria only used the same color of green that was on this particular specimen. The logo on this specimen and the particular color of green with which it was associated had been in use by Patsy's Pizzeria for a very long time. I can no longer remember the exact specimen that was accepted by Judge Martin but I am certain that Mr. Brija can identify the specimen. The relevance of this meeting with Judge Martin is that Judge Martin on one occasion did determine that a mark for Patsy's*

*Pizzeria was not confusingly similar to the mark and label being used by Patsy's Brand (Exhibit B of the original complaint)."*

2. **Objection(s) Two: Sustained.**
    a. <u>Plaintiff's objections</u>: (1) lack of personal knowledge (Rules 602 and 701); and (2) relevance (Rule 401).
    b. <u>Testimony to be stricken</u>:
        i. *"While with my firm, Ms. Stempien Coyle worked closely with Mr. Brija. She developed a rapport with Mr. Brija, and he would present to her various concepts for trademarks and labels for review. Mr. Brija liked to work on ideas for new labels, but almost none of the new labels was ever used by him. Ms. Stempien Coyle would analyze the labels and provide her opinion as to whether the proposed marks were confusingly similar to the Patsy's Brand marks. As part of that analysis, Ms. Stempien Coyle would assess whether the marks complied with the injunction and the Second Circuit opinions. Mr. Brija did not want or seek formal written opinions from Ms. Stempien Coyle regarding these ideas on new labels. Mr. Brija preferred to have conversations wherein he could discuss options and understand the bases for Ms. Stempien Coyle's opinions. Ms. Stempien Coyle kept me informed regarding these studies and any opinions she expressed. Frequently, I would join the discussions involving new labels or ideas. Mr. Brija often followed Ms. Stempien Coyle's advice, but not always."*
        ii. *"As I noted earlier, Ms. Stempien Coyle's opinions were almost always oral. One reason for the opinions being expressed orally was that Mr. Brija frequently developed new marks and labels but rarely used them. Mr. Brija typically desired a brief conversation regarding his new marks or labels as a "work in progress." Mr. Brija was almost always not prepared to follow through with the use of a new mark or label in any particular project. Many, many dozens of such opinions were expressed by this firm over the years."*
        iii. *"The frequent conversations with Mr. Brija were often casual in nature, but Ms. Stempien Coyle never treated a review of a new mark or label as a casual task. She gave a serious, fresh analysis to each request. Ms. Stempien Coyle almost always refused to clear the new marks or labels for use in commerce, especially if the mark might be used on non-pizza goods or non- pizzeria services."*

3. **Objection(s) Three: Sustained.**
    a. <u>Plaintiff's objections</u>: (1) lack of personal knowledge (Rules 602 and 701).
    b. <u>Testimony to be stricken</u>:
        i. *"In about 2017, Mr. Brija began to develop a composite mark. (See Dkt. 282-6, Declaration of Ms. Stempien Coyle at pages 3 through 5 of 7.) Ms. Stempien Coyle did not approve the second, third, and*

*fourth variations of this composite mark for use in commerce because the word "pizzeria" was not present or not fully displayed."*

ii. *"On or about late July 2018, Mr. Brija sent Ms. Stempien Coyle a variation of the composite mark. (See Dkt. 282-6 at pages 6 and 7 of 7.)"*

