UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
PATSY'S BRAND, INC.,

                              Plaintiff,

          v.

I.O.B. REALTY, INC., PATSY'S INC.,
FRANK BRIJA, JOHN BRECEVICH, and
NICK TSOULOS,

                              Defendants.
-------------------------------------------------------X

KIMBA M. WOOD, United States District Judge:

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____           │
│ DATE FILED: August 5, 2021           │
└─────────────────────────────────────┘
```

99-CV-10175 (KMW)
**OPINION AND ORDER**

Plaintiff Patsy's Brand, Inc. filed a motion to hold Defendants I.O.B. Realty, Inc. and Isa

"Frank" Brija in civil contempt for violating the longstanding trademark injunction in this case.

(ECF No. 183.)  Specifically, Plaintiff alleges that Defendants violated the injunction on 13

occasions by, *inter alia*, advertising jarred sauces and packaged pizza with infringing labels and

submitting domestic and foreign trademark applications for a "PATSY'S" mark.  Plaintiff seeks

$1,300,000 in monetary sanctions, attorney's fees and costs, and various forms of non-monetary

injunctive relief against Defendants and their former trademark counsel.  For the reasons set

forth below, Plaintiff's motion is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

The history of this case is set out at length in previous decisions, including the Second

Circuit's decision in 2003 and this Court's prior decisions in 2006 and 2020.  *Patsy's Brand, Inc.*

*v. I.O.B. Realty, Inc.*, 317 F.3d 209, 212-15 (2d Cir. 2003); Oct. 13, 2006 Order at 2-9, ECF No.

176; *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 2020 WL 4252682, at *1-3 (S.D.N.Y. July 24,

2020).  Thus, the Court will summarize the relevant background only briefly.

I.      **The Injunction**

This case involves a long and ever-expanding feud between two Italian restaurants in

New York City: "Patsy's Italian Restaurant," owned by Plaintiff Patsy's Brand, Inc., and

"Patsy's Pizzeria," owned by Defendants I.O.B. Realty and Frank Brija.  Plaintiff has a

trademark for a stylized "Patsy's" logo, which it has used on its jarred sauces since 1994:





 (*See* MacMull July 26, 2019 Decl. at Ex. 1 pp. 23, 25, ECF No. 185; Scognamillo July 26, 2019

Decl. ¶ 4, Fig. 1, ECF No. 184.)

In 1999, Plaintiff sued Defendants for trademark infringement after Defendants began

distributing their own jarred sauces:



(*See* MacMull July 26, 2019 Decl. at Ex. 1 p. 27.)  This Court granted Plaintiff's motion for

summary judgment and denied Defendants' cross-motion.  *Patsy's Brand, Inc. v. I.O.B. Realty,*

*Inc.*, 2001 WL 170672, at *14 (S.D.N.Y. Feb. 21, 2001) (Martin, J.).  The Court also

permanently enjoined, among others, Defendants, their agents, and their attorneys:

> 4(a).    from manufacturing, importing, distributing, advertising, promoting,
> selling, or offering for sale to the consuming public sauces or other packaged food
> products bearing plaintiff's trademark PATSY's or plaintiff's trade dress . . . or
> any colorable variations thereof or any confusingly similar trademark or trade
> dress;
>
> . . . .
>
> 4(d).    from applying for, obtaining or maintaining any trademark registration for
> a mark which comprises, consists of the words PATSY'S or PATSY'S
> RESTAURANT for sauces or other packaged food products[.]

(Injunction ¶¶ 3, 4(a), 4(d), ECF No. 82; MacMull July 26, 2019 Decl. at Ex. 4 pp. 3-4.)  Finding

that Defendants acted in bad faith during the course of the litigation, the Court ordered them to

pay Plaintiff's attorney's fees and costs.  *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 2001 WL

1154669, at *2-3 (S.D.N.Y. Oct. 1, 2001) (Martin, J.).  The Court also held Defendant Frank

Brija in contempt for committing perjury and fraud and sanctioned him and one of Defendants'

attorneys.  *Id.* at *1-3.

On August 27, 2002, the Court found that Defendants willfully violated the Injunction by

selling pasta sauce bearing labels which were confusingly similar to Plaintiff's labels:



(*See* MacMull June 7, 2021 Decl. at Ex. 20, ECF No. 359.)  The Court held Defendants in

contempt of Court, awarded Plaintiff attorney's fees and treble compensatory damages, issued a

$10,000 coercive fine, and warned Defendants that the fine would increase tenfold for a future

violation.  *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 2002 WL 1988200, at *2-3 (S.D.N.Y. Aug.

27, 2002) (Martin, J.).

On January 16, 2003, the Second Circuit affirmed the Injunction in substantial part, but

modified it to

> permit the Defendants to include in their labeling of pasta sauce and other
> packaged food products that they produce a modestly sized identification that the
> product comes from the establishment that operates "Patsy's Pizzeria"; such
> identification must not exceed 10–point type, must be a minor component of the
> labeling, must use the name "Patsy's Pizzeria" in full with the lettering of both
> words in the same size and font, must not use a font that is similar to that used by
> the Plaintiff, and must use the name only to identify the maker or distributor of
> the product.

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 222-23 (2d Cir. 2003).

On March 27, 2003, in an Order following Defendants' petition for re-hearing, the

Second Circuit added:

> This Injunction does not prohibit the Defendants from using the name PATSY'S
> PIZZERIA on take-out boxes into which hot pizza, cooked in the Defendants'
> own pizzerias and sold in such pizzerias (not in grocery stores, supermarkets, or
> other retail stores), is placed so that a customer can take the pizza away from the
> pizzerias.

(*See* ECF No. 231 at Ex. 1.)

## II.   Key events

In the past several years, Defendants have been designing labels, using those labels on

their products, and applying to register trademarks domestically and internationally.

### 1.   *Defendants' labels and products*

On October 30, 2018, Defendants posted a picture of three jarred pizza sauces with

Defendants' label on Facebook and Instagram, stating: "We are now selling our famous pizza

sauce.  You can pick it up at one of our locations or at a store near you."  (Scognamillo July 26,

2019 Decl. ¶ 30, Figs. 10-11, Exs. 5, 7.)



On March 28, 2019, Defendants posted a picture of Frank Brija holding a pre-packaged, vacuum-sealed pizza with Defendants' label on Facebook and Instagram, stating: "@FrankPatsy owner of Patsy's Pizzeria pointing to the man who is our inspiration for our new line of Patsy's Pizzeria frozen pizzas!  Available at a store near you!"  (Scognamillo July 26, 2019 Decl. ¶ 26, Figs. 7, 9, Exs. 4, 6.)



In or around May 2018, Defendants engaged in a "Pie in the Sky" promotional campaign with JetBlue Airways to deliver 1,000 pizzas to customers in the Los Angeles area.  (Brija Oct. 16, 2019 Decl. ¶ 18, ECF No. 214.)  In New York, Defendants prepared the pizzas to 90 percent completion, vacuum sealed the pizzas in clear plastic pouches, and JetBlue flew them to Los Angeles.  (*See* Brija Oct. 16, 2019 Decl. ¶¶ 18, 20.)  In Los Angeles, the pizzas were taken to a test kitchen to be heated, placed in "specially designed pizza boxes" with Defendants' label, and delivered hot to customers.  (*See* Brija Oct. 16, 2019 Decl. ¶¶ 18, 20, Ex. 12.)



On October 3, 2018, Brija sent a retired New York Police Department ("NYPD")
detective to deliver two frozen, vacuum-sealed pizzas with Defendants' label to Patsy's Italian
Restaurant.  (Scognamillo July 26, 2019 Decl. ¶ 12, Fig. 2; Oct. 30, 2019 Tr. at 23:19-24:1, 55:7-
56:4.)  Brija claims that he had hoped Plaintiff would respond to the delivery, which Brija said
would allow him to engage "in a discussion and negotiation regarding [his] desire to use the
mark PATSY'S PIZZERIA on packaged food items."  (Brija Oct. 16, 2019 Decl. ¶ 11.)  The
delivery was not accompanied with any message.  (Oct. 30, 2019 Tr. at 23:19-24:1, 55:7-56:4.)



