**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PATSY'S BRAND, INC., | Civil Action No. 99-cv-10175 (KMW) |
| *Plaintiff,* | |
| v. | |
| I.O.B. REALTY, INC., PATSY'S INC., FRANK BRIJA, JOHN BRECEVICH, and NICK TSOULOS | |
| *Defendants.* | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF PATSY'S BRAND, INC.'S MOTION FOR CONTEMPT, SANCTIONS,
ATTORNEY'S FEES AND COSTS, AND TO MODIFY THE INJUNCTION**

Joel G. MacMull
Brian M. Block (*pro hac vice*)
**MANDELBAUM BARRETT PC**
570 Lexington Avenue, 21st Floor
New York, New York 10022
T: (212) 776-1834
jmacmull@mblawfirm.com
bblock@mblawfirm.com

*Attorneys for Plaintiff
Patsy's Brand, Inc.*

Dated: March 8, 2024

4885-3706-1035, v. 1

## TABLE OF CONTENTS

INTRODUCTION .......................................................................................................... 1

RELEVANT FACTS ................................................................................................... 2

LEGAL ARGUMENT.................................................................................................. 9

I.   Contemnors are in contempt for violating paragraphs 4(d) and 4(e) of the Injunction. ........ 9

    A.  The legal standard governing civil contempt.................................................. 9

    B.  The Injunction is clear and unambiguous. .................................................... 10

    C.  Patsy's Brand proved the contemnors violated paragraphs 4(d) and 4(e) of the Injunction by clear and convincing evidence.................................................. 12

        i.    Brija and I.O.B. violated paragraph 4(d) of the Injunction.................................... 12

        ii.   Nezaj and Memishaj are likewise in contempt either directly or for aiding and abetting Brija in the violation of paragraph 4(d). .................................................. 15

        iii.  Brija and Roffe violated paragraph 4(e) of the Injunction.................................... 18

    D.  The contemnors have not diligently attempted to comply with the Injunction in a reasonable manner. ........................................................................................ 19

II.  The Court should sanction the contemnors, award attorney's fees and costs, enter additional injunctive relief, and increase the per violation sanction.................................... 20

    A.  The Court should levy a coercive sanction of $300,000 against Brija. ........................ 21

    B.  The Court should award Patsy's Brand its reasonable attorney's fees and costs associated with this application. .................................................................... 22

    C.  The Court should direct Brija to abandon all trademark applications. .......................... 23

III. The Court should seriously consider initiating a criminal contempt. .................................. 24

IV.  The Court should grant expedited discovery if necessary. .................................................. 26

CONCLUSION.......................................................................................................... 26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alemite Mfg. Corp. v. Staff*,
    42 F.2d 832 (2d Cir. 1930) (Hand, J.)......................................................................16

*Amity Leather Products Co. v. RGA Accessories, Inc.*,
    849 F. Supp. 871 (S.D.N.Y.), *aff'd*, 22 F.3d 1091 (2d Cir. 1994)..........................19

*Aquavit Pharm., Inc. v. U-Bio Med, Inc.*,
    No. 19-CV-3351, 2020 WL 1900502 (S.D.N.Y. Apr. 17, 2020) ...........................19

*Armstrong v. Guccione*,
    470 F.3d 89 (2d Cir. 2006)......................................................................................9

*Casale v. Kelly*,
    710 F. Supp. 2d 347 (S.D.N.Y. 2010)...................................................................23

*CBS Broad. Inc. v. FilmOn.com, Inc.*,
    814 F.3d 91 (2d Cir. 2016)................................................................10, 12, 19, 21

*Doctor's Associates, Inc. v. Reinert & Duree*,
    P.C., 191 F.3d 297 (2d Cir. 1999)........................................................................14

*Dole Fresh Fruit Co. v. United Banana Co.*,
    821 F.2d 106 (2d Cir. 1987)..................................................................................21

*Eli Lilly & Co. v. Gottstein*,
    617 F.3d 186 (2d Cir. 2010)..................................................................................14

*Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*,
    2007 WL 2982295 (S.D.N.Y. Oct. 10, 2007) .......................................................22

*Havens v. James*,
    76 F.4th 103 (2d Cir. 2023) ........................................................................ *passim*

*Hill v. United States*,
    33 F.2d 489 (8th Cir. 1929) ..................................................................................17

*Jacobs v. Citibank, N.A.*,
    318 F. App'x 3 (2d Cir. 2008) ..............................................................................22

*King v. Allied Vision, Ltd.*,
    65 F.3d 1051 (2d Cir. 1995)..................................................................................10

*Lindland v. U.S. Wrestling Ass'n, Inc.*,
    227 F.3d 1000 (7th Cir. 2000) (Easterbrook, J.).............................................16, 18

iii

*Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*,
  885 F.2d 1 (2d Cir. 1989)...............................................................................21

*MPC Franchise, LLC v. Tarntino*,
  19 F. Supp. 3d 456 (W.D.N.Y. 2014), *aff'd*, 826 F.3d 653 (2d Cir. 2016) ...........................23

*MPC Franchise, LLC v. Tarntino*,
  826 F.3d 653 (2d Cir. 2016)..........................................................................23

*Musidor, B. V. v. Great Am. Screen*,
  658 F.2d 60 (2d Cir. 1981)...........................................................................25

*New York State Nat. Org. for Women v. Terry*,
  159 F.3d 86 (2d Cir. 1998)...........................................................................21

*Next Investments, LLC v. Bank of China*,
  12 F.4th 119 (2d Cir. 2021) .........................................................................26

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*,
  317 F.3d 209 (2d Cir. 2003)...........................................................................3

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*,
  99-CV-10175, 2021 WL 3418475 (S.D.N.Y. Aug. 5, 2021) (Wood, J.)...................... *passim*

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*,
  No. 99-CV-10175, 2001 WL 170672 (S.D.N.Y. Feb. 21, 2001)...........................................2

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*,
  No. 99-cv-10175, 2002 WL 1988200 (S.D.N.Y. Aug. 27, 2002)................................1, 10, 27

*Patsy's Italian Rest., Inc. v. Banas*,
  575 F. Supp. 2d 427 (E.D.N.Y. 2008), *aff'd*, 658 F.3d 254 (2d Cir. 2011)......................6, 12

*Patsy's Italian Rest., Inc. v. Banas*,
  658 F.3d 254 (2d Cir. 2011)..........................................................................23

*S.E.C. v. Am. Bd. of Trade, Inc.*,
  830 F.2d 431 (2d Cir. 1987)..........................................................................25

*S.E.C. v. McNamee*,
  481 F.3d 451 (7th Cir. 2007) ........................................................................12

*S.E.C. v. Platinum Inv. Corp.*,
  98 F. App'x 33 (2d Cir. 2004) .......................................................................14

*Shady Records, Inc. v. Source Enters., Inc.*,
  351 F. Supp. 2d 64 (S.D.N.Y. 2004)...................................................................22

*Taggart v. Lorenzen*,
    139 S. Ct. 1795 (2019)..................................................................................................10

*United States v. Donziger*,
    No. 11-cv-691, 2021 WL 3141893 (S.D.N.Y. July 26, 2021), *aff'd*, 38 F.4th
    290 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 868 (2023) ...............................25, 26

*United States v. Donziger*,
    No. 11-cv-691, 2021 WL 92761 (S.D.N.Y. Jan. 10, 2021) ....................................25

*United States v. Jiffy Cleaners of Hartsdale, Inc.*,
    No. 16-CV-2428, 2020 WL 4284155 (S.D.N.Y. July 27, 2020)...........................17

*United States v. Paccione*,
    964 F.2d 1269 (2d Cir. 1992)..........................................................................16, 25

*United States v. Schine*,
    260 F.2d 552 (2d Cir. 1958).......................................................................14, 15, 26

*United States v. Twentieth Century Fox Film Corp.*,
    882 F.2d 656 (2d Cir. 1989)............................................................................25, 26