4. **Objection(s) Four: Sustained.**
   a. <u>Plaintiff's objections</u>: (1) lack of personal knowledge (Rules 602 and 701); and (2) hearsay (Rules 801 and 802).
   b. <u>Testimony to be stricken</u>:
      i. *"At the time that the August 2018 opinion was expressed, it was my understanding and Ms. Stempien Coyle's understanding that the new composite mark and label were to be only used with pizzas. The reason for this belief is that Mr. Brija had just been approached by Jet Blue to participate in a promotion campaign for the Jet Blue airlines. Jet Blue asked Patsy's Pizzeria to make a large number of pizzas in New York City. Then, the pizzas were placed in large, clear plastic bags and flown by Jet Blue to California. Once in California, the pizzas were removed from the bags, the baking was finished in a commercial kitchen, and the pizzas were placed in boxes with a special design in support of the Jet Blue promotion of its New York City to California service. Jet Blue then delivered the pizzas to customers, who were quick to request a pizza on its website."*
      ii. *"The Jet Blue promotion required Mr. Brija to acquire a few chest freezers and a heat sealing press that was used to seal the large, clear plastic bags. During the preparations for the Jet Blue promotion, Mr. Brija designed and acquired the green plastic bags, which bear the composite mark. (See Dkt. 282-6, Declaration of Ms. Stempien Coyle at page 7of7.) Mr. Brija explained that he wanted to experiment with freezing his pizzas in the bags. At some point, he did freeze some of his pizzas in a few of these bags. The experiment occurred in a private building separate from Patsy's Pizzeria and not accessible to the public. Unfortunately, the experiment was a failure."*
      iii. *"The few pizzas frozen in the sealed bags warped and crinkled. The pizzas were no longer flat and could not be stacked. Regardless, Mr. Brija wanted to notify Patsy's Brand that he was considering a new project. At some point, Mr. Brija delivered one or two bagged pizzas to Patsy's Brand. . . ."*
      iv. *"I later learned that another reason for abandoning the project was that the bags failed to work as intended. I was informed that the bags were too small to insert the pizzas made at Patsy's Pizzeria. Also, Mr. Brija did not understand plastic packaging when he ordered the bags. The mil thickness of the plastic sheet material used to make the bags is too thin for reliable heat sealing. I was informed that approximately half of the bags that Patsy's Pizzeria*

3

tried to heat seal burned when placed under the heat seal press and did not form an air-tight seal."

  v. "Mr. Brija only considered small in-house productions of frozen pizzas. A large-scale production of frozen pizzas that would compete with, for example, DiGiorno Pizza would require the use of a commercial frozen food producer and marketing professionals that could sway grocery store chains to purchase another product in an already crowded grocery category that had many well-known companies competing for shelf space."

  vi. "After the failed private experiments with the plastic bag project, Mr. Brija abandoned the project. Mr. Brija had no other food product that could be used with the plastic bags. Mr. Brija and I both understood that there was no need to approach the Court for a declaratory judgment proceeding or modification of the injunction. Stated differently, by the time of the frozen pizza failure, I knew from Mr. Brija that he was not capable of and was not going to use his composite mark on pizza sold in a plastic bag with the new logo. I knew with certainty that there was no basis for seeking the Court's involvement in such a project."

5. **Objection(s) Five: Sustained.**
    a. Plaintiff's objections: (1) lack of personal knowledge (Rules 602 and 701); and (2) hearsay (Rules 801 and 802).
    b. Testimony to be stricken:
        i. "Mr. Brija is on a friendly basis with the family that owns, or until recently owned, a small restaurant called Rao's, which is a short walk from Patsy's Pizzeria. I was told by Mr. Brija that he talked to this family on a few occasions about the success of Rao's creation of a line of packaged foods, including marinara sauce. Mr. Brija discussed with me what he had learned, from his discussion with the Rao family."
        ii. "Mr. Brija informed me that it was beyond his current financial and other abilities to create, acquire commercial production, and market to wholesalers and retailers a line of packaged foods. . . . Mr. Brija understood that any action or attempt to market sauces under any trademark would cause Patsy's Brand to initiate a court action. . . ."
        iii. ". . . The red sauce was the sauce his pizza makers spread on pizza dough before baking the pie. Mr. Brija used a spoon to dip this sauce into some empty glass jars that his pizzeria provides customers when customers want to take some leftovers home. . . ."

6. **Objection Six: Sustained.**
    a. Plaintiff's objections: (1) lack of personal knowledge (Rules 602 and 701).

b. <u>Testimony to be stricken</u>:
      i. *"Mr. Brija developed the composite mark in part to modernize his logo for use with the pizzas made and sold in his pizzerias. Mr. Brija hoped that the new logo would be acceptable to the Court, someday in the future, on fresh pizzas for home baking and/or goods other than pizza. For this reason, the composite mark comprises numerous elements that identify Patsy's Pizzeria and distinguish the mark from any mark owned by Patsy's Brand. However, as of the December 2019 hearing, Mr. Brija had not used this mark commercially and had never had any intention to use the mark commercially without authorization from the Court."*

## CONCLUSION

As set forth above, each of Plaintiff's objections to the direct testimony of Paul Grandinetti is sustained.

SO ORDERED.

Dated: New York, New York
       May 18, 2021
                                          /s/ Kimba M. Wood
                                          KIMBA M. WOOD
                                          United States District Judge