Around May 11, 2019, ABC7 News posted a story and a 2 minute and 16 second video on its website about a waiter at Defendants' restaurant returning a $424,000 check to a customer who left the check behind. (Scognamillo July 26, 2019 Decl. ¶¶ 18-19.) The video contained a short clip of the waiter sitting at a table with a jar of sauce, a wine bottle, and a vacuum-sealed pizza. (Scognamillo July 26, 2019 Decl. ¶¶ 19-20, Figs. 3-4.) The jar of sauce and wine bottle bore a label similar to the one on the pre-packaged pizzas that were delivered by the retired NYPD detective. (Scognamillo July 26, 2019 Decl. ¶¶ 19-20, Figs. 3-4.)



On May 10, 2019, the New York Daily News also posted a story about the $424,000 check.  The story's cover photo showed Defendants' employees posing with pre-packaged, vacuum-sealed pizzas bearing Defendants' label.  (Scognamillo July 26, 2019 Decl. ¶ 23, Figs. 5-6.)



*2. Defendants' trademark applications and registrations*

Defendants applied for and obtained four foreign trademark registrations for "Patsy's": a European Union registration on December 2, 2014 (Brija Oct. 16, 2019 Decl. Ex. 11); a Japanese registration on April 24, 2015 (Pl. Ex. 5); an Israeli registration on September 13, 2018 (Pl. Ex. 6); and a Canadian registration on August 20, 2019 (Pl. Ex. 34). Defendants also applied for a U.S. trademark for "PATSY'S PIZZERIA SINCE 1933" on February 1, 2019 (Pl. Ex. 21). All five trademark registrations and applications were for International Class 30, which includes sauces and other staple foods.

## III.   Plaintiff's 2019 contempt motion

On July 26, 2019, Plaintiff moved to hold Defendants in contempt—for the second time—for violating the Injunction[1] on 13 separate occasions:

(1) and (2) posting a photo of their jarred pizza sauces on Facebook and Instagram on October 30, 2018;

(3) and (4) posting a photo of their pre-packaged, vacuum-sealed pizza on Facebook and Instagram on March 28, 2019;

(5) engaging in a promotional campaign with JetBlue in May 2018;

(6) delivering a vacuum-sealed pizza to Plaintiff on October 3, 2018;

(7) appearing in a May 11, 2019 ABC7 News video clip with a jar of sauce, a wine bottle, and a vacuum-sealed pizza;

(8) appearing on the cover photo of a May 10, 2019 New York Daily News article with pre-packaged, vacuum-sealed pizzas;

---

[1] Unless otherwise noted, references to the "Injunction" refer to the original Injunction, as modified by the Second Circuit's January 16, 2003 decision and March 27, 2003 Order.

(9) applying for and obtaining a European Union trademark registration on December 2, 2014;

(10) applying for and obtaining a Japanese trademark registration on April 24, 2015;

(11) applying for and obtaining an Israeli trademark registration on September 13, 2018;

(12) applying for and obtaining a Canadian trademark registration on August 20, 2019; and

(13) applying for a U.S. trademark for "PATSY'S PIZZERIA SINCE 1933" on February 1, 2019.

(*See* Pl. Post-Hearing Mem. at 20-22, ECF No. 358; ECF No. 183.) Plaintiff alleges that Defendants' aforementioned conduct violates either Paragraph 4(a) or Paragraph 4(d) of the Injunction. (Pl. Post-Hearing Mem. at 20-22.) As a result, Plaintiff seeks $1,300,000 in monetary sanctions ($100,000 per violation), jointly and severally, against Defendants and Paul Grandinetti and Rebecca Stempien Coyle, Defendants' former trademark counsel (collectively, "Former Counsel"), attorney's fees and costs, and various forms of non-monetary injunctive relief. (Pl. Post-Hearing Mem. at 22-34.) Defendants maintain that their labels, products, and trademark applications and registrations do not violate the Injunction and, to the extent that their conduct violates the Injunction, Defendants relied on the advice of their Former Counsel. (*See* Def. Post-Hearing Opp'n at 16-35, ECF No. 363.)

The Court conducted in-person evidentiary hearings on October 30, 2019 and December 12, 2019, and virtual evidentiary hearings from May 24-28, 2021.[2] Thereafter, the parties and Former Counsel submitted post-hearing briefs.

---

[2] Due to the COVID-19 pandemic, the Court adjourned hearings that had been scheduled to take place prior to May 24, 2021.

## LEGAL STANDARD

Courts have the inherent power to enforce compliance with their lawful orders by holding violators of such orders in civil contempt.  *See Armstrong v. Guccione*, 470 F.3d 89, 102 (2d Cir. 2006) (citing *Shillitani v. U.S.*, 384 U.S. 364, 370 (1966)).  A finding of civil contempt is proper if "(1) the order the contemnor failed to comply with is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedics Electromedia Comercial, LTDA v. GE Medical Sys. Information Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004); *see also Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019) (stating that willfulness is not an element of civil contempt).

An order is "clear and unambiguous" where it is "specific and definite enough to apprise those within its scope of the conduct that is being proscribed" or required.  *Nat'l Basketball Ass'n v. Design Mgt. Consultants, Inc.*, 289 F. Supp. 2d 373, 377 (S.D.N.Y. 2003) (Buchwald, J.) (citing *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1352 (2d Cir. 1989)). A clear and unambiguous order leaves "no uncertainty in the minds of those to whom it is addressed, who must be able to ascertain from the four corners of the order precisely what acts are forbidden." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) (internal citations omitted); *see Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 292 (2d Cir. 2008) ("The proper measure of clarity, however, is not whether the decree is clear in some general sense, but whether it unambiguously proscribes the challenged conduct.").

The moving party bears the burden of proving noncompliance by "clear and convincing" evidence.  *City of New York v. Loc. 28, Sheet Metal Workers' Int'l Ass'n*, 170 F.3d 279, 282 (2d Cir. 1999).  Proof of noncompliance is "clear and convincing" when the evidence demonstrates

to a "reasonable certainty" that a violation occurred.  *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002).

"Although the Second Circuit has not been squarely confronted with the question of what constitutes 'reasonable diligence,' it has noted that 'substantial compliance' is the appropriate standard in evaluating noncompliance in a contempt case."  *Yurman Studio, Inc. v. Castaneda*, 2009 WL 454275, at *2 (S.D.N.Y. Feb. 23, 2009) (Scheindlin, J.).  In analyzing reasonable diligence, courts have considered whether a party has developed and executed "reasonabl[y] effective methods of compliance."  *Id.*; *see Medina v. Buther*, 2019 WL 581270, at *25 (S.D.N.Y. Feb. 13, 2019) (Preska, J.) (noting that a party is "not reasonably diligent" when it ignores the court order or takes only superficial actions that "strain both the language and intent of the order"); *Zino Davidoff SA v. CVS Corp.*, 2008 WL 1775410, at *8 (S.D.N.Y. Apr. 17, 2008) (Sullivan, J.) (noting that reasonable diligence, "at a minimum, requires a party 'to energetically police' the effectiveness of its compliance measures and, when advised that such measures have fallen short, to modify them accordingly").  Courts have also considered whether a party's actions are based on a "good faith and reasonable interpretation of the court order." *Schmitz v. St. Regis Paper Co.*, 758 F. Supp. 922, 927 (S.D.N.Y. 1991) (Broderick, J.).  That a prohibited act was done in good faith or inadvertently does not preclude a citation for civil contempt, because the sanction is remedial in nature.  *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 128 n.2 (2d Cir. 1979).  Before a court will absolve a party in a contempt proceeding, however, it must determine that compliance is "beyond the realm of possibility, not just difficult to achieve."  *Barcia v. Sitkin*, 1997 WL 66785, at *2 (S.D.N.Y. Feb. 14, 1997) (Carter, J.) (citing *Badgley v. Santacroce*, 800 F.2d 33, 36-37 (2d Cir. 1986) (holding that

13

compliance must be factually impossible before a party can be absolved in a contempt proceeding)).

When enforcing trademark injunctions, courts do not consider the factors set forth in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961), which are used to adjudicate first-order trademark infringement disputes; rather, courts "simply evaluate whether or not the new mark is confusingly similar to the protected mark . . . ." *Wella Corp. v. Wella Graphics, Inc.*, 37 F.3d 46, 48 (2d Cir. 1994). In this way, "an injunction impose[s] a heavier burden on an infringing party with a redesigned mark than is imposed on a newcomer with a similar mark." *Id.* A party subject to an injunction has a "duty to keep a safe distance from the line drawn by the district court's injunction." *Oral-B Laboratories, Inc. v. Mi-Lor Corp.*, 810 F.2d 20, 24 (2d Cir. 1987).