*Vuitton et Fils S.A. v. Carousel Handbags*,
    592 F.2d 126 (2d Cir. 1979)............................................................................21, 23

*Weitzman v. Stein*,
    98 F.3d 717 (2d Cir. 1996)..............................................................................20, 22

*Young v. U.S. ex rel. Vuitton et Fils S.A.*,
    481 U.S. 787 (1987)........................................................................................25, 26

**Statutes**

18 U.S.C. § 401 ..........................................................................................................26

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 65(d) ...................................................................................................16

Fed. R. Civ. P. 65(d)(2).......................................................................................*passim*

Fed. R. Civ. P. 65(d)(2)(A) .........................................................................................12

Fed. R. Civ. P. 65(d)(2)(B) .........................................................................................19

Fed. R. Crim. P. 42 .....................................................................................................26

L.R. 83.6(a) .................................................................................................................22

**Other Authorities**

Wright & Miller, 11A *Fed. Prac. & Proc. Civ.* § 2956 (3d ed.) ....................................................17

43A C.J.S. *Injunctions* § 467 ........................................................................................................14

*McCarthy on Trademarks and Unfair Competition* § 30:22 (5th ed.)...........................................19

5 *McCarthy on Trademarks and Unfair Competition* § 30:14 (5th ed.).......................................16

## **INTRODUCTION**

> There are some people who cannot take no for an answer. In some
> circumstances such persistence may be considered a virtue.
> However, when the "no" is incorporated in an injunction, the failure
> to refrain from the prohibited conduct constitutes contempt of Court
> and is subject to sanction. Such is the case here.

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99-cv-10175, 2002 WL 1988200, at *1 (S.D.N.Y.

Aug. 27, 2002). The Honorable John S. Martin's words are once again as true today as they were

nearly twenty-two years ago when the Court first held defendant Isa Brija ("Brija") in contempt of

the permanent injunction ("Injunction") that the Court entered in 2001.

Undeterred by this Court holding him in contempt for a third time in this case in 2021,

Brija has embarked on a brazen scheme in which he is using two strawmen to try to circumvent

the Injunction. More specifically, he enlisted Nexhmije Nezaj ("Nezaj"), the mother of his children

and whom he refers to as his wife, and Muharrem Memishaj ("Memishaj"), his longtime friend

and business partner, to file two trademark applications in the United States Patent and Trademark

Office ("USPTO") for PATSY'S OF EAST HARLEM and PATSY'S OF HARLEM for frozen

pizza. These applications are expressly prohibited by paragraph 4(d) of the Injunction. Indeed, the

Court held Brija in contempt in 2021 for applying to register the mark PATSY'S PIZZERIA

SINCE 1933 for frozen pizza. He is now in contempt of this same provision yet again.

But there is more. Brija also violated Injunction paragraph 4(e) when he counterclaimed in

the Trademark Trial and Appeal Board ("Board") to cancel Patsy's Brand, Inc.'s ("Patsy's Brand")

registered trademark known as PATSY'S for sauces, which is the same mark that was the basis

for the Injunction. When Patsy's Brand gave Brija and his attorney an opportunity to withdraw his

cancellation counterclaim and save themselves from contempt, they refused.

The Court should now find each of the contemnors in contempt yet again for violating the

Injunction and impose the severe sanctions that Patsy's Brand requests herein.

## RELEVANT FACTS

The sordid procedural facts and history underlying this case from 1999 through 2021 are in this Court's most recent decision, *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 99-CV-10175, 2021 WL 3418475 (S.D.N.Y. Aug. 5, 2021) (Wood, J.), in which the Court found Brija (and his former counsel) in contempt of the Injunction for a second time and in contempt in this case more generally for a third time. Rather than repeat those facts, Patsy's Brand respectfully refers the Court to that opinion and sets forth below only those historical facts as well as new facts that are salient and necessary to this contempt motion.

### I.    The 2001 Injunction.

Since 1995, Patsy's Brand has owned a registered trademark known as the PATSY'S trademark in International Class 30 for sauces, U.S. Registration No. 1,874,789 (hereafter, the "PATSY'S Mark"). (ECF 185-1 ¶¶ 20, 50, at 22-23 (copy of Complaint); *see also* ECF 1 (original filing)). Prior to Patsy's Brand filing suit in 1999, the year prior, I.O.B. petitioned the Board to cancel the PATSY'S Mark. (ECF 185-4 ¶ 30; ECF 1 ¶ 30).

In 1999, Patsy's Brand sued Defendants for trademark infringement concerning the PATSY'S Mark. (ECF 185-1; ECF 1). This Court granted summary judgment in favor of Patsy's Brand in the underlying infringement case. *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99-CV-10175, 2001 WL 170672 (S.D.N.Y. Feb. 21, 2001). On April 17, 2001, the Court entered a Final Judgment in this case that included findings and the Injunction. (ECF 82; ECF 185-4). The Final Judgment ordered, adjudged, and decreed in relevant part as follows:

> 2.  That plaintiff is the owner of all right, title and interest, including trademark rights, in and to the **trademark PATSY'S for sauces and is the owner of a valid U.S. trademark registration for such mark, Registration No. 1,874,789.**
>
> 3.  That the trademark PATSY'S as used by Defendants for sauces is likely to cause confusion with **plaintiff's trademark PATSY'S for sauces**.

4.  That Defendants,[1] their successors, assigns, officers, directors, servants, employees, distributors, customers, representatives, agents and attorneys, and all persons in active concert and participation with them, or any of them. Be and they are hereby permanently restrained and enjoined:

. . . .

> d.  from applying for, obtaining or maintaining **any** trademark registration for a mark which comprises, consists of the words **PATSY'S** or PATSY'S RESTAURANT for sauces or other packaged food products;
>
> e.  from opposing any application for registration or **petitioning to cancel any registration of Plaintiff for trademark PATSY'S for sauces** or other packaged food products or restaurant services[.]

. . . .

> 6.      That Defendants shall withdraw their Petition for Cancellation No. 28,142, which is pending before the Trademark Trial and Appeal Board with respect to Plaintiff's trademark registration for PATSY'S.

(ECF 82 ¶¶2-4(d)-(e); ECF 185-4 ¶ 2-4(d)-(e) (emphasis added); *accord* Declaration of Joel G. MacMull ("MacMull Decl."), Ex. 1); *see also Patsy's Brand, Inc.*, 2021 WL 3418475, at *1 (quoting Injunction). In addition to this language, by operation of Fed. R. Civ. P. 65(d)(2), the Injunction binds "the parties; the parties' officers, agents, servants, employees, and attorneys; and other persons who are in active concert or participation with" with them.

The Second Circuit affirmed the Injunction, only modifying provisions not relevant to this motion for contempt. *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 222-23 (2d Cir. 2003); *see also Patsy's Brand, Inc.*, 2021 WL 3418475, at *2, *11 (explaining same).

## II.    Brija violates the Injunction in 2019-2021.

In 2019, Patsy's Brand moved to hold Brija and his former counsel in contempt for violating the Injunction on several occasions in or around that timeframe. *See Patsy's Brand, Inc.*, 2021 WL 3418475, at *1. Relevant here, Brija applied in February 2019 to the USPTO to register the trademark PATSY'S PIZZERIA SINCE 1933 in International Class 30, which includes sauces

---

[1]      The "Defendants" in the case were Brija, I.O.B. Realty, Inc. ("I.O.B."), and others.

and other staple foods. *Id.* at *3; (ECF 359-15 at 85). The specimen of use filed in connection with that application was a bag to hold frozen pizzas. *Patsy's Brand, Inc.*, 2021 WL 3418475, at *11; (*see also* ECF 359-15 at 95 (frozen pizza bag specimen)).