## DISCUSSION[3]

### I.  Liability

 *1. Defendants' use of certain labels and products (Paragraph 4(a) of the Injunction)*

Plaintiff alleges that Defendants' use of certain labels and products violated Paragraph 4(a) of the Injunction on eight separate occasions: (1) and (2) Defendants' Facebook and Instagram posts of their jarred pizza sauces on October 30, 2018; (3) and (4) Defendants' Facebook and Instagram posts of their pre-packaged, vacuum-sealed pizza on March 28, 2019; (5) Defendants' promotional campaign with JetBlue in May 2018; (6) Defendants' pizza delivery to Plaintiff on October 3, 2018; (7) a video clip in a May 11, 2019 ABC7 News story showing Defendants' employee sitting at a table with a jar of sauce, a wine bottle, and a vacuum-sealed pizza; and (8) the cover photo of a May 10, 2019 New York Daily News article showing

---

[3] Any arguments raised by the parties but not specifically addressed below have been considered by the Court on the merits and rejected.

Defendants' employees posing with pre-packaged, vacuum-sealed pizzas.  (Pl. Post-Hearing Mem. at 20-22.)  The Court finds Defendants in contempt of Court for only the October 30, 2018 and March 28, 2019 social media posts.

A.  Whether Paragraph 4(a) of the Injunction is clear and unambiguous

With respect to the first *Paramedics* factor, the Court finds that Paragraph 4(a) of the Injunction is clear and unambiguous.  Paragraph 4(a) prohibits Defendants from "manufacturing, importing, distributing, advertising, promoting, selling, or offering for sale to the consuming public sauces or other packaged food products bearing plaintiff's trademark PATSY'S or plaintiff's trade dress . . . or any colorable variations thereof or any confusingly similar trademark or trade dress."  (Injunction ¶ 4(a).)  Judge Martin previously held that the Injunction is clear and unambiguous when he found that Defendants violated it in 2002.  *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 2002 WL 1988200, at *2 (S.D.N.Y. Aug. 27, 2002).  In addition, the Second Circuit reviewed and affirmed the Injunction, adding minor modifications to permit Defendants to identify the source of their products and to use the name "PATSY'S PIZZERIA" on take-out boxes.  (ECF No. 231 at Ex. 1; *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 220-23 (2d Cir. 2003).)  The injunction is clear and unambiguous; it is extremely detailed, down to the identification's maximum allowable font size.

B.  Whether Plaintiff has proven noncompliance by clear and convincing evidence

With respect to the second *Paramedics* factor, the Court finds that proof of noncompliance with the Injunction is clear and convincing for only the October 30, 2018 and March 28, 2019 Facebook and Instagram posts.

15

<u>October 30, 2018 and March 28, 2019 Facebook and Instagram posts.</u>  All four social media posts violated the Injunction because they are advertisements or promotions of products with infringing labels.

The October 30, 2018 posts are advertisements or promotions; they stated: "We are now selling our famous pizza sauce.  You can pick it up at one of our locations or at a store near you." (Scognamillo July 26, 2019 Decl. ¶ 30, Figs. 10-11, Exs. 5, 7.)  The March 28, 2019 posts are also advertisements or promotions; they stated: "@FrankPatsy owner of Patsy's Pizzeria pointing to the man who is our inspiration for our new line of Patsy's Pizzeria frozen pizzas!  Available at a store near you!"  (Scognamillo July 26, 2019 Decl. ¶ 26, Figs. 7, 9, Exs. 4, 6.)  Today, companies commonly use social media posts, like the aforementioned posts, to advertise their products and services.

Defendants argue that, because the products shown in the posts were never actually available for sale to the consuming public, the posts cannot be considered promotions or advertisements.  (Def. Opp'n at 1, 4, 9, ECF No. 200.)  The Court disagrees.  Defendants cite no precedent that supports such a limitation, and the Court is aware of none.[4]  Defendants' argument is also belied by the posts themselves: the posts stated that the products were "available," that Defendants were "now selling" the products, and expressly invited potential customers to "pick it up at one of our locations"; the posts were made on Defendants' official, business accounts; and hundreds of potential customers liked the posts, shared them, and/or inquired about purchasing the products.  (Scognamillo July 26, 2019 Decl. ¶¶ 26, 30, Figs. 7, 9-11, Exs. 4-7.)

---

[4] As a general matter, terms like "advertising" and "promotion" are interpreted broadly in trademark law.  In cases involving the Lanham Act, for example, courts have found that these concepts cover any commercial statement that is made for the purpose of "influencing consumers to buy [a company's] goods or services."  *See Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56 (2d Cir. 2002).

In addition, the labels on the advertised products bore "plaintiff's trademark PATSY's or plaintiff's trade dress . . . or [a] colorable variation[] thereof or [a] confusingly similar trademark or trade dress."  (Injunction ¶ 4(a).)  The essential element of the advertised products' labels is the inner, circular logo:



(Scognamillo July 26, 2019 Decl. ¶¶ 26, 30, Figs. 7, 9-11, Exs. 4-7.)  The inner, circular logo on both advertised products contains a design that is prominently emblazoned with the word "Patsy's" in large, red, cursive font, and is accompanied by the word "Pizzeria" in smaller, white, non-cursive font.  Defendants argue that, because these logos also include a "double P" or "PP" mark, this detail distinguishes their mark from that of Plaintiff's.  Those "Ps," however, are insignificant distinctions, given the prominence of the large, red, cursive "Patsy's" insignia on Defendants' logo.

In addition, the design violates the Injunction's plain dictate that "a modestly sized identification" that the product comes from "Patsy's Pizzeria" "must not exceed 10-point type, must be a minor component of the labeling, must use the name 'Patsy's Pizzeria' in full with the lettering of both words in the same size and font, must not use a font that is similar to that used by [Patsy's Brand], and must use the name only to identify the maker or distributor of the

product." (*See* Pl's Mem. at 4; Pl. Post-Hearing Mem. at 15 (collecting evidence); *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 220-23 (2d Cir. 2003).)  The name "Patsy's Pizzeria" on the inner, circular logo of the jarred sauces and vacuum-sealed pizza (1) is larger than 10-point font, (2) is prominent on the label, (3) the words "Patsy's" and "Pizzeria" are not the same size or in the same font, (4) they are in a font similar to that used by Plaintiff, and (5) they are not used only to identify the maker or distributor of the product.  (*See* Pl. Post-Hearing Mem. at 15 (collecting testimony).)  Thus, there is clear and convincing evidence that the October 30, 2018 and March 28, 2019 Facebook and Instagram posts fail to comply with the Injunction's specific limitations.

    May 2018 JetBlue promotional campaign.  Plaintiff fails to establish by clear and convincing evidence that the May 2018 JetBlue promotional campaign violated the Injunction. During the promotional campaign, Defendants flew partially cooked pizzas from New York to Los Angeles.  Upon arrival in Los Angeles, the pizzas were heated in a test kitchen, placed in take-out boxes containing a circular "Patsy's Pizzeria" logo, and Postmates delivered them hot to customers.  (*See* Brija Oct. 16, 2019 Decl. ¶¶ 18, 20, Ex. 12.)

    Plaintiff argues that this conduct violates the Second Circuit's March 27, 2003 Order, which stated that the "injunction does not prohibit the Defendants from using the name PATSY'S PIZZERIA on take-out boxes into which hot pizza, cooked in the Defendants' own pizzerias and sold in such pizzerias . . . is placed so that a customer can take the pizza away from the pizzerias."  Specifically, Plaintiff contends in a footnote that "hot pizzas were not placed in take-out boxes located in defendants' own pizzerias for take-out by customers."  (Pl. Reply Mem. at 13 n.5, ECF No. 207.)

The Court is not persuaded.  Plaintiff fails to offer any evidence or rationale why Defendants' test kitchen should not qualify as Defendants' "pizzeria," and why Postmates should not be deemed to have acted as Defendants' agent in providing pizzas to customers.  (*See* Brija Oct. 16, 2019 Decl. at Ex. 12; Def. Dec. 13, 2019 Let. at 7-8, 11, ECF No. 261.)  Even assuming, *arguendo*, that Plaintiff could make such a showing, Plaintiff has not established to a "reasonable certainty" that the JetBlue promotion violates the Injunction's specific limitations.