This Court held Brija and his former counsel in contempt of Injunction paragraph 4(d) for filing that trademark application with the USPTO. *Patsy's Brand, Inc.*, 2021 WL 3418475, at *10-11. The Court first found that paragraph 4(d) was clear and unambiguous, just as Judge Martin found it clear and unambiguous in 2002. *Id.* at *11. Second, the Court found clear and convincing proof of non-compliance with paragraph 4(d) because there was no dispute Brija applied for the mark in International Class 30 that includes sauces and other staple foods. *Id.* And third, the Court found Brija was not reasonably diligent in attempting to comply with paragraph 4(d). *Id.* at *12. In this regard, the Court rejected Brija's argument that he relied on his former counsel. *Id.* This was because he failed to proffer any good faith and reasonable interpretation of the Injunction that would permit his application. *Id.* The Court explained that the purported legal advice Brija received in applying for the registration was incompetent because "[n]o legal advice is needed to understand paragraph 4(d)'s prohibition of 'applying for, obtaining or maintaining **any** trademark registration' with the words 'Patsy's.'" *Id.* at *15 (emphasis original) (quoting Injunction ¶ 4(d)).

Ultimately, for their various instances of contempt including the unlawful trademark application, this Court levied a coercive sanction against Brija and his former counsel totaling $100,000, required them to pay Patsy's Brand's attorneys' fees and costs, and ordered them to take all necessary actions to affirmatively abandon the trademark application. *Id.* at *18.

This Court also warned Brija as follows: "If there are future violations of the Injunction, Defendants will be sanctioned $100,000 for each violation." *Id.* at *17.[2]

---

[2]    Judge Martin had previously warned Brija in 2002 that if there were any future violations, his $10,000 sanction "will be increased tenfold." *Id.* at *17 n.10.

**III.    Brija violates paragraph 4(d) of the Injunction using his two confederates and violates paragraph 4(e) of the Injunction.**

**A.  The PATSY'S OF EAST HARLEM Application.**

On January 11, 2023, Nezaj caused to be filed an application with the USPTO to register the trademark PATSY'S OF EAST HARLEM, U.S. Serial No. 97749994 (the "East Harlem Application"). (MacMull Decl., Ex. 6 at 1-2). The East Harlem Application identified the goods claimed in the application as "Frozen pizza" in International Class 30. (*Id.*, Ex. 6 at 1, 3). Nezaj resides in Manhattan. (*Id.*, Ex. 6 at 1). Nezaj is not represented in the USPTO by an attorney.

Nezaj is not just anyone. As Brija testified to during his 2018 deposition, Nezaj is the mother of Brija's two children and the woman who he has referred to for the past twenty years — now presumably the past twenty-five years — as his "wife," although they are not legally married. (*Id.*, Ex. 2 at 61:25-62:16). At least as of the time Brija testified in 2018, Nezaj was involved in Brija's Patsy's Pizzeria franchising business as a marketing consultant. (*Id.*, Ex. 2 at 62:17-63:2).

On October 6, 2023, the USPTO issued a Non-Final Office Action refusing to publish the East Harlem Application based on, among other things, a likelihood of confusion with three registered trademarks owned by Patsy's Brand and a potential likelihood of confusion with the applied-for mark in U.S. Application Serial No. 78804471, which is a trademark application previously filed by Brija's company, I.O.B., for PATSY'S PIZZERIA. (*Id.*, Ex. 7 at 5, 13).

On December 30, 2023, Nezaj filed her response to the Office Action. (*Id.*, Ex. 8). Therein, "she"[3] made several arguments to the USPTO Examiner. (*Id.*, Ex. 8 at 4-6). In trying to distinguish between a registration for sauces and for pizza, she argues among other things: "In Federal court in an unrelated manner, the registrant of serial #2777068 [(Patsy's Brand, Inc.)] said something to the effect that selling pizza was beneath them because they are a fine dining brand." (*Id.*, Ex. 8 at

---

[3]    As explained herein, Nezaj is actually Brija and/or acting for Brija and I.O.B. *See infra.*

6). And, with regard to the potential confusion with the mark in I.O.B.'s application, she attached a signed letter from Brija to the USPTO Examiner stating that he gives his "consent to the USPTO to allow Ms. Nexhmije Nezaj's application for [PATSY'S OF EAST HARLEM] to supersede and take precedent over" his PATSY'S PIZZERIA application. (*Id.*, Ex. 8 at 7).

In response to another inquiry, Nezaj then advised the USPTO Examiner: "The frozen pizzas under the applied for mark Patsy's of East Harlem will be manufactured, packaged, and sold in East Harlem. The frozen pizzas will also be shipped from East Harlem." (*Id.*, Ex. 8 at 8). Of course, Brija (through I.O.B.) owns and operates the original Patsy's Pizzeria in **East Harlem** at the address 2287 1st Avenue. *Patsy's Brand, Inc.*, 2021 WL 3418475, at *1-2; *Patsy's Italian Rest., Inc. v. Banas*, 575 F. Supp. 2d 427, 436 (E.D.N.Y. 2008), *aff'd*, 658 F.3d 254 (2d Cir. 2011).

### B.  The PATSY'S OF HARLEM Application.

On January 17, 2023, less than a week after Nezaj filed the East Harlem application, Muharrem Memishaj ("Memishaj") filed an application with the USPTO to register the trademark PATSY'S OF HARLEM, U.S. Serial No. 97757387 (the "Harlem Application").[4] (MacMull Decl., Ex. 3 at 1-2). Memishaj likewise filed the Harlem Application in International Class 30 (staple foods) and specifically identified the goods claimed in the application as "Frozen pizza." (*Id.*, Ex. 3 at 1, 3). Memishaj resides in Yonkers, New York. (*Id.*, Ex. 3 at 1). Memishaj is not represented in the USPTO by any attorney of record.

Memishaj is no stranger to Brija either. To the contrary, Memishaj has known Brija for close to thirty years and has both a personal and business relationship with him. (Declaration of Robert Goldkind ("Goldkind Decl.") ¶ 5). He has had a business relationship with Brija for

---

[4]     Patsy's Brand refers herein to the East Harlem Application and the Harlem Application as the "Applications."

approximately twenty-seven years, and he and Brija have had "a couple of investments" together and he is "currently" involved in business investments with Brija. (*Id.*).

On October 15, 2023, the USPTO issued a Non-Final Office action refusing to publish the East Harlem Application for registration based on a likelihood of confusion with a registered trademark for PATSY'S OF NEW YORK owned by Patsy's Brand. (*Id.*, Ex. 4 at 2, 7). On January 11, 2024, "Memishaj"[5] filed his response to the Office Action. (*Id.*, Ex. 5). Therein, he disputed the likelihood confusion, arguing among other things, in almost identical fashion to Nezaj: "In fact, in federal court Patsy's of New York stated something to the effect, that they were a fine dining white tablecloth restaurant, and selling pizza was beneath them." (*Id.*, Ex. 5 at 4). Memishaj also then continued on to argue that the Scognamillo Family does not use the mark PATSY'S OF NEW YORK at their restaurant based on arguments exactly like those Brija has made for years, such as that the mark is not being used and was altered. (*Id.*, Ex. 5 at 4-5). Finally, Memishaj also argued that he felt his mark was being discriminated against because of the name Harlem and "because [his] company is Harlem based." (*Id.*, Ex. 5 at 7). Of course, Memishaj was actually referring to Brija's company Patsy's Pizzeria in East Harlem.

### C.    Brija petitions to cancel the PATSY'S Mark.

In August 2014, Brija applied with the USPTO to register a trademark PATSY'S for ovens. (MacMull Decl. ¶ 14). Once the USPTO published the mark, in April 2015, Patsy's Brand filed an opposition to the application based on a likelihood of confusion with its PATSY'S Mark and another of its registered trademarks PATSY'S OF NEW YORK, which became the subject of an opposition proceeding before the Board (No. 91221726) (the "Opposition Proceeding"). (*Id.* ¶ 15). Brija then counterclaimed in August 2015 with a petition to cancel only the PATSY'S OF NEW

---

[5]        As explained herein, Memishaj is actually Brija and/or is acting for Brija and I.O.B. *See infra*.