October 3, 2018 pizza delivery.  Plaintiff fails to establish by clear and convincing evidence that the vacuum-sealed pizzas that were delivered on October 3, 2018 to Plaintiff's restaurant violated the Injunction.  The Injunction prohibits Defendants "from manufacturing, importing, distributing, advertising, promoting, selling, or offering for sale to the consuming public sauces or other packaged food products . . . ."  (Injunction ¶ 4(a).)  The pizza delivery does not violate the Injunction because Plaintiff (a competitor) is not a member of the "consuming public," and Plaintiff has not established that Defendants otherwise sold the pizzas. (*See* Oct. 30, 2019 Tr. at 22:7-9, 30:13-16, Brija Oct. 16, 2019 Decl. ¶ 11.)

May 11, 2019 ABC7 News news clip and May 10, 2019 New York Daily News article cover photo.  Plaintiff fails to establish by clear and convincing evidence that Defendants violated the Injunction when its employee(s) appeared in a May 11, 2019 ABC7 News clip and on the cover photo of a May 10, 2019 New York Daily News article, with products bearing Defendants' labels.  The Injunction prohibits "Defendants, their successors, assigns, officers, directors, servants, employees, distributors, customers, representatives, agents and attorneys, and all persons in active concert and participation with them, or any of them" "from manufacturing, importing, distributing, advertising, promoting, selling, or offering for sale" infringing products. (Injunction ¶¶ 3, 4(a).)  The Court notes that the Injunction does not, on its face, apply to ABC7

News or the New York Daily News, and Plaintiff does not argue otherwise.  (Injunction ¶ 3.)

Plaintiff has not offered any evidence to attribute ABC7 News's posting of the news clip or the

New York Daily News's posting of the cover photo to *Defendants'* advertising or promotional

endeavors.  (*See, e.g.*, May 24, 2021 Tr. at 57:10-24, ECF No. 348 (Frank Brija's uncontroverted

testimony that the photographer for the New York Daily News suggested including the vacuum-

sealed pizzas in the photo).)  Thus, Plaintiff has not demonstrated to a "reasonable certainty" that

the news clip and cover photo violated the Injunction's specific limitations.

     C.  Whether Defendants diligently attempted to comply in a reasonable manner

     With respect to the third *Paramedics* factor, the Court finds that Defendants were not

reasonably diligent in attempting to comply with the Injunction.[5]  Initially, Defendants argued

that they were diligent in their efforts to comply with the Injunction because they continuously

redesigned the product labels in their attempts to comply with the Injunction (Def. Opp'n at 10);

they made the social media posts at the request of a potential business partner in Japan (Brija

Oct. 16, 2019 Decl. ¶ 22); they posted only "props, or concepts for future promotional materials

targeted towards international audiences" (Def. Opp'n at 10); they made the "fictitious" posts

after having formed the belief that Plaintiff had "abandoned its packaged food lines and the mark

for these packaged foods" (Brija Oct. 16, 2019 Decl. ¶¶ 10, 31, 35, Ex. 15; Oct. 30, 2019 Tr. at

27:12-23, 50:3-52:1); and they made the posts in "jest" (Brija Oct. 16, 2019 Decl. ¶ 35).  Later,

Defendants added that their conduct was based on a "good faith and reasonable interpretation of

the Injunction"; and that they developed a method to comply with the Injunction—sending

prototype labels to their Former Counsel for approval and relying on the advice of counsel.  (Def.

Post-Hearing Opp'n at 16-19, ECF No. 363.)

---

[5] The Court addresses the third *Paramedics* factor only with respect to the social media posts because Plaintiff has not proven, by clear and convincing evidence, that the other alleged violations failed to comply with the Injunction.

None of these arguments is persuasive.  First, no "good faith and reasonable interpretation of the Injunction" would suggest that the labels in the four social media posts comply with the Injunction's specific limitations.  As discussed *supra* Section I.1.B, the labels do not comply with Paragraph 4(a) of the Injunction because they bore "plaintiff's trademark PATSY's or plaintiff's trade dress . . . or [a] colorable variation[] thereof or [a] confusingly similar trademark or trade dress."  The labels do not fall within the permissive language of the Second Circuit's January 16, 2003 modification because the words "Patsy's" and "Pizzeria" in the inner, circular logo are larger than 10-point font, they are prominent on the label, they are neither the same size nor in the same typeface, they are in a script and font similar to that used by Plaintiff, and they are not used only to identify the maker of the product.  (*See* Pl. Post-Hearing Mem. at 15 (collecting evidence).)

Second, Defendants ignored the well-established safe distance rule—that "an injunction impose[s] a heavier burden on an infringing party with a redesigned mark than is imposed on a newcomer with a similar mark."  *Wella Corp. v. Wella Graphics, Inc.*, 37 F.3d 46, 48 (2d Cir. 1994); *see PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*, 520 F.3d 109, 117 (2d Cir. 2008) (citing *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 220 (2d Cir. 2003)); *Espinoza v. Allen Imports & Trade Corp.*, 100 F.3d 942 (2d Cir. 1996) (summary order); 5 McCarthy on Trademarks and Unfair Competition § 30:21 (5th ed. 2021) (collecting cases and noting that the "safe distance rule . . . is designed to prevent a proven infringer from evading contempt charges by making only insignificant changes to the infringing mark and continuing its conduct.").  Despite the fact that Defendants are previously adjudicated infringers *and* that Judge Martin found Defendants in contempt of Court in 2002, Defendants *still* failed to keep a safe distance from infringing Plaintiff's mark and trade dress.  Defendants' current violations of the Injunction

are egregious because, rather than keeping a safe distance from Plaintiff's mark and trade dress, Defendants created labels that are *even more* confusingly similar to Plaintiff's mark and trade dress than the labels Judge Martin found to be in violation of the Injunction.  For example, on the inner, circular logos in the social media posts, the word "Patsy's" appears in a font and color that is more similar to Plaintiff's mark and trade dress than the font and color on Defendants' sauce label in 2002.  In addition, in their current logos, Defendants decreased the size of the word "Pizzeria" both in absolute size and size relative to the word "Patsy's"—thereby making "Patsy's" an even more prominent component of the label.  (*Compare* MacMull July 26, 2019 Decl. at Ex. 1 pp. 23, 25 and Scognamillo July 26, 2019 Decl. ¶ 4, Fig. 1*, with* MacMull June 7, 2021 Decl. at Ex. 20 and Scognamillo July 26, 2019 Decl. ¶¶ 26, 30, Figs. 7, 9-11.)  Defendants' failure to keep a safe distance from violating the Injunction is also suggested by Frank Brija's testimony that he has not reviewed the 2002 contempt order in the past ten years.  (*See* May 24, 2021 Tr. at 89:8-91:18.)

Third, Defendants' reliance on their lawyers' advice does not absolve them of liability for civil contempt, because reliance on the advice of counsel is not a defense to a charge of contempt; it is relevant only in fashioning appropriate sanctions.  *See S.E.C. v. Musella*, 818 F. Supp. 600, 606 (S.D.N.Y. 1993) (Wood, J.) (collecting cases and holding that "advice of counsel and good faith do not relieve from liability for a civil contempt, although they may affect the extent of the penalty"); *United States v. Int'l Bus. Machines Corp.*, 60 F.R.D. 658, 666 (S.D.N.Y. 1973) (Edelstein, C.J.) ("[I]t is settled that reliance on the advice of counsel is not a defense to an act of civil contempt."); *Auto. Lift Inst., Inc. v. Backyard Buddy, Inc.*, 2010 WL 11681593, at *5 (N.D.N.Y. May 20, 2010) ("The fact that an offending party has obtained the advice of counsel before acting does not, in and of itself, mean that the offending party attempted to comply with

the order in a reasonable manner."); *Gasser v. Infanti Int'l, Inc.*, 2004 WL 906487, at \*4 (E.D.N.Y. Mar. 24, 2004); *Howe Lab'ys, Inc. v. Stevick*, 1996 WL 652608, at \*6 (E.D.N.Y. Nov. 6, 1996). *But see Drywall Tapers & Pointers of Greater New York v. Loc. 530 of Operative Plasterers & Cement Masons Int'l Ass'n, AFL-CIO*, 1996 WL 1088933, at \*5 (E.D.N.Y. Oct. 24, 1996) ("While reliance on advice of counsel is not, strictly speaking, a defense to contempt, . . . it is probative on the issue of diligence . . . .").