YORK mark. (*Id.* ¶ 16). Due to civil actions between the parties then-pending in federal court, the Board suspended the Opposition Proceedings from 2016 to January 2022. (*Id.*).

In December 2022, Brija filed an amended counterclaim now seeking to cancel the PATSY'S Mark. (*Id.* ¶ 17). Admittedly, Patsy's Brand did not at that time recall paragraph 4(e) and so Patsy's Brand moved to dismiss the counterclaim on the merits, which the Board granted with leave to replead. (*Id.*). When Brija re-asserted the counterclaim to cancel the PATSY'S Mark in his amended pleading, Patsy's Brand again moved in October 2023 to dismiss but the Board denied the motion in February 2024. (*Id.*).

In conjunction with its investigation of the Applications, Patsy's Brand reviewed the Injunction's language. (*Id.* ¶19). Upon recognizing that Brija's attempt to cancel the PATSY'S Mark violated paragraph 4(e) the Injunction, on March 1, 2023, counsel for Patsy's Brand wrote to Brija's counsel in the Opposition Proceeding, Brian Roffe, Esq. ("Roffe"), attaching a copy of the Injunction, bringing to his attention paragraph 4(e), and giving him an opportunity to voluntarily withdraw his client's counterclaim to cancel the PATSY'S Mark, among others. (*Id.* ¶ 20, Ex. 10).

In response, Brija and his counsel did not withdraw the counterclaims. Rather, Roffe questioned whether Patsy's Brand's counsel had even emailed him the right Injunction and stated that paragraph 4(e) "obviously" did not refer to PATSY'S Mark and the other mark that is the subject of his cancellation counterclaims. (*Id.*, Ex. 11). In other words, Patsy's Brand gave Brija and his counsel a fair opportunity to purge their contempt under the circumstances to avoid contempt with regard to Paragraph 4(e). They declined to take it.

### D.  Investigation and Motion.

Counsel for Patsy's Brand was first alerted to the Applications in February 2024, when its trademark watch service alerted counsel to the USPTO's Final Office Action in the Harlem

Application. (*Id.* ¶ 4). Counsel then shortly thereafter discovered the East Harlem Application. (*Id.* ¶ 9). Patsy's Brand then engaged a private investigator to further investigate the connections between Brija, Nezaj, and Memishaj, if any, as well as whether they were selling frozen pizzas bearing violative trademarks. (*Id.* ¶ 8). With that investigation now complete, Patsy's Brand now moves for contempt against each of the contemnors for violation of paragraph 4(d) of the Injunction and for Brija's and Roffe's violation of paragraph 4(e) of the Injunction.

## LEGAL ARGUMENT

### I. Contemnors are in contempt for violating paragraphs 4(d) and 4(e) of the Injunction.

What is crystal clear from the record is that Brija remains as intransigent today as he ever has over the past twenty-plus years. His two newest violations of the Injunction show perhaps even greater contempt for this Court's authority than his prior violations. Brija has now resorted to using both Nezaj — the mother of his two children and his common law wife — and Memishaj as strawmen to file the Applications with the USPTO. There is no question each application violates paragraph 4(d) of the Injunction. And let there be no mistake, Nezaj and Memishaj should equally be held to account as Brija's willing confederates. Additionally, Brija and his counsel violated paragraph 4(e) by seeking to cancel Patsy's Brand's registered PATSY'S Mark in the Opposition Proceeding and declined the opportunity to purge their contempt. Accordingly, the Court should grant the motion and the legal and equitable relief Patsy's Brand requests herein.

### A. The legal standard governing civil contempt.

"Courts have the inherent power to enforce compliance with their lawful orders by holding violators of such orders in civil contempt." *Patsy's Brand, Inc.*, 2021 WL 3418475, at *4 (citing *Armstrong v. Guccione*, 470 F.3d 89, 102 (2d Cir. 2006)). "A court may hold a party in contempt if (1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in

a reasonable manner." *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016); *Patsy's Brand, Inc.*, 2021 WL 3418475, at *4. Willfulness is not an element of civil contempt. *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019). The movant must prove noncompliance with a court order by clear and convincing evidence. *Patsy's Brand, Inc.*, 2021 WL 3418475, at *4.

### B.  The Injunction is clear and unambiguous.

An order or injunction is clear and unambiguous when it is "specific and definite enough to apprise those within its scope of the conduct that is being proscribed or required." *Id.* In other words, it must "leave[ ] no uncertainty in the minds of those to whom it is addressed, who must be able to ascertain from the four corners of the order precisely what acts are forbidden." *Id.* (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)).

Of course, here, this Court is not starting from a blank slate; far from it. Twice before this Court has found the Injunction "clear and unambiguous." Judge Martin found it so in 2002. *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99-CV-10175, 2002 WL 1988200, at *2 (S.D.N.Y. Aug. 27, 2002). And, more recently, this Court re-affirmed that the Injunction is clear and unambiguous. *Patsy's Brand, Inc.*, 2021 WL 3418475, at *6, *11. This Court specifically found paragraph 4(d) of the Injunction is "clear and unambiguous." *Id.*

Indeed, there could no serious argument that any rational person could misunderstand paragraph 4(d)'s prohibitions. The conduct it enjoins is crystal clear: "applying for, obtaining or maintaining any trademark registration for a mark which comprises, consists of the words PATSY'S or PATSY'S RESTAURANT for sauces or other packaged food products." (ECF 185-4 ¶ 4(d)). As this Court remarked not so long ago: "No legal advice is needed to understand Paragraph 4(d)'s prohibition of 'applying for, obtaining or maintaining any trademark registration' with the words 'Patsy's'" for sauces or other packaged food products. *Patsy's Brand, Inc.*, 2021 WL 3418475, at *15. On this point, just a year-and-a-half before Brija and his confederates embarked on their latest

violation in January 2023, this Court expressly held that paragraph 4(d) enjoined Brija and anyone in concert with him from applying with the USPTO to register the trademark PATSY'S PIZZERIA SINCE 1933 for pizza. *Patsy's Brand, Inc.*, 2021 WL 3418475, at *11-12.

In addition, the scope of those who are bound by the Injunction is also clear by virtue of both the Injunction's language, (ECF 185-4 ¶ 4), and the nearly identical language of Fed. R. Civ. P. 65(d)(2). Thus, there is no escape for Nezaj and Memishaj.

Similarly, paragraph 4(e) is likewise clear. It enjoins Brija and any of his agents or associates "from opposing any application for registration or petitioning to cancel any registration of [Patsy's Brand] for trademark PATSY'S for sauces or other packaged food products or restaurant services." (ECF 185-4 ¶ 4(e)). There is nothing ambiguous about this prohibition. When the Injunction refers to Patsy's Brand's registration for the mark "PATSY'S for sauces," the Court is unequivocally referring to the PATSY'S Mark — the mark that was the premise of the entire infringement case and that is a defined term in the Injunction. (*See* ECF 185-4 ¶ 2 (holding that Patsy's Brand owns all trademark rights to "the trademark PATSY'S for sauces and is the owner of a valid U.S. trademark registration for such mark, Registration No. 1,874,789"); *see also id.* ¶ 3 (referring to "plaintiff's trademark PATSY'S for sauces"). The Injunction also commands Defendants to withdraw their then-pending petition to cancel Patsy's Brand's "trademark registration for PATSY'S," which sought to cancel the PATSY'S Mark. (ECF 185-4 ¶ 6). Thus, Roffe's assertion that paragraph 4(e) "obviously" does not refer to the PATSY'S Mark is incompetent and fails not only to grasp its language but the premise of the Injunction and the case in which it was entered. (MacMull Decl., Ex. 11).