2. *Defendants' trademark applications and registrations (Paragraph 4(d) of the Injunction)*

Plaintiff alleges that Defendants' trademark applications and registrations for "Patsy's", for International Class 30, violated Paragraph 4(a) of the Injunction on five separate occasions: (1) a European Union registration on December 2, 2014; (2) a Japanese registration on April 24, 2015; (3) an Israeli registration on September 13, 2018; (4) a Canadian registration on August 20, 2019; and (5) a U.S. trademark application for "PATSY'S PIZZERIA SINCE 1933" on February 1, 2019. (Pl. Post-Hearing Mem. at 20-21.) The Court finds Defendants in contempt of Court for only the U.S. trademark application.

A. Whether the Injunction applies extraterritorially

Plaintiff seeks to hold Defendants and their Former Counsel in civil contempt for registering the four foreign trademarks and asks the Court to order Defendants to "take all necessary and appropriate actions to affirmatively abandon the European Union, Japanese, Israeli, and Canadian trademark registrations for 'Patsy's.'" (Pl. Post-Hearing Mem. at 6-10, 32-33; *see, e.g.*, *Juicy Couture, Inc. v. Bella Int'l Ltd.*, 930 F. Supp. 2d 489, 505 (S.D.N.Y. 2013) (Abrams, J.).) The Court thus must determine whether the Injunction applies to Defendants' conduct abroad.

The Injunction was issued following trademark and trade dress violations of the Lanham Act.  *See Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 2001 WL 170672, at *2, *14 (S.D.N.Y. Feb. 21, 2001) (Martin, J.).  The Lanham Act has been read to reach infringing conduct abroad "when necessary to prevent harm to commerce in the United States."  *Atl. Richfield Co. v. Arco Globus Int'l Co.*, 150 F.3d 189, 192 (2d Cir. 1998).  In determining whether the Lanham Act applies extraterritorially, courts consider a three-factor test set forth in *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 642-43 (2d Cir. 1956) ("*Vanity Fair*"): "(1) whether the defendant was a United States citizen, (2) whether the defendant's conduct had a substantial effect on United States commerce, and (3) whether there was a conflict with trademark rights established under foreign law."  *Totalplan Corp. of Am. v. Colborne*, 14 F.3d 824, 830 (2d Cir. 1994) (citing *Vanity Fair*, 234 F.2d at 642-43).  In balancing these factors, the *Vanity Fair* Court stated that "the absence of one of the above factors might well be determinative," and the absence of two "is certainly fatal."  234 F.2d at 643.

The Court need not address the first factor because Plaintiff cannot satisfy the second or third factor.  Plaintiff cannot satisfy the second factor because there is insufficient evidence to show that Defendants' foreign registrations and any accompanying foreign sales had a substantial effect on United States commerce.  Plaintiff argues that Defendants' foreign sales of "Patsy's" goods may damage its good will, its reputation, and that Defendants' products may travel into the United States.  (*See* Pl. Post-Hearing Reply at 7-8 n.4, ECF No. 366.)  Plaintiff's argument fails because it has submitted no evidence of actual harm to its good will, that consumers were misled, or of sales into the United States (the only sale in the record is a € 70 sale of coffee in Italy).  (*See* May 27, 2021 Tr. at 726:11-25, ECF No. 354; *see, e.g.*, *Atl. Richfield Co.*, 150 F.3d at 192 (finding no substantial effect because there was "no evidence that

domestic consumers have been misled or have come to view the [] mark less favorably as a result of [the] foreign activities."); *Juicy Couture, Inc.*, 930 F. Supp. 2d at 507-08 (finding no substantial effect due to lack of sales to the United States).)

Plaintiff does not dispute that the third factor argues against extraterritorial application (see Pl. Post-Hearing Reply at 7-8 n.4.), nor can it, because "[a] trademark has a separate legal existence under each country's laws, and trademark rights exist in each country solely according to that nation's laws." *See Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 70 (2d Cir. 2008); *Vanity Fair*, 234 F.2d at 643; *Fresh Del Monte Produce Inc. v. Del Monte Foods, Inc.*, 159 F. Supp. 3d 415, 418 (S.D.N.Y. 2016) (Rakoff, J.) ("It is not surprising, therefore, that plaintiff fails to cite a single case in which a court has applied the Lanham Act to adjudicate the validity of, or ownership interest in, a foreign trademark registration.").

Because Plaintiff cannot satisfy the second and third factors, the Injunction does not apply extraterritorially, and thus Defendants' foreign registrations do not violate the Injunction. *See Atl. Richfield Co.*, 150 F.3d at 192 n.4 ("Indeed, we have never applied the Lanham Act to extraterritorial conduct absent a substantial effect on United States commerce.").  The Court now turns to Defendants' domestic trademark application.

### B.  Whether Paragraph 4(d) of the Injunction is clear and unambiguous

With respect to the first *Paramedics* factor, the Court holds that Paragraph 4(d) of the Injunction is clear and unambiguous.  Paragraph 4(d) prohibits Defendants "from applying for, obtaining or maintaining any trademark registration for a mark which comprises, consists of the words PATSY'S or PATSY'S RESTAURANT for sauces or other packaged food products[.]" As set forth *supra*, Judge Martin held that this language is clear and unambiguous when he found that Defendants violated the Injunction in 2002; and the Second Circuit reviewed, modified, and

affirmed that decision. *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 2002 WL 1988200, at *2

(S.D.N.Y. Aug. 27, 2002); (ECF No. 231 at Ex. 1); *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317

F.3d 209, 220-23 (2d Cir. 2003); *see also Bear U.S.A., Inc. v. Kim*, 71 F. Supp. 2d 237, 247

(S.D.N.Y. 1999) (Kaplan, J.), *aff'd*, 216 F.3d 1071 (2d Cir. 2000) (holding language of an

injunction to be unambiguous where it prohibited, among other things, the sale of "any product

bearing any . . . confusingly similar imitation [of] the trademarks").

      C.   Whether Plaintiff has proven noncompliance by clear and convincing evidence

      With respect to the second *Paramedics* factor, the Court finds that proof of

noncompliance with the Injunction is clear and convincing for the domestic trademark

application.  There is no dispute that Defendants applied for a U.S. trademark for "PATSY'S

PIZZERIA SINCE 1933" on February 1, 2019 for International Class 30, which includes sauces

and other staple foods.  (Pl. Ex. 21.)

      Defendants and their Former Counsel argue that the U.S. application did not violate the

Injunction because the trademark would be used only on take-out pizza boxes.  (Def. Post-

Hearing Opp'n at 26-27; Grandinetti and Stempien Coyle Post-Hearing Opp'n at 7, ECF No.

360.)  As Plaintiff points out, however, the Second Circuit's March 27, 2003 Order permits

Defendants to *use*—not obtain *registrations* for—"PATSY'S PIZZERIA" on take-out boxes.

(*See* Pl. Post-Hearing Reply at 7 n.3.)

      Defendants also argue that Paul Grandinetti, one of their former counsel, "erroneously

attached an incorrect specimen consisting of the back label of a frozen pizza package," and that

Frank Brija never approved or signed the application.  (Def. Post-Hearing Opp'n at 27;

Grandinetti and Stempien Coyle Post-Hearing Opp'n at 7 n.1.)  These arguments are likewise

unavailing because Brija's lawyers filed the application on his behalf and did so pursuant to a

sworn declaration by Brija himself.  *See In Re Sotheby's Inc.*, 18 U.S.P.Q.2d, at *2 (Com'r Pat. & Trademarks 1989) ("The neglect of a party's attorney is imputed to that party and the party is bound by the consequences."); United States Patent and Trademark Office, Trademark Manual of Examining Procedure §§ 601.02, 604.01 (Oct. 2018 ed.).

> D.   Whether Defendants diligently attempted to comply in a reasonable manner

With respect to the third *Paramedics* factor, the Court finds that Defendants were not reasonably diligent in attempting to comply with the Injunction.

Defendants contend that their conduct was based on a "good faith and reasonable interpretation of the Injunction"; and they developed a method to comply with the Injunction—relying on the advice of counsel.  (Def. Post-Hearing Opp'n at 16-19.)