Even if Brija and his counsel were entitled to turn a blind eye to the Court's clear reference to the PATSY'S Mark throughout the Injunction and to the entire underlying case in which Brija participated, that gets them nowhere. "Any" registration for the PATSY'S trademark means "any"

registration. *See Patsy's Brand*, 2021 WL 3418475, at \*15 ("One is inclined to ask what part of 'any' contemnor doesn't understand. No lawyer — indeed, no literate person — could think this portion of the injunction was limited." (quoting *S.E.C. v. McNamee*, 481 F.3d 451, 456 (7th Cir. 2007))). So, like the entirety of the Injunction, paragraph 4(e) is clear and unambiguous.

Finally, as this Court previously warned, Brija must proceed "with caution" and the burden was on him to ask the Court for clarification if he somehow did not understand this clear prohibition. *Id.* at \*12 (quoting *CBS Broad. Inc.*, 814 F.3d at 98).

### C. Patsy's Brand proved the contemnors violated paragraphs 4(d) and 4(e) of the Injunction by clear and convincing evidence.

Patsy's Brand has shown by clear and convincing evidence that the contemnors each violated the Injunction, as either a named defendant or aider and abettor. The Injunction directly enjoins Brija and I.O.B. as named parties. (ECF 185-4). It further binds Nezaj, Memishaj, and Roffe because they qualify as his agents, attorneys, and persons acting in concert with him. (*Id.*).

### i. Brija and I.O.B. violated paragraph 4(d) of the Injunction.

Brija and I.O.B. are plainly bound by the Injunction as named parties. (ECF 185-4 ¶ 4); Fed. R. Civ. P. 65(d)(2)(A); *see generally Patsy's Brand, Inc.*, 2021 WL 3418475. Brija clearly recruited and instructed Nezaj and Memishaj to file the Applications as his proxies. He used them as strawmen to apply to register the marks PATSY'S OF EAST HARLEM and PATSY'S OF HARLEM with the USPTO because, most obviously, he did not want to use his own name or I.O.B. for fear of being caught once more in violation of the Injunction.

The mountain of evidence of this is clear. Brija, formally through I.O.B., owns and operates the original Patsy's Pizzeria in East Harlem at the address 2287 1st Avenue. *Patsy's Brand, Inc.*, 2021 WL 3418475, at \*1-2; *Patsy's Italian Rest., Inc. v. Banas*, 575 F. Supp. 2d 427, 436 (E.D.N.Y. 2008), *aff'd*, 658 F.3d 254 (2d Cir. 2011).

Nezaj is the mother of Brija's children and who he has referred to as his "wife" for more than twenty years. (MacMull Decl., Ex. 2 at 61:25-62:16). Brija also explained that Nezaj (at least as of 2018) is involved in marketing Patsy's Pizzeria franchising. (*Id.*, Ex. 2 at 62:17-23). Memishaj confirmed in a conversation with Patsy's Brand's private investigator that he has a thirty-year personal relationship with Brija, has been in business with him for twenty-seven years, and currently has active business investments with him. (Goldkind Decl. ¶ 5).

Nezaj filed the East Harlem Application on January 11, 2023. (MacMull Decl., Ex. 6). Memishaj filed the Patsy's of Harlem Application of January 17, 2023. (*Id.*, Ex. 3). The Applications are both for goods in International Class 30 and identify the goods being claimed in the Applications as "Frozen pizza." (*Id.*, Exs. 3, 6). The Court will recall that Brija was held in contempt in August 2021 for applying for a mark in International Class 30 for "pizza" and used a frozen pizza package as a specimen for his application. *Patsy's Brand, Inc.*, 2021 WL 3418475, at *11; (*see also* ECF 359-15 at 85, 95). Indeed, much of that contempt proceeding concerned Brija's advertisement of a new line of "frozen pizzas" on social media. *Patsy's Brand, Inc.*, 2021 WL 3418475, at *2-3, *6-7, *11 (explaining advertisements and depicting frozen pizza packages).

In both Applications, Nezaj and Memishaj responded to the USPTO's Non-Final Office Actions refusing to register the marks due to a likelihood of confusion with identical arguments that Patsy's Brand supposedly does not use the mark as registered and that "in federal court Patsy's of New York stated something to the effect, that they were a fine dining white tablecloth restaurant, and selling pizza was beneath them." (*Compare* MacMull Decl., Ex. 5 at 4, *with id.*, Ex. 8 at 6).

Furthermore, Nezaj told the USPTO the "frozen pizzas under the applied for mark Patsy's of East Harlem will be manufactured, packaged, and sold in East Harlem" and "will also be shipped from East Harlem," obviously referring to Brija's Patsy's Pizzeria on 1st Avenue in East Harlem. (*Id.*, Ex. 8 at 8). Memishaj also stated to the USPTO Examiner that his "company is Harlem based,"

an obvious reference to Brija's Patsy's Pizzeria in East Harlem. (*Id.*, Ex. 5 at 7).

Lastly, but certainly not least, Brija submitted a signed letter to the USPTO in support of Nezaj's East Harlem Application informing the USPTO that he consents to her application to "supersede and take precedent over" his denied application (the appeal of which is suspended before the Board). (*Id.*, Ex. 8 at 7). That Nezaj and Memishaj are Brija's proxies, the purpose of which is to try to circumvent the Injunction, is self-evident.

Little ink needs to be spilled to establish the rule of law that a principal, Brija, is liable for contempt where he uses or instructs his accomplices, like Nezaj and Memishaj, to perform the act constituting a contempt. *See United States v. Schine*, 260 F.2d 552, 555-56 (2d Cir. 1958); 43A C.J.S. *Injunctions* § 467 ("[A] principal may be liable where the act charged as contempt is performed by an agent with the knowledge of, and pursuant to authorization by, the principal"); *see also S.E.C. v. Platinum Inv. Corp.*, 98 F. App'x 33, 35 (2d Cir. 2004). Indeed, the essence of Fed. R. Civ. P. 65(d)(2) "is that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." *Havens v. James*, 76 F.4th 103, 112 (2d Cir. 2023); *see also Doctor's Associates, Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 302-03 (2d Cir. 1999). The language of Fed. R. Civ. P. 65(d)(2) "gives force to injunctions and prevents parties from violating them by proxy." *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 195 (2d Cir. 2010); (*see also* ECF 185-4 ¶ 4 (same language in Injunction)).

In *Schine*, 260 F.2d at 555, the Second Circuit swiftly rejected the contemnors' argument that they could use other persons not named in the antitrust injunctive decree to accomplish the result prohibited by the injunctive decree. There, the district court had entered an injunction prohibiting several named companies and officers thereof from, among other things, buying and booking films for theatres in which they had no financial interest. *Id.* at 554-55. The district court held the named parties and several other non-party companies, including Darnell Theatres and

14

Elmart Theatres, in criminal contempt. *Id.* The contemnors all argued on appeal that Darnell and Elmart were independent of the named companies, but the evidence was clear that the alleged independent companies were actually owned and controlled by the named companies. *Id.* at 555. The contemnors also argued that the injunction enjoined them directly from buying and booking films for theatres in which they had no financial interest but "did not prevent them from using Darnell and Elmart to accomplish the same result." *Id.* at 556. As to that, the Court wrote: "The bald statement of this contention is its own refutation" and that "the suggested construction of the decree totally ignores its intent and purpose." *Id.*

Based on the facts here identified above, by clear and convincing evidence, named parties Brija and I.O.B. violated paragraph 4(d) of the Injunction once again and are in contempt. Brija used and controlled Nezaj and Memishaj as proxies to file the Applications prohibited by the Injunction. This is no different than the contempt in *Schine*. Through Nezaj and Memishaj, Brija applied to register the marks PATSY'S OF EAST HARLEM and PATSY'S OF HARLEM, each of which comprises or consists of the word PATSY'S for frozen pizza. (MacMull Decl., Exs. 3, 6). This is clearly prohibited by paragraph 4(d) which prohibits Brija and his abettors "from applying for . . . **any** trademark registration for a mark which comprises, consists of the words **PATSY'S** . . . for sauces **or other packaged food products**." (ECF 185-4 ¶ 4(d) (emphasis added). He twice applied for a trademark registration, both contained the word "PATSY'S," and both were for a packaged food product — frozen pizza. Thus, he is in contempt.