The Court disagrees.  First, Defendants have not proffered any "good faith and reasonable interpretation of the Injunction" that would permit the domestic trademark application.  (*See, e.g.*, May 27, 2021 Tr. at 709:11-735:10.)  Second, Defendants are not first-time infringers, nor is this the first time that they have been found in contempt of Court.  As the Second Circuit has held, for repeat offenders like Defendants, a response that "diligently attempted to comply with the Injunction should have included proceeding with caution" and petitioning the Court for a modification or clarification of the Injunction.  *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 99 (2d Cir. 2016) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949)).  Defendants did neither.  Third, as discussed *supra* Section I.1.C, that Defendants relied on the advice of counsel does not absolve them of liability.

## II.   Reliance on the advice of counsel

Defendants' advice of counsel argument fails.  Reliance on the advice of counsel may be considered in mitigation of punishment.  *United States v. Remini*, 967 F.2d 754, 757 (2d Cir.

1992).  To invoke this principle in the Second Circuit, a party must show that (1) he made a complete disclosure to counsel; (2) sought advice as to the legality of his conduct; (3) received advice that his conduct was legal; and (4) relied on that advice in good faith.  *Markowski v. S.E.C.*, 34 F.3d 99, 104-05 (2d Cir. 1994) (citing *S.E.C. v. Savoy Industries, Inc.*, 665 F.2d 1310, 1314 n.28 (D.C. Cir. 1981)); *see United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1194 (2d Cir. 1989) (quoting *Williamson v. United States*, 207 U.S. 425, 453 (1908)); *United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012); *LNC Invs., Inc. v. First Fid. Bank*, 1997 WL 528283, at *22 (S.D.N.Y. Aug. 27, 1997) (Mukasey, J.); *Sea Trade Mar. Corp. v. Coutsodontis*, 2011 WL 3251500, at *10 (S.D.N.Y. July 25, 2011) (Pitman, M.J.).

Defendants argue that they relied on the advice of their long-time trademark lawyers, Former Counsel, with respect to all of the alleged violations.  Frank Brija and his son Adem Brija repeatedly asked for their Former Counsel's advice regarding numerous iterations of Defendants' label designs.  (*See* May 24, 2021 Tr. at 169:14-19; May 25, 2021 Tr. at 308:17-315:21, ECF No. 350.)  Former counsel typically responded and provided legal advice to Frank and Adem Brija.  (*See* May 24, 2021 Tr. at 36:17-40:25; May 27, 2021 Tr. at 757:21-758:17; May 28, 2021 Tr. at 857:17-858:18, ECF No. 356.)

Former Counsel approved at least one of Defendants' label designs.  On July 30, 2018, Frank Brija sent an image of a pizza pouch label to Former Counsel via text message:



(*See* Def. Ex. KKK; May 24, 2021 Tr. at 137:17-138:18; May 27, 2021 Tr. at 774:2-5.)

Thereafter, Former Counsel spoke on the telephone with Frank and Adem Brija and approved the

label.  (*See* Dec. 12, 2019 Tr. at 12:18-13:11, 36:6-16; May 24, 2021 Tr. at 138:15-139:14; May

26, 2021 Tr. at 593:12-24, ECF No. 352; May 27, 2021 Tr. at 690:19-691:4, 774:6-785:10;

Stempien Coyle July 17, 2018 Mem., ECF No. 282 at Ex. D.)

    After receiving Former Counsel's approval, Defendants used the July 30, 2018 label's

inner, circular logo to design the labels on the jarred pizza sauces and the vacuum-sealed pizza

pouch:



(*See* Scognamillo July 26, 2019 Decl. ¶¶ 26, 30, Figs. 7, 9-11, Exs. 4-7; May 24, 2021 Tr. at

142:13-143:10; May 28, 2021 Tr. at 868:11-869:2; Brija May 12, 2021 Decl. ¶ 6, ECF No. 322.)

Defendants contend that, both before and after posting a picture of these products on social

media, they spoke with and obtained approval from Grandinetti.  (Def. Post-Hearing Opp'n at

10-13.)  This was confirmed by Grandinetti's statements that he believes Defendants "acted in

good faith in relying on [his] firm's opinion and in [Brija's] attempts not to violate the

injunction."  (Grandinetti Dec. 5, 2019 Let. at 2, ECF No. 245; May 26, 2021 Tr. at 539:24-

540:19.)  Thus, Defendants claim that they relied in good faith on the advice of Former Counsel

in posting the jarred sauces and vacuum-sealed pizza on social media.[6]

---

[6] Former Counsel contend that they approved only the one label that was sent to them via text message on July 30, 2018—not the labels on the jarred sauces and vacuum-sealed pizza.  (Grandinetti and Stempien Coyle Post-Hearing Opp'n at 3-4, 11-12.)  Former Counsel also claim that they did not approve or have prior knowledge of the social media posts.  (Non-Parties Post-Hearing Opp'n at 3-4.)

Former Counsel's claims are not persuasive.  First, the minor variations among the labels (e.g., the varying captions used for the different products, the different colors on the inner, circular logo's border) are insignificant because the inner, circular logo, which is the essential element of the label, remained similar.  Thus, the July 30, 2018 label fails to comply with the Injunction's specific limitations for the same reasons that the labels on the jarred sauces and vacuum-sealed pizza fail to comply with the Injunction.  Second, after posting the pictures of the jars and pizza pouch on social media, Adem Brija texted Grandinetti an image of the social media posts.  (Def. Exs. YYY, CCCC.)  The fact that Grandinetti had knowledge of the posts and failed to advise and cause Defendants to delete the posts (the posts were not deleted until after Plaintiff filed its contempt motion in July 2019) suggests that he did not object to them.  (*See* Brija May 12, 2021 Decl. ¶ 20; Def. Post-Hearing Opp'n at 14; *see also* Scognamillo July 26, 2019 Decl. ¶¶ 28-29, 33-35.)  Third, while representing Defendants, Grandinetti admitted on multiple occasions that his

Defendants claim (and Former Counsel do not dispute) that they relied on the advice of Grandinetti in applying for the domestic trademark. (*See* May 26, 2021 Tr. at 602:1-606:25; May 27, 2021 Tr. at 727:19-735:9; 747:12-751:8, 823:11-14.)

Even if Defendants made a complete disclosure of the facts to their Former Counsel, sought advice as to the legality of their conduct, and received advice that their conduct was legal, their reliance could not be deemed to have been in good faith because, as discussed *supra* Part I, no interpretation of the Injunction would permit the four social media posts and the domestic trademark application. Any legal advice to the contrary is incompetent.

First, the labels on the jarred sauces and vacuum-sealed pizza pouch violate the clear and detailed directives of the Injunction. The Second Circuit's modification permits Defendants to use the name "Patsy's Pizzeria" on pasta sauce and packaged food product labels if the identification (1) does not exceed 10-point type, (2) is a minor component of the labeling, (3) uses both words in the same size and font, (4) does not use a font similar to that used by Plaintiff, and (5) is used only to identify the maker or distributor of the product. *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 220-23 (2d Cir. 2003). It is difficult to see how the labels at issue (including the July 30, 2018 label) comply with even one of these requirements—let alone all five—because the name "Patsy's Pizzeria" on the inner, circular logo on the jarred sauces and vacuum-sealed pizza (1) is larger than 10-point font, (2) is prominent on the label, (3) the words "Patsy's" and "Pizzeria" are not the same size or in the same font, (4) they are in a font similar to that used by Plaintiff, and (5) they are not used only to identify the maker or distributor of the

---

law firm approved the labels on the jarred sauces and vacuum-sealed pizza. (*See, e.g.*, Grandinetti Nov. 5, 2019 Let. Mot. at 1, ECF No. 233 ("Ms. Stempien is the counsel who provided the clearance for the label appearing in the prototype pizza pouches and the three prototype pizza sauce jars."); Grandinetti Dec. 5, 2019 Let. at 2, ECF No. 245; Dec. 12, 2019 Tr. at 9:12-19, 16:12-19:8, 21:1-17.)

product.  (*See* Pl. Post-Hearing Mem. at 15 (collecting evidence); Scognamillo July 26, 2019

Decl. ¶¶ 26, 30, Figs. 7, 9-11, Exs. 4-7.)