### ii. Nezaj and Memishaj are likewise in contempt either directly or for aiding and abetting Brija in the violation of paragraph 4(d).

The parties named in the injunction and non-parties "legally identified" with the named parties can be held directly in violation of an injunction. *See Havens*, 76 F.4th at 108, 111, 123. A "shared legal identity requires a legal relationship"; for example, a "successor," "ownership and/or control," or agency. *Id.* at 121 n.20. Separately and distinctly, non-parties can be held in contempt

if those non-parties have aided and abetted a violation of the injunction, as codified in Rule 65(d)(2). *Id.* at 111-12; *see also Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 833 (2d Cir. 1930) (Hand, J.) (nonparties may be held in contempt if they "either abet the defendant, or [are] legally identified with" him); 5 *McCarthy on Trademarks and Unfair Competition* § 30:14 (5th ed.) (similar).

To be held liable for contempt under the latter aiding and abetting theory requires the court to conclude the following: (1) "that the party subject to the court's mandate committed contempt," and (2) "that the challenged action of the nonparty was taken for the benefit of, or to assist, a party subject to the decree in violating the injunction." *Havens*, 76 F.4th at 112. To satisfy this test, the "enjoined party must, in essence, be the principal or the intended beneficiary of the nonparty's conduct." *Id.* at 113. The non-party is not acting independently when he "acts to benefit or to assist the enjoined party." *Id.* Because only a named party can be enjoined, "it is therefore the named party who must be the principal and moving force of the proscribed conduct." *Id.* at 118; *see also Lindland v. U.S. Wrestling Ass'n, Inc.*, 227 F.3d 1000, 1006 (7th Cir. 2000) (Easterbrook, J.) ("The "active concert or participation" clause is designed to prevent what may well have happened here: the addressee of an injunction, eager to avoid its obligations, persuades a friendly third party to take steps that frustrate the injunction's effectiveness."). As this Court observed, "a non-party may be found in civil contempt for violating an injunction when the non-party "knowingly assists a defendant in violating an injunction."" *Patsy's Brand, Inc.*, 2021 WL 3418475, at *15 (quoting *United States v. Paccione*, 964 F.2d 1269, 1274 (2d Cir. 1992)).

As a threshold matter, non-party Nezaj had notice of the Injunction. *See* Fed. R. Civ. P. 65(d) (requiring person to receive "actual notice" of the injunction in some manner). Brija has two children with Nezaj and, as of at least 2018 when his deposition was taken, considered her his "wife" for over twenty years, and she performed marketing consulting for his Patsy's Pizzeria franchising business. (MacMull Decl., Ex. 2 at 61:25-62:23). Given these facts, any contention by

16

Nezaj that she did not have notice of the Injunction for the past twenty-plus years — including a very recent reminder in 2019 and 2021 strains credulity. Notice is established in these circumstances. *See* Wright & Miller, 11A *Fed. Prac. & Proc. Civ.* § 2956 (3d ed.) (citing *Hill v. United States*, 33 F.2d 489, 491 (8th Cir. 1929)); *see also United States v. Jiffy Cleaners of Hartsdale, Inc.*, No. 16-CV-2428, 2020 WL 4284155, at *3 (S.D.N.Y. July 27, 2020).

Memishaj too also had actual notice of the Injunction. Memishaj has been in business with Brija for at least twenty-seven years (since 1997) and has had a personal relationship with him for longer. (Goldkind Decl. ¶ 5). It is simply not credible that Memishaj was not well-aware of the Injunction, which was the subject of litigation from 1999 through 2003 and again from 2019 through 2021 (not to mention other litigation in the interim between the parties). It is likewise beyond belief that Brija would have hidden the existence of Injunction from his longtime friend and business partner when he conspired with him to file the Harlem Application.

Notice having been satisfied, as to Nezaj, the Court should consider her to be "legally identified" with Brija given her spousal-equivalent status and close relationship with him. (MacMull Decl., Ex. 2 at 62:2-20); *see Havens*, 76 F.4th at 121 n.20. This comports with the Second Circuit's definition of a shared legal relationship between the named party and another. *See Havens*, 76 F.4th at 121 n.20 (identifying examples of a shared legal relationship to be a successor, ownership/control of an entity, or an agent). Memishaj, too, is legally identifiable with Brija given their long and present relationship in business and personally. *See id.*

Regardless, Nezaj and Memishaj are in contempt for aiding and abetting violations. Brija is in contempt of the Injunction by taking violative actions through Nezaj and Memishaj and Nezaj and Memishaj plainly filed the Applications to benefit or assist Brija in obtaining trademark registrations in circumvention of the Injunction. *See Havens*, 76 F.4th at 112 (aiding and abetting). Brija was clearly "the principal and moving force" behind Nezaj and Memishaj — both friendly

third parties — filing the Applications to obtain trademark registrations that would benefit him by granting registrations containing the word "Patsy's" for frozen pizzas, which is the very objective that he was previously trying to achieve and was held in contempt for by this Court. *Id.* at 118; *Lindland*, 227 F.3d at 1006; *see Patsy's Brand, Inc.*, 2021 WL 3418475, at *10-11.

Nezaj and Memishaj filed the Applications less than a week apart for nearly identical trademarks (PATSY'S OF HARLEM and PATSY'S OF EAST HARLEM) both in connection with frozen pizzas. (MacMull Decl., Exs. 3, 6). This was for Brija's benefit unquestionably. Nezaj and Memishaj do not own Patsy's Pizzeria. They do not own a Patsy's establishment in Harlem or in East Harlem. Brija does, however, own Patsy's Pizzeria in East Harlem as this Court and other courts well-know. In fact, Nezaj told the USPTO that the frozen pizzas under the proposed mark "will be manufactured, packaged, and sold in East Harlem" and would "also be shipped from East Harlem." (*Id.*, Ex. 8 at 8). She was referring to Brija's Patsy's Pizzeria in East Harlem. Memishaj similarly referred to Brija's business when he said the business was "Harlem based." (*Id.*, Ex. 5 at 7). Moreover, they both made nearly identical arguments to the USPTO that invoke a purported statement in a federal court case that only Brija was involved in. (*See id.*, Ex. 5 at 4; *id.*, Ex. 8 at 6). There is no serious question that Nezaj and Memishaj aided and abetted Brija.

### iii.    Brija and Roffe violated paragraph 4(e) of the Injunction.

In the Opposition Proceeding, Brija, through his counsel, filed a counterclaim petitioning the Board to cancel Patsy's Brand's PATSY'S Mark for sauces. (*Id.*, Ex. 9 at pp.14-18). This is precisely what is forbidden by paragraph 4(e) of the Injunction. (ECF 185-4 ¶ 4(e)). Brija violated paragraph 4(e), and his counsel's bungled interpretation of the Injunction is meritless.

Roffe is also in contempt as Brija's attorney before the Board who participated in the violation. When the attorney of a party named in an injunction had notice of the injunction and knowingly engaged in the violative act, the attorney is in contempt. *Patsy's Brand, Inc.*, 2021 WL

3418475, at *15-16; Fed. R. Civ. P. 65(d)(2)(B); (ECF 185-4 ¶ 4). Here, Roffe indisputably had notice of the Injunction once Patsy's Brand's counsel sent it to him on March 1, 2024. (MacMull Decl., Ex. 10). In light of the circumstances, Patsy's Brand gave Roffe and Brija a fair chance to avoid contempt for violating paragraph 4(e) by voluntarily withdrawing the counterclaim to cancel the PATSY'S Mark. (*Id.*) Instead, Roffe blithely dismissed the Injunction as inapplicable to the PATSY'S Mark and declined to withdraw the counterclaim. (*Id.*) Thus, Roffe too is in contempt.