Defendants and their Former Counsel claim that they were aware of the Injunction, as

modified by the Second Circuit, and Judge Martin's August 27, 2002 decision holding

Defendants in contempt of Court.  (*See* Grandinetti and Stempien Coyle Post-Hearing Opp'n at

3-7; May 24, 2021 Tr. at 88:5-100:3, 120:18-123:9; May 26, 2021 Tr. at 420:15-432:19; 643:7-

676:5.)  In 2002, Judge Martin held that Defendants' labels at the time (MacMull June 7, 2021

Decl. at Ex. 20) were confusingly similar to Plaintiff's trade dress.[7]  Rather than designing a

more distinctive label, nearly 20 years later, Defendants continued to design labels with fonts,

font sizes, and a color scheme similar to Plaintiff's labels and trade dress.  *See Patsy's Brand,*

*Inc. v. I.O.B. Realty, Inc.*, 2002 WL 1988200, at *2 (S.D.N.Y. Aug. 27, 2002) ("Indeed, given

how closely the Defendants' labels imitate the Plaintiff's trade dress, no competent attorney

could have opined that the Defendant's labels and packaging did not violate the injunction.").

The violations of the Injunction at issue here are even more egregious than the violation in 2002.

As discussed *supra* Section I.1.C, Defendants designed labels that are *even more* confusingly

similar to Plaintiff's mark and trade dress than the labels Judge Martin found violated the

Injunction.  Thus, Defendants' conduct was in complete disregard of the safe distance rule.[8]  *See*

*Harris v. Fairweather*, 2012 WL 3956801, at *12 (S.D.N.Y. Sept. 10, 2012) (Peck, M.J.), *report*

---

[7] Judge Martin explicitly reminded Defendants that "one who has been found to have intentionally infringed
another's trademark and has been enjoined by the court from use of the infringing mark must thereafter 'keep a safe
distance' and will be held to a higher standard of conduct with respect to the adoption of a new mark than would
have been applied in the first instance." *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 2002 WL 1988200, at *2
(S.D.N.Y. Aug. 27, 2002) (quoting *Aurora Prods. Corp. v. Schisgall Enterprises Inc.*, 176 U.S.P.Q. 184, 188
(S.D.N.Y.1972) (Tenney, J.)).
[8] The Court finds it remarkable that neither Defendants' nor their Former Counsel's briefing mentions the safe
distance rule.  Equally remarkable are Former Counsel's admissions that they never reviewed or considered
Defendants' 2002 label (May 25, 2021 Tr. at 266:6-9, 266:21-23, 268:10-14; May 26, 2021 Tr. at 438:6-439:6; May
27, 2021 Tr. at 650:10-11, 800:23-801:5, 804:15-16), and Frank Brija's testimony that he has not reviewed the 2002
contempt order in the last ten years (May 24, 2021 Tr. at 89:8-91:18).

*and recommendation adopted,* 2012 WL 5199250 (S.D.N.Y. Oct. 19, 2012) (Castel, J.); *see Espinoza v. Allen Imports & Trade Corp.*, 100 F.3d 942 (2d Cir. 1996) (summary order).

Second, the domestic trademark application violates the Injunction, regardless of how narrowly the Injunction is construed.  Paragraph 4(d) prohibits Defendants "from applying for, obtaining or maintaining *any* trademark registration for a mark which comprises, consists of the words PATSY'S or PATSY'S RESTAURANT for sauces or other packaged food products[.]" (Injunction ¶ 4(d) (emphasis added).)  Former Counsel's advice that applying for a domestic trademark complies with the Injunction is plainly incompetent.  *See Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 2002 WL 1988200, at *2 (S.D.N.Y. Aug. 27, 2002) ("Unreasonable reliance on an incompetent opinion of counsel is insufficient to save defendants from a finding of contempt.").  No legal advice is needed to understand Paragraph 4(d)'s prohibition of "applying for, obtaining or maintaining *any* trademark registration" with the words "Patsy's."  Injunction ¶ 4(d) (emphasis added); *see S.E.C. v. McNamee*, 481 F.3d 451, 456 (7th Cir. 2007) ("One is inclined to ask what part of "any" [contemnor] doesn't understand.  No lawyer—indeed, no literate person—could think this portion of the injunction [was limited.]"); *see also Beech-Nut Nutrition Corp.*, 871 F.2d at 1194 (quoting *Williamson*, 207 U.S. at 453) ("[N]o man can willfully and knowingly violate the law and excuse himself from the consequences thereof by pleading that he followed the advice of counsel.").  Even assuming, *arguendo*, that there were doubts regarding the scope of the Injunction, the onus is on contemnors like Defendants to proceed with caution and to petition the Court for a modification or clarification of the Injunction.  *CBS Broad. Inc.*, 814 F.3d at 99 (citing *McComb*, 336 U.S. at 192).  Defendants and their Former Counsel failed to do either.

Third, although Defendants may have received *some* legal advice on the labels and domestic trademark application, Defendants failed to specify *what* legal advice they received beyond their bare-bones assertions that their Former Counsel approved the label(s) and informed them that the Injunction did not bar the domestic trademark application.  (*See, e.g.*, May 24, 2021 Tr. at 68:11-71:17, 120:18-123:9; May 26, 2021 Tr. at 602:1-606:25; May 27, 2021 Tr. at 709:14-735:9; 747:12-751:8, 823:11-14; *see also McNamee*, 481 F.3d at 456 (citing *Markowski v. S.E.C.*, 34 F.3d 99, 104-05 (2d Cir. 1994)) ("It isn't possible to make out an advice-of-counsel defense without producing the actual advice from an actual lawyer.")  In 2002, for example, Judge Martin specifically rejected Defendants' advice of counsel defense because Defendants failed to offer any written opinion; the only relevant document was counsel's memorandum to file stating that the proposed labels "did not seem in any way objectionable from a trademark point of view because they quite clearly state that the name of the company is Patsy's Pizzeria, not Patsy's alone or Patsy' [sic] Restaurant." *See Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 2002 WL 1988200, at *2 (S.D.N.Y. Aug. 27, 2002).  Today, 20 years later, Defendants again argue that they relied on the advice of counsel, without proffering the substance of any opinion.  The only relevant document that they can point to is another memorandum to file by Stempien Coyle—never received by Defendants—stating, in relevant part, that the Second Circuit's opinion "[s]uggests that [Defendants] can make labels using PATSY'S PIZZERIA as mark, and past the 10-point font express leeway, so long as there is no likelihood of confusion with Patsy's Brand's labels." (Stempien Coyle July 17, 2018 Mem.; May 27, 2021 Tr. at 778:14-16, 795:3-13.)  Defendants have failed to heed Judge Martin's warnings from the first contempt proceeding, and their advice of counsel argument is unavailing.

### III.    Sanctions

*1.  Sanctions against Former Counsel*

In addition to seeking sanctions against Defendants, Plaintiff also asks the Court to sanction Former Counsel for their role in aiding and abetting Defendants in their violations of Paragraphs 4(a) and 4(d) of the Injunction.

Under Rule 65(d) of the Federal Rules of Civil Procedure, an order or injunction may bind a party's "officers, agents, servants, employees, and attorneys; and . . . other persons who are in active concert or participation with [them]" and who receive "actual notice of [the order]." Consequently, a non-party may be found in civil contempt for violating an injunction when the non-party "knowingly assists a defendant in violating an injunction." *United States v. Paccione*, 964 F.2d 1269, 1274 (2d Cir. 1992) (citation omitted); *Experience Hendrix, LLC v. Hendrix*, 2021 WL 82269, at *3 (S.D.N.Y. Jan. 11, 2021) (Engelmayer, J.); *In re Soundview Elite, Ltd.*, 2016 WL 1178778, at *8 (S.D.N.Y. Mar. 23, 2016) (Failla, J.).

Former Counsel are bound by the Injunction and may be found in civil contempt.  The Injunction enjoined, among others, "Defendants, their . . . attorneys, and all persons in active concert and participation with them, or any of them."  (Injunction ¶ 3.)  There is no dispute that Former Counsel acted as Defendants' attorneys and had notice of the Injunction.  Former Counsel knowingly aided Defendants in applying for a domestic trademark, in violation of Paragraph 4(d).  Former Counsel also approved the July 30, 2018 pizza pouch label—an infringing label that Defendants modified slightly, attached to their jarred pizza sauces and other vacuum-sealed pizza, and posted on social media.  Despite receiving notice of these posts, Grandinetti failed to advise and cause Defendants to take them down.  Thus, sanctions against Former Counsel are appropriate.  *See Whitcraft v. Brown*, 570 F.3d 268, 272-73 (5th Cir. 2009);

*Chicago Truck Drivers, Helpers & Warehouse Workers Union Pension Fund v. Bhd. Lab. Leasing*, 406 F.3d 955, 959 (8th Cir. 2005).