### D.  The Contemnors have not diligently attempted to comply with the Injunction in a reasonable manner.

The last inquiry is "whether defendants have been reasonably diligent and energetic in attempting to accomplish what was ordered." *Aquavit Pharm., Inc. v. U-Bio Med, Inc.*, No. 19-CV-3351, 2020 WL 1900502, at *7 (S.D.N.Y. Apr. 17, 2020); *see McCarthy on Trademarks and Unfair Competition* § 30:22 (5th ed.). "A defendant is not reasonably diligent when he or she ignores the order or takes only superficial actions that strain both the language and intent of the order." *Aquavit Pharm., Inc.*, 2020 WL 1900502, at *7. A party who does not take all reasonable and diligent steps to prevent an injunction violation is in contempt. *See CBS Broad.*, 814 F.3d at 99-100; *Amity Leather Products Co. v. RGA Accessories, Inc.*, 849 F. Supp. 871, 875 (S.D.N.Y.), *aff'd*, 22 F.3d 1091 (2d Cir. 1994). For "repeat offenders" like Brija, diligent attempts to comply with an injunction mandate that repeat offenders "proceed[ ] with caution." *Patsy's Brand, Inc.*, 2021 WL 3418475, at *12 (quoting *CBS Broad.*, 814 F.3d at 99). "Affirmative acts in contravention of a court order are especially troubling." *Aquavit Pharm., Inc.*, 2020 WL 1900502, at *7.

Contemnors' conduct here is the just the opposite of a diligent attempt to comply with the Injunction. Brija purposefully sought, albeit in futile fashion, to circumvent paragraph 4(d) of the Injunction by recruiting Nezaj and Memishaj to file the Applications on his behalf in direct contravention of the conduct proscribed by that provision. Not only are the Applications directly contrary to paragraph 4(d), but this Court held Brija in contempt a mere year-and-a-half ago in

19

August 2021 for violating the same provision when he applied to register for the mark PATSY'S PIZZERIA SINCE 1933 for pizza. *Patsy's Brand, Inc.*, 2021 WL 3418475, at *10-12. Brija's conduct, and that of his fellow contemnors, demonstrates not an attempt to comply but rather willful disdain for and intentional disregard of this Court's authority.

As to the violation of paragraph 4(e), Brija and Roffe did not refrain from taking actions to violate this provision. Rather, they affirmatively chose in the Opposition Proceeding to petition via counterclaim to cancel the PATSY'S Mark. When paragraph 4(e) was brought to their attention and they were given an opportunity to purge their contempt, they refused to do so and summarily dismissed that their actions violated paragraph 4(e). (*See* MacMull Decl., Ex. 11). Therefore, they did not diligently attempt to comply; quite the opposite, in fact.

In sum, Patsy's Brand easily carries its burden on each of the three prongs of contempt such that the Court should find each of the contemnors in contempt and award the relief requested.

## II. The Court should sanction the contemnors, award attorney's fees and costs, enter additional injunctive relief, and increase the per violation sanction.

This is strike four. Brija committed perjury and was found liable for contempt and sanctioned in 2001. *Patsy's Brand, Inc.*, 2021 WL 3418475, at *1. Brija was then found in contempt a second time for violating the Injunction in 2002. *Id.* at *2. Then, this Court found Brija in contempt a third time in 2021 for violating the Injunction on five separate occasions. *Id.* at *16-18. Brija (and his allies) is now in contempt for a fourth time for two flagrant violations of the Injunction and for a third violation as well. Neither Brija nor any of his associates have any regard for this Court or for Patsy's Brand and the Scognamillo Family who run their business. The Court should grant the motion for contempt and award the coercive relief sought below.

"Civil contempt sanctions serve two purposes: "to coerce future compliance and to remedy any harm past noncompliance caused the other party." *Id.* at *16 (quoting *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996)). Coercive sanctions are intended to force the contemnor to obey the

20

court's order. *Id.* (citing *New York State Nat. Org. for Women v. Terry*, 159 F.3d 86, 93 (2d Cir. 1998)). Contempt sanctions are awarded "to compensate the plaintiff for injury caused by past noncompliance or to prevent continued disobedience" and are not dependent on the plaintiff's showing of loss. *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5 (2d Cir. 1989).

When selecting the appropriate sanction, the "courts consider: '(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon him.'" *Id.* (quoting *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir. 1987)). When the Court has previously put a contemnor on notice of the monetary sanction that would follow from future non-compliance, the court is well-within its power to levy those sanctions when the party again violates the injunction. *See CBS Broad. Inc*, 814 F.3d at 102-03.

Moreover, "a district judge, sitting in equity, 'is vested with wide discretion in fashioning a remedy' to encourage future compliance." *Patsy's Brand, Inc.*, 2021 WL 3418475, at *16 (quoting *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979)).

### A.  The Court should levy a coercive sanction of $300,000 against Brija.

This Court expressly warned Brija: "If there are future violations of the Injunction, Defendants will be sanctioned $100,000 for each violation." *Id.* at *17. Apparently, Brija does not care. Regardless, the Court should impose a coercive monetary sanction of $300,000 against Brija — $100,000 for each of the two violations of paragraph 4(d) and for the one violation of paragraph 4(e) of the Injunction. In addition, the Court should also impose a hefty coercive monetary sanction against Nezaj and Memishaj in an amount the Court believes is appropriate given the scheme here, as well as on Roffe for his participation and failure to abide by the Injunction's clear language.

21

**B. The Court should award Patsy's Brand its reasonable attorney's fees and costs associated with this application.**

"A district court may award appropriate attorney's fees and costs to a victim of contempt." *Patsy's Brand, Inc.*, 2021 WL 3418475, at \*17 (citing *Weitzman*, 98 F.3d at 719); L.R. 83.6(a). While willfulness or bad faith may not be a prerequisite to an award of fees for violating an injunction, "such a finding strongly supports granting attorney's fees and costs." *Id.* (citing *Jacobs v. Citibank, N.A.*, 318 F. App'x 3, 5 n.3 (2d Cir. 2008); *Weitzman*, 98 F.3d at 719). "A willful contempt is one where [1] the contemnor had actual notice of the court's order, [2] was able to comply with it, [3] did not seek to have it modified, and [4] did not make a good faith effort to comply." *Id.* (quoting *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 2007 WL 2982295, at \*12 (S.D.N.Y. Oct. 10, 2007)).

"[P]ermitting an award of attorneys' fees serves a significant purpose where a contempt has been found by providing parties with an added incentive to monitor and enforce an opponent's compliance with a court order" so as to reimburse a party for "exposing noncompliance." *Shady Records, Inc. v. Source Enters., Inc.*, 351 F. Supp. 2d 64, 67 (S.D.N.Y. 2004).

Patsy's Brand is entitled to its attorney's fees and costs of bringing this contempt motion, just as it was in 2021 for Brija's and his former counsel's willful contempt. Although willfulness is not a prerequisite, the Contemnors' violation of the Injunction here was clearly willful. Indeed, it was intentional. Given the facts, there could hardly be a more clear-cut case of willfulness. Brija is fully aware of the Injunction and has been so for twenty-plus years, was fully able to comply with paragraph 4(d) by not applying to register marks with the word "Patsy's" for packaged food goods, never sought to modify the Injunction (nor could he), and did not make a good faith effort to comply. *See supra*, Section I; *Patsy's Brand, Inc.*, 2021 WL 3418475, at \*17. To the contrary, he purposefully did not comply and sought to conceal his non-compliance through strawmen.