  *2. Coercive sanctions*

  The Court now turns to the appropriate sanctions against both Defendants and their Former Counsel.[9]  Civil contempt sanctions serve two purposes: "to coerce future compliance and to remedy any harm past noncompliance caused the other party." *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996).  The objective of coercive sanctions is to force the contemnor to conform its conduct to the court's order.  *New York State Nat. Org. for Women v. Terry*, 159 F.3d 86, 93 (2d Cir. 1998).  In determining whether to impose coercive sanctions, courts consider "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon him." *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir. 1987).  A coercive fine must be substantial enough to make it more economical for a contemnor to comply than not to comply.  *See Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982).  A district judge, sitting in equity, "is vested with wide discretion in fashioning a remedy" to encourage future compliance.  *See Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979).

  With respect to the first factor, Plaintiff has demonstrated to a reasonable certainty that Defendants—aided by their Former Counsel—violated the Injunction on *five* separate occasions.

---

[9] Defendants argue that any finding of liability, damages, sanctions, or attorney's fees against them based on the domestic trademark application is highly prejudicial because they purportedly had no notice of the application and were unable to present advice of counsel evidence on it.  (Def. Post-Hearing Opp'n at 1 n.1.)  The Court notes, however, that Defendants' argument that they relied on the advice of Grandinetti in applying for a domestic trademark is undisputed.  (*See* May 26, 2021 Tr. at 602:1-606:25; May 27, 2021 Tr. at 727:19-735:9; 747:12-751:8, 823:11-14.)  Further, the Court allowed the parties to brief all issues related to the domestic trademark application in their post-hearing briefs and permitted Defendants to file a 35-page opposition brief and a 15-page sur-reply.

The Court finds that each violation may lead to consumer confusion and may damage Plaintiff's good will and reputation.  In addition, further violations will require another substantial diversion of Plaintiff's executives' attention from running their business.  With respect to the second factor, for a sanction to be effective in bringing about swift compliance, a substantial penalty is warranted, because this is the second time Defendants have been held in contempt of Court for violating the Injunction.  With respect to the third factor, neither Defendants nor their Former Counsel have offered any evidence that they are unable to pay potential sanctions.  *See Paramedics Electromedia Comercial, LTDA*, 369 F.3d at 658 (noting that the contemnor bears the burden of establishing a lack of financial resources in raising a defense of inability to pay).

In light of these circumstances, the Court holds that a sanction of $100,000 ($20,000 per violation)—$50,000 against Defendants, and $50,000 jointly and severally against Former Counsel—is appropriate to coerce future compliance.[10]  *See CBS Broad. Inc.*, 814 F.3d at 102-03 (citation and internal quotation marks omitted) (affirming district court's civil contempt sanctions and noting that the court's "civil contempt powers are particularly adapted to curb recidivist offenders where future noncompliance is a well-founded concern"); *see, e.g.*, *Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 2004 WL 2550313, at *7 (E.D.N.Y. Nov. 9, 2004).  The sanction shall be payable to the Clerk of Court rather than to Plaintiff because Plaintiff has "made no showing of compensable injury or actual loss due to [D]efendants' failure to obey the court order."  *Terry*, 886 F.2d at 1353-54 ("[S]ome proof of loss must be present to

---

[10] In finding Defendants in contempt of Court in 2002, Judge Martin stated that "a coercive fine of $10,000 also is appropriate with the admonition that if there are future violations of this Court's orders, that fine will be increased tenfold." *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 2002 WL 1988200, at *3 (S.D.N.Y. Aug. 27, 2002).  Plaintiff relies on this language in demanding a sanction of $100,000 per violation.  That amount would be excessive here because Plaintiff has not offered any relevant evidence of economic harm, e.g., sales of the infringing products.

justify [a fine's] compensatory aspects."); *see King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1062-63

(2d Cir. 1995); *Paramedics Electromedicina Comercial, LTDA*, 369 F.3d at 657-58.

    If there are future violations of the Injunction, Defendants will be sanctioned $100,000

for each violation.  *See, e.g.*, *CBS Broad. Inc.*, 814 F.3d at 101-04.

    *3.   Attorney's fees and costs*

    In addition to coercive sanctions, Plaintiff also requests attorney's fees and costs incurred

as a result of the present contempt motion.

    A district court may award appropriate attorney's fees and costs to a victim of contempt.

*Weitzman*, 98 F.3d at 719; *see Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142,

147 (2d Cir. 2001) ("[T]he decision to award fees rests in the court's equitable discretion.").

Although the Second Circuit has not decided whether "a finding of willfulness or bad faith is

required before a court may order attorneys' fees as a sanction for violating a court order,"

*Jacobs v. Citibank, N.A.*, 318 F. App'x 3, 5 n.3 (2d Cir. 2008), such a finding strongly supports

granting attorney's fees and costs, *Weitzman*, 98 F.3d at 719.  "A willful contempt is one where

the contemnor had actual notice of the court's order, was able to comply with it, did not seek to

have it modified, and did not make a good faith effort to comply."  *Fendi Adele S.R.L. v.

Burlington Coat Factory Warehouse Corp.*, 2007 WL 2982295, at *12 (S.D.N.Y. Oct. 10, 2007)

(citations omitted) (Sand, J.).

    The Court finds that Plaintiff is entitled to reasonable attorney's fees incurred in litigating

this contempt motion because Defendants and their Former Counsel willfully violated the

Injunction.  *See, e.g.*, *Broker Genius Inc. v. Seat Scouts LLC*, 2019 WL 2462333, at *4, *4 n.3

(S.D.N.Y. June 13, 2019) (Stein, J.).  Defendants and their Former Counsel had notice of the

Injunction; failed to seek to modify it before making the social media posts and applying for the

domestic trademark; and did not make a good faith effort to comply with the Injunction for the reasons explained *supra* Parts I and II.  The same evidence demonstrates that Former Counsel rendered incompetent legal advice.  Defendants shall pay half of Plaintiff's total attorney's fees and costs, and Former Counsel shall, jointly and severally, pay the other half of Plaintiff's total attorney's fees and costs.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to hold Defendants in civil contempt is GRANTED IN PART AND DENIED IN PART:

- Defendants and their Former Counsel shall pay the Clerk of Court $100,000 in coercive sanctions, by September 3, 2021.  Defendants shall be responsible for $50,000, and Former Counsel shall, jointly and severally, be responsible for $50,000.

- Defendants and their Former Counsel shall reimburse Plaintiff for the reasonable attorney's fees and costs that it incurred in bringing this motion.  Defendants shall pay half of Plaintiff's total attorney's fees and costs, and Former Counsel shall, jointly and severally, pay the other half of Plaintiff's total attorney's fees and costs.  Plaintiff's counsel shall submit documentation of its reasonable attorney's fees and costs that it incurred in moving for contempt by August 13, 2021.  Defendants and Former Counsel may submit a response by August 27, 2021.  If Plaintiff wishes to submit a reply, it must do so by September 3, 2021.

- Defendants are ORDERED to take all appropriate and necessary actions, by September 3, 2021, to comply with this Opinion & Order, including affirmatively abandoning the United States application for "PATSY'S PIZZERIA SINCE 1933," Serial No. 88/286,031.

The Clerk of Court is respectfully directed to terminate the pending motion at ECF No.

183.  The motions *in limine* at ECF Nos. 218 and 220 are DENIED AS MOOT, and all other

motions and requests are DENIED.[11]


SO ORDERED.

Dated:  New York, New York
            August 5, 2021

                                                    /s/ Kimba M. Wood
                                                  KIMBA M. WOOD
                                            United States District Judge

---

[11] In addition to sanctions, Plaintiff requests a variety of non-monetary injunctive relief, e.g., "that Defendants be forever barred from using the term 'PATSY'S' or 'PATSY'S RESTAURANT' in whatever form in connection with sauces or any other packaged food products."  (Pl. Post-Hearing Mem. at 32-34.)  In response, Defendants requested "to increase the font limitation of 'Patsy's Pizzeria.'"  (Def. Post-Hearing Opp'n at 34-35.)  The requests are DENIED WITHOUT PREJUDICE because, as both parties admit, they require the Court to modify the Injunction and are procedurally improper at this juncture.  *See Vuitton et Fils S.A.*, 592 F.2d at 130 (holding that a "district judge, sitting in equity, is vested with wide discretion in fashioning a remedy" after a finding of civil contempt).