22

Nazej's and Memishaj's conduct as Brija's confederates further supports fees. In fact, their conduct in applying for trademarks as strawmen and not the real "owner" of the marks in the Applications is clearly fraud perpetrated on the USPTO. *See MPC Franchise, LLC v. Tarntino*, 826 F.3d 653, 658 (2d Cir. 2016) ("Fraud in procuring a trademark registration occurs when an applicant knowingly makes false, material representations of fact in connection with his application."); *MPC Franchise, LLC v. Tarntino*, 19 F. Supp. 3d 456, 477-81 (W.D.N.Y. 2014) (fraud on the USTPO for false statement of ownership of mark), *aff'd*, 826 F.3d 653 (2d Cir. 2016). Incredibly, this is not the first time that Brija has committed fraud on the USPTO. *See Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 270-71 (2d Cir. 2011).

In addition, Brija and Roffe had notice of the Injunction, could have complied by never seeking to cancel the PATSY'S Mark and, later, by voluntarily withdrawing their cancellation counterclaim as requested. Yet, they made no good faith effort to comply. *Patsy's Brand, Inc.*, 2021 WL 3418475, at *17. Accordingly, Patsy's Brand is entitled to its reasonable attorney's fees and costs to be computed at the conclusion of this proceeding.

### C. The Court should direct Brija to abandon all trademark applications.

Sitting in equity, this Court "is vested with wide discretion in fashioning a remedy to encourage future compliance." *Patsy's Brand, Inc.*, 2021 WL 3418475, at *16 (quoting *Vuitton et Fils S.A.*, 592 F.2d at 130). "Courts have broad discretionary power to fashion equitable remedies which are a special blend of what is necessary, what is fair, and what is workable." *Casale v. Kelly*, 710 F. Supp. 2d 347, 367 (S.D.N.Y. 2010). The Court should use the full scope of its equitable power to put an end to Brija's irreverence for the Injunction and coerce compliance with it.

First, the Court should direct Brija, Nezaj, and Memishaj to take all actions necessary to affirmatively abandon the Applications. *See id.* at *18 (directing Brija to take all necessary actions

to abandon the trademark application). The Court should also direct Brija and Roffe to withdraw the counterclaim to cancel the PATSY'S Mark in the Opposition Proceeding. *Id.*

Second, it is now clear that merely directing Brija to abandon existing applications for trademark registrations, as the Court did in 2021, has little coercive effect to ensure that he complies with the Injunction. So, the Court should use its equitable powers to modify the Injunction to add two additional injunctive decrees.

The first decree should forever bar Brija, his agents, or anyone in active concert with him, from filing or further prosecuting any trademark application with the USPTO, or from petitioning the Board (or later challenging the Board's determinations in a federal court) to oppose a trademark application or to cancel a trademark registration, including but not limited to, any of Patsy's Brand's existing trademark registrations or pending applications. This type of equitable relief is particularly appropriate here given Brija's clear fraud on the USPTO concerning the Applications.

And the second decree should forever bar Brija, his agents, or anyone in active concert with him from **using** the term "PATSY'S," alone or in conjunction with other words and in whatever form, in connection with sauces or any other packaged food products. Patsy's Brand notes that it sought this relief in connection with Brija's last contempt. *See id.* at *18 n.11. However, the Court denied that request without prejudice given the procedural posture. *Id.*

Third, the Court should increase the amount of the sanctions for each subsequent violation from $100,000 to $500,000. It is clear that $100,000 per violation was not sufficiently large enough to deter Brija and his band of confederates from violating the Injunction. Indeed, they did so twice in January 2023 only a year-and-a-half after this Court's decision in August 2021. Accordingly, the Court should state that the sanction for each subsequent violation is $500,000.

### III.  The Court should seriously consider initiating a criminal contempt.

This Court should also consider initiating criminal contempt proceedings against Brija,

Nezaj, and Memishaj given the sheer egregiousness of their Injunction violations and the fact that Brija is unquestionably an unrepentant four-time recidivist. Case law is also clear that aiders and abettors of injunction violations, like Nezaj and Memishaj, are subject to criminal contempt.

"When a district court's order has been violated, the court may impose either civil contempt remedies or criminal contempt sanctions, or both." *S.E.C. v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 439 (2d Cir. 1987). "When confronted with disobedience of its order, the choice of sanctions — civil or criminal — is vested in the discretion of the District Court, and the same conduct can amount to both civil and criminal contempt." *United States v. Donziger*, No. 11-cv-691, 2021 WL 92761, at *2 (S.D.N.Y. Jan. 10, 2021) (citations omitted). Similarly, under Rule 65(d)(2), when a nonparty "knowingly assists a defendant in violating an injunction," the nonparty "subjects himself to civil as well as criminal proceedings for contempt. That is well established law." *United States v. Paccione*, 964 F.2d 1269, 1274 (2d Cir. 1992).

Whereas civil contempt serves a coercive purpose, "criminal contempt, however, serves the much different purpose of vindicating the court's authority" by punishing a contemnor for past violations of court orders. *United States v. Twentieth Century Fox Film Corp.*, 882 F.2d 656, 661 (2d Cir. 1989). Thus, "the focus of criminal contempt is on the willfulness of the violation." *Id.*

Courts have inherent authority to initiate criminal contempt for violations of injunctions, including those entered in trademark cases. *See Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987) (confirming criminal contempt prosecution for violating a trademark injunction); *Musidor, B. V. v. Great Am. Screen*, 658 F.2d 60 (2d Cir. 1981) (similar); *see also United States v. Donziger*, No. 11-cv-691, 2021 WL 3141893, at *53 n.494 (S.D.N.Y. July 26, 2021) (observing the court's inherent authority even absent a statute), *aff'd*, 38 F.4th 290 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 868 (2023). The criminal code likewise provides for the offense of contempt in 18 U.S.C. § 401(3) for disobeying a court order, decree, or command. *Next Investments, LLC v.*

*Bank of China*, 12 F.4th 119, 128 (2d Cir. 2021); *Donziger*, 2021 WL 3141893, at *66.

Given Brija's unusually willful, indeed, purposeful violation of the Injunction through the surreptitious means of using strawmen and given his unprecedented recidivism, the Court should consider criminal contempt proceedings under its inherent authority and 18 U.S.C. § 401(3). *See Twentieth Century Fox Film Corp.*, 882 F.2d at 661; *see also Schine*, 260 F.2d at 555-56 (criminal contempt under 18 U.S.C. § 401 for willful violation of an injunctive decree where the enjoined parties used new parties to violate decree). Coercive civil sanctions have not deterred him, nor apparently, have they deterred his agents Nezaj and Memishaj from joining him. Thus, in addition to the civil coercive sanctions sought above, the Court should consider initiating criminal contempt proceedings pursuant to its inherent authority and 18 U.S.C. § 401(3), and in conformance with the procedures of Fed. R. Crim. P. 42. *See Vuitton et Fils S.A.*, 481 U.S. at 793-94.

**IV. The Court should grant expedited discovery if necessary.**

The evidence proffered here to the Court is already more than sufficient to hold each of the contemnors in contempt. To the extent that Brija, Nezaj, or Memishaj, dispute that they were acting in concert, instructed by Brija, assisting Brija or acting on his behalf, or lacked notice, the Court should grant expedited discovery into all relevant matters.

## CONCLUSION

Enough is enough; this is strike four. Neither Brija nor any of his associates have any regard for this Court or for Patsy's Brand and the Scognamillo Family. For nearly a quarter of a century, Brija and his accomplices have tormented the Scognamillo Family with their misdeeds, causing them heartache and requiring them to divert their immense time and resources from their business and family restaurant, which has been a New York City staple since 1944. The Court should grant the motion for contempt and the relief sought, and further consider criminal contempt proceedings.

26

4885-3706-1035, v. 1

Respectfully submitted,

**MANDELBAUM BARRETT PC**

By: */s/ Joel G. MacMull*
Joel G. MacMull
Brian M. Block
570 Lexington Avenue, 21st Floor
New York, New York 10022
T: (212) 776-1834
jmacmull@mblawfirm.com
bblock@mblawfirm.com

*Attorneys for Plaintiff*
*Patsy's Brand, Inc.*

Dated: March 8, 2024

4885-3706-1035, v. 1