```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: August 15, 2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

PATSY'S BRAND, INC.,

                            Plaintiff,

              -against-

I.O.B. REALTY, INC., PATSY'S INC.,
FRANK BRIJA, JOHN BRECEVICH, and
NICK TSOULOS,

                            Defendants.

-------------------------------------------------------X

99-CV-10175 (KMW)

<u>**OPINION & ORDER**</u>

KIMBA M. WOOD, United States District Judge:

On March 8, 2024, Plaintiff Patsy's Brand, Inc. ("Plaintiff") filed a motion to hold

Defendants I.O.B. Realty, Inc. ("I.O.B. Realty") and Isa "Frank" Brija, and Respondents

Nexhmije Nezaj, Muharrem Memishaj, and Frank Brija's attorney, Brian Roffe, in civil

contempt for violating the trademark injunction in this case. (Notice of Mot., ECF No. 397; Pl.'s

Mar. Mot., ECF No. 398.) On September 6, 2024, after the parties exchanged discovery,

Plaintiff also moved to hold Frank Brija's son, Adem Brija, in contempt. (Notice of Mot., ECF

No. 454; Pl.'s Nov. Mot., ECF No. 530.)

 For the reasons set forth below, Plaintiff's motions to hold Defendants and Respondents

in contempt are GRANTED IN PART, as to Frank Brija and Brian Roffe, and DENIED IN

PART, as to Nexhmije Nezaj, Muharrem Memishaj, and Adem Brija.


## BACKGROUND

The Court assumes familiarity with the lengthy history of this case, which is described in

previous decisions, including the Second Circuit's decision in 2003 and this Court's decisions in

2006, 2020, and 2021. *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 212–15 (2d Cir.

2003); Oct. 13, 2006 Order at 2–9, ECF No. 176; *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99-CV-10175, 2020 WL 4252682, at *1–3 (S.D.N.Y. July 24, 2020); *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99-CV-10175, 2021 WL 3418475, at *1–4 (S.D.N.Y. Aug. 5, 2021).  The Court describes only the background relevant to the issues addressed in the present motions.

## I.    The Injunction

This case involves an ongoing dispute between "Patsy's Italian Restaurant," owned by Plaintiff Patsy's Brand, Inc., and "Patsy's Pizzeria," owned by Defendants I.O.B. Realty and Frank Brija.  Since 1995, Plaintiff has owned the registered trademark for PATSY'S PR SINCE 1944 in International Class 30 for sauces, with U.S. Registration No. 1,874,789.  (Pl.'s Mar. Mot. at 2; *see also* MacMull July 26, 2019 Decl. Ex. 1 ¶ 20 ("Complaint"), ECF No. 185-1.)

In 1999, Plaintiff sued Defendants I.O.B. Realty, Frank Brija, John Brecevich (a co-owner of Patsy's Pizzeria), and Nick Tsoulos (a licensee of the Patsy's Pizzeria franchises), for trademark infringement after Defendants began distributing their own jarred sauces.  (*See* Pl.'s Mar. Mot. at 2; Complaint.)  On February 21, 2001, Judge John S. Martin, Jr. granted Plaintiff's motion for summary judgment and denied Defendants' cross-motion for summary judgment. *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99-CV-10175, 2001 WL 170672, at *14 (S.D.N.Y. Feb. 21, 2001) (Martin, J.).  On April 18, 2001, Judge Martin entered a final judgment in which he permanently enjoined, among others, Defendants, their agents and attorneys, and all persons in active concert or participation with them:

> 4(d). from applying for, obtaining or maintaining any trademark registration for a mark which comprises, consists of the words PATSY'S or PATSY'S RESTAURANT for sauces or other packaged food products[.]
> . . .
> 4(e). from opposing any application for registration or petitioning to cancel any registration of Plaintiff for trademark PATSY'S for sauces or other packaged food products or restaurant services[.]

(MacMull Mar. 8, 2024 Decl. ("MacMull Mar. Decl.") Ex. 1 ¶¶ 4(d), 4(e) ("Injunction"), ECF No. 399-1.)

On August 27, 2002, Judge Martin found that Defendants had willfully violated the Injunction by selling pasta sauce bearing labels that were confusingly similar to Plaintiff's labels. *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99-CV-10175, 2002 WL 1988200, at *1–2 (S.D.N.Y. Aug. 27, 2002) (Martin, J.). Judge Martin held Defendants in contempt of court, awarded Plaintiff attorneys' fees and $19,800 in treble compensatory damages, and issued a $10,000 coercive fine. *Id.* at *3.

On January 16, 2003, the Second Circuit affirmed the 2001 Injunction in substantial part, modifying portions not relevant to Plaintiff's present motion (such as placing restrictions on the font size and labelling of the pizzeria's products). *Patsy's Brand, Inc.*, 317 F.3d at 220–23.

On July 26, 2019, Plaintiff moved to hold Frank Brija in contempt for violating the Injunction for a second time. (ECF Nos. 183, 184, 185, and 186.) On August 5, 2021, this Court held Frank Brija and his former counsel in contempt. *Patsy's Brand, Inc.*, 2021 WL 3418475, at *1, *18. The Court imposed a $100,000 coercive sanction against Defendants and their former counsel ($20,000 per violation), and ordered them to pay Plaintiff's attorneys' fees. *Id.* at *17–18. The Court warned that "[i]f there are future violations of the Injunction, Defendants will be sanctioned $100,000 for each violation." *Id.* at *17.

The Court found Defendants in contempt for applying for the trademark "PATSY'S PIZZERIA SINCE 1933" in International Class 30, which includes sauces and other staple foods. *Id.* at *10–11. First, the Court found that Paragraph 4(d) of the Injunction was clear and unambiguous. *Id.* at *11. Second, the Court found, by clear and convincing evidence, that Defendants had not complied with Paragraph 4(d) of the Injunction because Defendants had indisputably applied for the "PATSY'S PIZZERIA SINCE 1933" trademark. *Id.* Third, the

Court found that Defendants had not diligently attempted to comply with the Injunction. *Id.* at

*12. In finding that Defendants had not diligently attempted to comply, the Court rejected

Defendants' argument that their conduct was based on a "good faith and reasonable

interpretation of the Injunction." *Id.* In addition, the Court rejected Defendants' advice of

counsel argument. *Id.* at *12–15. The Court stated that "[n]o legal advice is needed to

understand Paragraph 4(d)'s prohibition of 'applying for, obtaining or maintaining *any* trademark

registration' with the words 'Patsy's.'" *Id.* at *15 (quoting Injunction ¶ 4(d) (emphasis in

original)). The Court also stated that, as repeat offenders, Defendants should have proceeded

with caution and petitioned the Court for modification or clarification of the Injunction's scope.

*Id.* at *12.

## II.    Key Events Relevant to Plaintiff's Present Motions

Plaintiff alleges that (1) Frank and Adem Brija, Nezaj (Frank Brija's common-law wife),

and Memishaj (Frank Brija's half-brother)[1] violated Paragraph 4(d) of the Injunction when Frank

Brija—with Adem Brija's assistance—filed trademark applications for "PATSY'S OF EAST

HARLEM" and "PATSY'S OF HARLEM" in Nezaj's and Memishaj's names, respectively; and

(2) Frank Brija and Brian Roffe violated Paragraph 4(e) of the Injunction when Frank Brija filed

a counterclaim in the Trademark Trial and Appeal Board ("TTAB"), petitioning to cancel

Plaintiff's trademark PATSY'S PR SINCE 1944.

### A.    Trademark Applications

In January 2023, Frank Brija filed two trademark applications with the United States

Patent and Trademark Office ("USPTO"). (Pl.'s Mar. Mot. at 5–6.) Brija concedes that he filed

the trademark applications on his own, but signed Nezaj's and Memishaj's names as signatories

---

[1] Frank Brija states that he and Nezaj are not "formally married," but that "she is the mother of [his] two youngest children, and [he] consider[s] her to be [his] wife." (Frank Brija Decl. at 1 n.1, ECF No. 420.) In addition, Frank Brija states that "Memishaj was born to my mother after she remarried." (*Id.* at n.2.)

4

to the applications.  (*See* Defs.' Opp'n at 14, ECF No. 419 ("[Brija] spoke with his wife and brother to see if they would be willing to help with, respectively, the PATSY'S OF EAST HARLEM and PATSY'S OF HARLEM trademarks; and they agreed.").)  Brija asserts that he used the names of his wife and half-brother because they are citizens of the United States and "citizenship in a country" is a prerequisite to filing a trademark application as an individual applicant.  (*See id.*)  Brija claims that as a "stateless Kosovar native of the former Yugoslavia, without citizenship of any country," he could not apply for the trademarks in his own name.  (*Id.*; Frank Brija Decl. ¶ 7, ECF No. 420.)[2]  On January 11, 2023, Frank Brija first used Nezaj's name to file an application to register the trademark "PATSY'S OF EAST HARLEM" for "Frozen pizza" in International Class 30.  (MacMull Mar. Decl. Ex. 6, ECF No. 399-6.)  On January 17, 2023, Frank Brija then used Memishaj's name to file an application to register the trademark "PATSY'S OF HARLEM" for "Frozen pizza" in International Class 30.  (*Id.* Ex. 3, ECF No. 399-3.)

Discovery revealed that Frank Brija filed both applications using Nezaj's and Memishaj's names, and that Adem Brija assisted him with the applications.  (MacMull Sept. 6, 2024 Decl. ¶¶ 4–5, ECF No. 454-1.)  Specifically, in response to interrogatories, Frank Brija stated that Adem Brija "assisted me with the technical aspects of working with the online trademark website [and] helped me with wording for anything that was written because his English is better than mine."  (ECF No. 450-1 at 9, 11.)  When Adem Brija was asked during his deposition what "technical assistance" he provided, he stated that he did not "fully recall," but that it was "possible that [he] provided [Frank Brija] assistance with both [trademark applications]" and that he may have searched for information online regarding how to file a trademark, at his father's

---

[2] Although Frank Brija claims he could not apply for a trademark on his own, without an attorney, because he is not a citizen of any country, the Court notes that he filed a trademark application under his name in 2021, indicating that he was a U.S. citizen.  (MacMull Mar. Decl. ¶¶ 6–8 & Ex. 3; Sept. 26, 2024 Hearing Tr. 39:20–40:14.)

request.  (Adem Brija Dep. 80:19–81:24; 87:13-14, ECF No. 531-2.).  In a subsequent declaration, Adem asserted that any "technical assistance" he provided to Frank Brija was limited to (1) "habitual help [he] give[s his] father in spell and grammar checking his English, [including potentially] help[ing] him with grammar or correcting his spelling on trademark-related documents" and (2) "finding an 'idiots for trademarks' type of website about submitting trademark applications, [potentially by] conduct[ing] a Google search and refer[ing] [Frank Brija] to some such website."  (Adem Brija Decl. ¶¶ 10–12, ECF No. 534.)  Adem maintains that when he provided this assistance, he did not have "any direct or indirect knowledge of the Injunction's language concerning any trademark registrations or applications" and he had "no idea that anything [he] was doing, or that [his] father was planning to do, was in violation of the Court's Injunction."  (*Id.* ¶¶ 9, 13.)

    In October 2023, the USPTO issued "Nonfinal Office Action" letters refusing to publish the "PATSY'S OF EAST HARLEM" and "PATSY'S OF HARLEM" marks because of a likelihood of confusion with other registered marks, including registered trademarks owned by Plaintiff.  (MacMull Mar. Decl. Exs. 4, 7.)

    On February 8, 2024, Plaintiff's counsel received an email from Plaintiff's "trademark watch service," alerting counsel to the two trademark applications referenced above.  (*Id.* ¶ 4.)  This prompted Plaintiff to start an investigation into the applications, and led to the present motion.

    Plaintiff filed its motion for contempt on March 8, 2024.  On that same day, within hours of the motion being filed, Frank Brija emailed Plaintiff's counsel that "a withdrawal/request for express abandonment was filed [] for both trademark applications [PATSY'S OF EAST HARLEM and PATSY'S OF HARLEM]."  (ECF No. 404-2.)

B.    **Petition to Cancel PATSY'S PR SINCE 1944**

In August 2014, Frank Brija filed an application with the USPTO to register the

trademark "PATSY'S" for ovens.  (MacMull Mar. Decl. ¶ 14; Roffe Opp'n at 1, ECF No. 423.)

In April 2015, after the USPTO published the trademark, Plaintiff filed an opposition to the

application before the TTAB—the USPTO's administrative tribunal.  Plaintiff opposed the

application on the ground that there was a likelihood of confusion with Plaintiff's trademark

PATSY'S PR SINCE 1944, as well as Plaintiff's trademark PATSY'S OF NEW YORK in

International Class 42 for restaurant services.  (MacMull Mar. Decl. ¶ 15; Roffe Opp'n at 1.)  In

August 2015, Brija filed a counterclaim to Plaintiff's opposition, petitioning the TTAB to cancel

only the trademark PATSY'S OF NEW YORK.  (MacMull Mar. Decl. ¶ 16; Roffe Opp'n at 2.)

The TTAB suspended the proceedings from May 2016 until January 2022 due to pending

litigation in the Eastern District of New York.  (MacMull Mar. Decl. ¶ 16; Roffe Opp'n at 2.)  In

January 2022, Plaintiff filed an answer to Brija's counterclaim with affirmative defenses.  (Roffe

Opp'n at 2.)

On April 20, 2022, Respondent Brian Roffe appeared in the TTAB proceedings,

representing Frank Brija.  (*Id.*)  In December 2022, Frank Brija, through Roffe, amended his

counterclaim and brought a second counterclaim seeking to cancel Plaintiff's trademark

PATSY'S PR SINCE 1944, in addition to the PATSY'S OF NEW YORK trademark.  (MacMull

Mar. Decl. ¶ 17; Roffe Opp'n at 3.)  In February 2023, Plaintiff moved to dismiss Brija's

counterclaims under Federal Rule of Civil Procedure 12(b)(6).  (Roffe Opp'n at 3; Oxenburg

Apr. 11, 2024 Decl. Ex. A, ECF No. 425-1.)  In May 2023, the TTAB granted Plaintiff's motion,

with leave for Brija to replead the counterclaims.  (MacMull Mar. Decl. ¶ 17; Roffe Opp'n at 3.)

On June 20, 2023, Brija filed amended counterclaims.  (MacMull Mar. Decl. ¶ 18; Roffe Opp'n

at 4.)  On October 23, 2023, Plaintiff moved to dismiss Brija's counterclaims again, but this

time, in February 2024, the TTAB denied the motion.  (MacMull Mar. Decl. ¶ 18; Roffe Opp'n at 4–5.)

Between December 2022—when Frank Brija, through Roffe, filed the counterclaim to cancel the PATSY'S PR SINCE 1944 trademark—and March 1, 2024, neither Plaintiff nor Brija referenced the Injunction at issue here in their various submissions to the TTAB.  (Roffe Opp'n at 3–4; Pl.'s Mar. Mot. at 8 (explaining that Plaintiff "did not at that time recall paragraph 4(e) and so . . . moved to dismiss the counterclaim on the merits."); MacMull Mar. Decl. ¶ 17.). While investigating the trademark applications made in Nezaj's and Memishaj's names, Plaintiff's counsel reviewed the Injunction's language and recognized that the petition to cancel the PATSY'S PR SINCE 1944 trademark violated Paragraph 4(e) of the Injunction.  (Pl.'s Mar. Mot. at 8; MacMull Mar. Decl. ¶¶ 19, 20.)

Accordingly, on March 1, 2024, Plaintiff's counsel emailed Brija's TTAB counsel, Roffe, attaching a copy of the Injunction and stating that Paragraph 4(e) of the Injunction precluded Frank Brija from "opposing any application for registration or petitioning to cancel any registration of Plaintiff for trademark PATSY'S for sauces or other packaged food products or restaurant services."  (MacMull Mar. Decl. Ex. 10 at 1, ECF No. 399-10.)  Plaintiff's counsel gave Roffe until March 4, 2024 to voluntarily withdraw the counterclaim to cancel the PATSY'S PR SINCE 1944 trademark.  (*Id.*)  After Plaintiff's counsel emailed a copy of the Injunction to Roffe, Roffe and Frank Brija discussed Paragraph 4(e) in one email and on two phone calls on March 1, 2024.  (MacMull Apr. 2, 2025 Decl. Ex. 2, ECF No. 559-2; Oxenburg Oct. 28, 2024 Decl. Ex. 1 at 6–7, ECF No. 524.)

Brija and Roffe did not withdraw the counterclaim.  On March 4, 2024, Roffe responded to Plaintiff's counsel, questioning whether Plaintiff's counsel had emailed him the correct Injunction and stating that "the injunction [Plaintiff's counsel] sent has in paragraph 4(e) the

word 'incorporating' crossed-out and initialed by the Judge so that only the trademark PATSY'S for sauces . . . is subject to the paragraph (obviously not the marks subject to cancellation herein of PATSY'S PR SINCE 1944 and PATSY'S OF NEW YORK)." [3]  (*Id.* Ex. 11, ECF No. 399-11.)  Plaintiff's counsel had emailed the correct injunction, which contained Judge Martin's emendations to Paragraph 4(e) of the Injunction:

> e.    from opposing any application for registration or petitioning to cancel any registration of Plaintiff for ~~any Pr~~ trademark ~~incorporating~~ PATSY'S for sauces or other packaged food products or restaurant services;

## C.    Procedural History

On March 8, 2024, Plaintiff filed the present motion.  On September 26, 2024, the Court conducted an in-person evidentiary hearing, and the parties submitted post-hearing briefs.  (ECF Nos. 515, 516, 519, 520, and 522.)  After the parties engaged in additional discovery, including the deposition of Adem Brija, Plaintiff moved to hold Adem Brija in contempt, and the parties fully briefed the motion.  (ECF Nos. 530, 533, and 535.)

On January 9, 2025, counsel for Defendants and Respondents Nezaj, Memishaj, and Adem Brija moved to withdraw.  (ECF No. 537.)  On January 29, 2025, the Court granted the motion to withdraw, on the condition that corporate Defendant I.O.B. Realty appear through counsel.  (ECF No. 544.)

After Respondent Roffe was deposed on December 19, 2024, the parties engaged in additional supplemental briefing.  (ECF Nos. 558, 567, 568, and 575.)

On July 25, 2025, the Court heard oral argument on the motions.

---

[3] The Court does not address the PATSY'S OF NEW YORK mark because it is not the subject of Plaintiff's motion. (Pl.'s Roffe Reply at 1, ECF No. 436; *see also* Roffe Opp'n at 8–9.)

## LEGAL STANDARD

Courts have the inherent power to enforce compliance with their lawful orders by holding violators of such orders in civil contempt. *See Armstrong v. Guccione*, 470 F.3d 89, 101–02 (2d Cir. 2006) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). To establish civil contempt, the moving party must show that (1) the order the alleged contemnor failed to comply with is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the alleged contemnor has not diligently attempted to comply in a reasonable manner. *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 111 (2d Cir. 2015) (quoting *Perez v. Danbury Hosp.*, 347 F.3d 419, 423–24 (2d Cir. 2003)). The moving party does not need to show that Defendants' conduct was willful. *See Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019).

An order is "clear and unambiguous" when it is "specific and definite enough to apprise those within its scope of the conduct that is being proscribed" or required. *Nat'l Basketball Ass'n v. Design Mgmt. Consultants, Inc.*, 289 F. Supp. 2d 373, 377 (S.D.N.Y. 2003) (Buchwald, J.) (citing *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1352 (2d Cir. 1989)). A clear and unambiguous order leaves "no uncertainty in the minds of those to whom it is addressed, who must be able to ascertain from the four corners of the order precisely what acts are forbidden." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) (internal quotation marks and citations omitted).

In a civil contempt action, the moving party bears the burden of proving noncompliance by "clear and convincing" evidence. *Latino Officers Ass'n City of N.Y., Inc. v. City of New York*, 558 F.3d 159, 164 (2d Cir. 2009). Proof of noncompliance is "clear and convincing" when the evidence demonstrates to a "reasonable certainty" that a violation occurred. *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) (citation omitted); *see also Aquavit Pharms.,*

*Inc. v. U-Bio Med, Inc.*, No. 19-CV-3351, 2020 WL 1900502, at *5 (S.D.N.Y. Apr. 17, 2020)

(Caproni, J.) ("[T]he 'clear and convincing' evidentiary standard is higher than the

preponderance of the evidence standard normally applicable to civil cases." (citing *E.E.O.C. v.*

*Local 638*, 81 F.3d 1162, 1174 (2d Cir. 1996)).

　　　As for the third requirement, the court must determine "whether defendants have been

reasonably diligent and energetic in attempting to accomplish what was ordered."  *Medina v.*

*Buther*, No. 15-CV-1955, 2019 WL 581270, at *25 (S.D.N.Y. Feb. 13, 2019) (Preska, J.)

(citations omitted).  A defendant is not reasonably diligent when he ignores a court order or

"takes only superficial actions that strain both the language and intent of the order."  *Id.* (internal

quotation marks and citation omitted).  Courts analyzing reasonable diligence have considered

whether a party's actions are based on a "good faith and reasonable interpretation of the court

order."  *Schmitz v. St. Regis Paper Co.*, 758 F. Supp. 922, 927 (S.D.N.Y. 1991) (Broderick, J.).

Good faith does not, however, preclude finding civil contempt for a prohibited action, because

contempt sanctions are remedial in nature.  *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d

126, 128 n.2 (2d Cir. 1979).

　　　Non-parties can be held in contempt of an injunction.  Under Rule 65(d) of the Federal

Rules of Civil Procedure, an injunction binds an enjoined party's "officers, agents, servants,

employees, and attorneys" and "other persons who are in active concert or participation with [the

enjoined party]," as long as the nonparty receives "actual notice" of the injunction.  Fed. R. Civ.

P. 65(d)(2).  Stated somewhat differently, in order for the court to hold a nonparty in contempt,

the nonparty "must either be 'legally identified' with the enjoined party or 'abet' the enjoined

party's violation of the injunction."  *Havens v. James*, 76 F.4th 103, 111 (2d Cir. 2023) (quoting

*Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 833 (2d Cir. 1930)).

　　　A nonparty is "legally identified" with an enjoined party when it shares a "legal

relationship" with that party. *Havens*, 76 F.4th at 121 n.20. For example, a "successor"

organization can be legally identified with its predecessor, *New York v. Operation Rescue Nat'l*,

80 F.3d 64, 70–71 (2d Cir. 1996), and shared ownership or control can make two parties legally

identified, *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 638

(S.D.N.Y. 2018) (Pauley, J.). "[M]utual assistance and shared goals," however, are not sufficient

on their own to render a nonparty legally identified with a party subject to an injunction.

*Havens*, 76 F.4th at 121 n.20.

To find a nonparty in contempt under an aiding-and-abetting theory, the court must first

conclude that "the party subject to the court's mandate committed contempt." *Id.* at 112 (quoting

*Levin*, 277 F.3d at 250). The court must then conclude that "the challenged action of the

nonparty was taken for the benefit of, or to assist, a party subject to the decree in violating the

injunction." *Id.* (quoting *Arista Recs., LLC v. Tkach*, 122 F. Supp. 3d 32, 36 (S.D.N.Y. 2015)

(Nathan, J.) (internal quotation marks omitted)). Importantly, the moving party is required to

demonstrate that the nonparty had the intent to assist the enjoined party in violating the

injunction. *See Kelly Toys Holdings LLC v. 19885566 Store*, No. 22-CV-9384, 2024 WL

532290, at *2 (S.D.N.Y. Feb. 9, 2024) (Furman, J.).

## DISCUSSION[4]

### I.    Liability

#### A.    Paragraph 4(d) of the Injunction

Plaintiff alleges that Defendants I.O.B. Realty and Frank Brija, and Respondents Nezaj,

Memishaj, and Adem Brija violated Paragraph 4(d) of the Injunction when Frank Brija filed

---

[4] To the extent the Court does not address any particular arguments raised by the parties, the Court has considered them and rejects them on the merits.

trademark applications—with Adem Brija's assistance—for "PATSY'S OF EAST HARLEM" and "PATSY'S OF HARLEM" in Nezaj's and Memishaj's names, respectively.

The Court finds that Defendants I.O.B. Realty and Frank Brija are in contempt for violating Paragraph 4(d) of the Injunction, and in fact, Brija conceded this on April 11, 2024.[5] Respondents Nezaj and Memishaj are not in contempt because they lacked actual notice of the Injunction. Respondent Adem Brija is not in contempt because the motion record does not support a finding that he knew he was assisting his father's violation of the Injunction when he Googled how to submit a trademark application and checked the applications for spelling and grammar errors.

### 1.    Paragraph 4(d) of the Injunction Is Clear and Unambiguous

With respect to the first element of civil contempt, the Court holds that Paragraph 4(d) of the Injunction is clear and unambiguous. Paragraph 4(d) prohibits Defendants, among others, "from applying for, obtaining or maintaining any trademark registration for a mark which comprises, consists of the words PATSY'S or PATSY'S RESTAURANT for sauces or other packaged food products[.]"  (Injunction ¶ 4(d).)  Defendants' argument[6] that Judge Martin's

---

[5] Brija conceded that "it was likely a breach of Section 4(d) of the Final Judgment dated April 18, 2001 . . . as interpreted by this Court's August 5, 2021, Opinion and Order . . . when the trademark applications were filed for PATSY'S OF HARLEM and PATSY'S OF EAST HARLEM." (Defs.' Opp'n at 1; *see also* Sept. 26, 2024 Hearing Tr. 83:19–84:2 ("I do acknowledge that I violated [the Court's 2021] order, yes. Now I do understand it.").

[6] Notwithstanding the Court's decision in 2021, Frank Brija now contends that Judge Martin's handwritten changes to the wording of the Injunction make it ambiguous. Originally, the Injunction prohibited Defendants "from applying for, obtaining or maintaining any trademark registration for a mark which comprises, consists of *or includes* PATSY'S for sauces or other packaged food products." (*See* Injunction ¶ 4(d) (emphasis added); Defs.' Opp'n at 6.) Judge Martin struck "or includes" and replaced that phrase with "the words." In addition, Judge Martin added "or PATSY'S RESTAURANT." (*See* Injunction ¶ 4(d).) Frank Brija contends that "if Judge Martin wanted to prohibit Patsy's Pizzeria from applying for, obtaining, or maintaining any trademark registration for a mark that *includes any* of the words "PATSY'S" or "PATSY'S RESTAURANT," [Judge Martin] would have either left 4(d) as it was originally worded or adjusted it to add the phrase 'any of the words' after the word 'includes', to avoid any ambiguity." (Defs.' Opp'n at 6 (emphasis in original).) However, Judge Martin more likely was aware that one meaning of "comprises" is "includes," and he would thus have stricken "includes" as redundant. In light of the Court's decision in 2021, in which the Court found that Paragraph 4(d) of the Injunction is clear and unambiguous, and that Frank Brija violated the Injunction when he applied for a trademark that was not limited to the words "PATSY'S" or "PATSY'S RESTAURANT," the Court finds Frank Brija's contentions incredible.

striking of the word "includes" eliminated the concept of "inclusion" from the Injunction is based on a misunderstanding of the word "comprises," which is a synonym for the word "includes." *See e.g.*, *Comprising*, United States Patent and Trademark Office Glossary, https://www.uspto.gov/learning-and-resources/glossary (last visited Aug. 5, 2025) ("A transitional phrase that is synonymous with (means the same thing as) "including," "containing" or "characterized by;" is inclusive or open-ended and does not exclude additional, unrecited elements or method steps."); *Comprise*, Merriam-Webster Thesaurus, https://www.merriam-webster.com/thesaurus/comprise (last updated Aug. 4, 2025) (listing the word "include" as a synonym for "comprise"); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 132–33 (2012) ("In one particular legal specialty—intellectual-property law— *comprise* is held to be synonymous with *include*. Specifically, *comprise* introduces a nonexhaustive list." (emphasis in original)). As this Court stated in 2021, "Paragraph 4(d) prohibits [] applying for, obtaining or maintaining *any* trademark registration" with the word "Patsy's," and held that Defendants violated Paragraph 4(d) when Defendants applied for a U.S. trademark for "PATSY'S PIZZERIA SINCE 1933." *Patsy's Brand, Inc.*, 2021 WL 3418475, at *15 (emphasis in original). Having been held in contempt for applying for a trademark containing words other than "Patsy's," Frank Brija knew that Paragraph 4(d) clearly and unambiguously prohibited him from doing so again.

> ### 2.    Plaintiff Has Demonstrated Defendants' Noncompliance by Clear and Convincing Evidence

With respect to the second element of civil contempt, the Court finds, by clear and convincing evidence, that Defendants I.O.B. Realty and Frank Brija violated the Injunction. There is no dispute that Brija submitted the trademark applications for "PATSY'S OF EAST HARLEM" and "PATSY'S OF HARLEM," both in International Class 30. However, he applied for those trademarks by signing the names of Nezaj and Memishaj, and he may not use others'

names to do what he is not permitted to do himself.[7]  *See Eli Lilly & Co. v. Gottstein*, 617 F.3d

186, 195 (2d Cir. 2010); *see also United States v. Schine*, 260 F.2d 552, 556 (2d Cir. 1958).

### 3.    Defendants Did Not Diligently Attempt to Comply

With respect to the third element of civil contempt, the Court finds that Defendants did

not diligently attempt to comply with Paragraph 4(d) of the Injunction.  Frank Brija contends that

he "reasonably interpreted the Injunction to be ambiguous, so that the [PATSY'S OF EAST

HARLEM and PATSY'S OF HARLEM applications] were part of a diligent attempt to comply

with the Injunction while still protecting Patsy's Pizzeria's brand."  (Defs.' Opp'n at 16.)  The

Court disagrees.

First, Frank Brija's claim that Paragraph 4(d) permitted him to apply for the PATSY'S

OF EAST HARLEM and PATSY'S OF HARLEM marks is not reasonable, as discussed in

*supra* note 6.  Second, and relatedly, Frank Brija knew, a year and a half before he submitted the

two trademark applications, that this Court had rejected his interpretation of Paragraph 4(d),

when it found him in contempt for violating that same Paragraph.  Yet he attempts to justify his

actions here by claiming to interpret Paragraph 4(d) in precisely the way this Court had already

rejected.

In 2021, the Court explicitly warned the parties what the requirement of diligence entails:

"[F]or repeat offenders like Defendants, a response that 'diligently attempted to comply with the

Injunction should have included proceeding with caution' and petitioning the Court for a

---

[7] Frank Brija conceded that it was his idea to apply for the trademarks, and that he used Nezaj's and Memishaj's names to apply for the trademarks.  (Defs.' Opp'n at 1 ("Mr. Brija further admits that it was his idea, without the advice of counsel, to pursue the Harlem Applications. . . . Mr. Brija acknowledges that he alone made the analysis that led to the Harlem Applications[.]"), 5 ("Mr. Brija determined that he could best protect the Brand's interests by seeking trademarks tying Patsy's Pizzeria to its Harlem and East Harlem heritage . . . . He made this determination on his own[.]"); 13 (Mr. Brija "set out to apply for two new marks based on geography alone: PATSY'S OF HARLEM and PATSY'S OF EAST HARLEM"); 14 (Mr. Brija "spoke with his wife and brother to see if they would be willing to help with, respectively, the PATSY'S OF EAST HARLEM and PATSY'S OF HARLEM trademarks; and they agreed.")).

modification or clarification of the Injunction." *Patsy's Brand, Inc.*, 2021 WL 3418475, at *12 (quoting *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 99–100 (2d Cir. 2016)).  Frank Brija did not proceed with caution.  He did not petition the Court for modification or clarification of the Injunction.  Once again, he did not diligently attempt to comply with Paragraph 4(d) of the Injunction.

### 4.    Nonparties Nezaj's and Memishaj's Liability Under Paragraph 4(d)

Neither Nezaj nor Memishaj is in contempt because the record does not support a finding that either had actual notice of the Injunction.  Both Nezaj and Memishaj declared that they were not aware of the Injunction before Frank Brija filed the PATSY'S OF EAST HARLEM and PATSY'S OF HARLEM applications in their names.  (Nezaj Decl. ¶ 2, ECF No. 421; Memishaj Decl. ¶ 2, ECF No. 422.)  Neither discovery nor the parties' testimony at the September 26, 2024 evidentiary hearing demonstrated, with reasonable certainty, that Nezaj and Memishaj had notice of the Injunction prior to agreeing to lend their names to the applications.

Although Plaintiff argues that Nezaj and Memishaj have shared a "personal relationship" with Frank Brija for decades and have been tangentially involved with Brija's businesses, that is not enough for this Court to find that either had notice of the Injunction.  (Pl.'s Mar. Mot. at 13.) Plaintiff also points out that Nezaj sat in the courtroom during a hearing in the prior contempt proceedings, and therefore must have heard the word "injunction" spoken multiple times.  (Pl.'s Suppl. Mem. at 6–7, ECF No. 515.)  However, evidence that Nezaj may have heard the word "injunction" and generally knew that her husband was involved in contempt proceedings in the past, does not mean that when she gave permission to Brija to use her name, she knew that he would submit trademark applications that violated the Injunction.  *See Matrix Essentials v. Quality King Distribs., Inc.*, 346 F. Supp. 2d 384, 393 (E.D.N.Y. 2004) (holding that wife of enjoined party was not in contempt of injunction, despite evidence of wife's potential

involvement in prior injunction proceedings, in part because she submitted an affidavit stating that she had no knowledge of the terms of the injunction or that her husband had even consented to an injunction). Absent notice of the Injunction, Nezaj and Memishaj may not be found in contempt. *See Vuitton et Fils S.A.*, 592 F.2d at 129; *Kelly Toys Holdings LLC*, 2024 WL 532290, at *2 ("[A] nonparty, in order to be found to have violated an injunction, must have the intent to assist a party in violating the injunction—a requirement that necessarily implies a requirement that the nonparty has knowledge of such ongoing or impending violation."); *John Wiley & Sons, Inc. v. Kirtsaeng*, No. 08-CV-7834, 2009 WL 3817407, at *3 (S.D.N.Y. Nov. 9, 2009) (Pogue, J.) (declining to find defendant in contempt because plaintiff failed to demonstrate that defendant had actual notice of the order at issue).

### 5.  Nonparty Adem Brija's Liability Under Paragraph 4(d)

Whether Respondent Adem Brija can be held in contempt, either as "legally identified" with his father, or as an aider and abettor, is a closer question. Plaintiff urges the Court to consider Adem "legally identified" with Frank Brija because Adem is Frank's son and because Adem operates the original Harlem pizzeria through BackThree, Inc, an alleged "successor" entity to Defendant I.O.B. Realty. (*See* Pl.'s Nov. Mot. at 13; Pl.'s Adem Reply at 5–6, ECF No. 535.) Plaintiff further argues that Adem is his father's "agent" because he stated during his deposition that he serves as his father's "glorified secretary" or "personal assistant," driving him around on errands, editing his father's spelling and grammar in written documents, and signing his father's name to official documents. (Pl.'s Adem Reply at 5.)

On this record, the Court does not find that Adem Brija is legally identified with his father. *See Havens*, 76 F.4th at 121 n.20 (noting that legal identity requires more than simply "mutual assistance and shared goals"). A "successor" entity may be held liable for violating an injunction only if there is a "substantial continuity of identity" between the bound entity and the

alleged successor. *See Operation Rescue Nat'l*, 80 F.3d at 70–71; *see also Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 154 F.3d 1345, 1352 (Fed. Cir. 1998) (noting that the successorship question is a case-by-case inquiry that turns on whether the successor is "so identified in interest with [the predecessor] named in the [injunction] that it would be reasonable to conclude that [his] rights and interests have been represented and adjudicated in the original injunction proceeding" (citation omitted)); *Matrix Essentials*, 346 F. Supp. 2d at 392 ("Factors to be considered [in evaluating an alleged successor's liability for the violation of an injunction] include the non-party's position and responsibilities with the enjoined corporation, his participation in the original litigation[,] and the similarity between the activities of the corporation and those of the non-party." (citation omitted)).

Plaintiff has not offered sufficient evidence to demonstrate that BackThree, Inc. is a successor entity to I.O.B. Realty. Importantly, there is no evidence that BackThree, Inc. was created to allow I.O.B. Realty to circumvent the Injunction. *See Operation Rescue Nat'l*, 80 F.3d at 70 ("[A]n organization and its agents may not circumvent a valid court order merely by making superficial changes in the organization's name or form[.]"); *Walling v. James V. Reuter, Inc.*, 321 U.S. 671, 674 (1944) ("[An injunction] may . . . be enforced against those to whom the business may have been transferred . . . as a means of evading the judgment."). Adem Brija was a child at the time of the original litigation, and his ownership of BackThree, Inc. appears to be related only to the operations of the Harlem pizzeria, not to any of his father's trademark application activities. Although Adem Brija works closely with Frank Brija in operating the Harlem pizzeria, and has a history of assisting his father with the English language, this relationship does not rise to the level of relationships that courts in this Circuit have held to constitute shared legal identity. *See, e.g.*, *Telecom Bus. Sol., LLC v. Terra Towers Corp.*, No. 22-CV-1761, 2025 WL 2030166, at *3–4 (S.D.N.Y. July 21, 2025) (Kaplan, J.) (holding that a

18

nonparty was "legally identified" with an enjoined party because the two were "one and the same" (quoting *Spectacular Venture, L.P. v. World Star Int'l, Inc.*, 927 F. Supp. 683, 685 (S.D.N.Y. 1996) (Kaplan, J.)).

The Court next considers whether Adem Brija is liable under the aiding-and-abetting theory of civil contempt for, at his father's request, conducting a Google search on how to submit trademark applications and checking the applications for spelling and grammar errors before they were submitted. The Court cannot find a nonparty in civil contempt, unless Plaintiff shows with reasonable certainty that the nonparty received actual notice of the Injunction. Fed. R. Civ. P. 65(d)(2).

The Court acknowledges that Adem Brija is no stranger to this Court or these proceedings. For example, he revealed that he was familiar with the Second Circuit's 2003 modification to the Injunction when he testified before this Court in May 2021 and explicitly referenced the restrictions the Second Circuit had placed on the font size and labelling of the pizzeria's products. (Pl.'s Nov. Mot. at 1, 4; May 25, 2021 Hearing Tr. 219:11–246:8, ECF No. 350; May 28, 2021 Hearing Tr. 850:8–870:23, ECF No. 356; *Patsy's Brand, Inc*, 317 F.3d at 220–21.) The Court previously noted that Adem and his father had "repeatedly asked for their Former Counsel's advice regarding numerous iterations of [] label designs" and that "Former Counsel . . . provided legal advice to Frank and Adem Brija." *Patsy's Brand, Inc.*, 2021 WL 3418475, at *12. Adem Brija has also owned the main Patsy's Pizzeria, located in Harlem, for at least five years and works with his father to manage that pizzeria. (Adem Brija Decl. ¶ 2, ECF No. 534; Adem Brija Dep. 19:1-9.) He testified during his October 2024 deposition that he might have seen the Injunction during the prior contempt proceedings. (Pl.'s Nov. Mot. at 6; Adem Brija Dep. 50:1-52:10 ("I believe I've seen [the Injunction] years ago. . . . To the best of my recollection, it may have been around the last time this - there was a contempt motion in this

case.")).

On this record, however, the Court cannot find with reasonable certainty that Adem Brija, when Googling how to submit a trademark application and reviewing the two applications for spelling and grammar errors, did so with the knowledge that he was assisting with activity that violated Paragraph 4(d) of the Injunction.  Aiding and abetting generally "refers to a conscious, voluntary, and culpable participation in another's wrongdoing," *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 493 (2023); in the civil contempt context, proving liability under an aiding-and-abetting theory requires Plaintiff to show that Adem Brija had "the intent to assist [his father] in violating the injunction," *Kelly Toys Holdings LLC*, 2024 WL 532290, at *2.  In other words, Plaintiff was required to show that Adem Brija knew that his father was violating Paragraph 4(d) of the Injunction by filing the two trademark applications.  *See Sacco v. Burke*, 764 F. Supp. 918, 921 (S.D.N.Y. 1991) (Patterson, J.) (noting that one defense to civil contempt is where the nonparty "lacked actual knowledge of the terms of the [injunction]").

The evidence here does not support that conclusion.  Adem Brija declared that when he assisted his father, he did not know that what he was doing, or what his father was doing, was in violation of the Injunction.  (Adem Brija Decl. ¶¶ 9, 13.)  There is nothing in the record to rebut that assertion.  Because the Court finds that Adem lacked knowledge that Frank Brija was preparing to violate the Injunction, it does not reach the question of whether his actions were taken to benefit Frank Brija.

Although the Court does not find Adem Brija in civil contempt, because he lacked actual notice of the Injunction, he certainly has notice of the Injunction and its terms now.  Should Frank Brija request his assistance with trademarks in the future, Adem Brija is well-advised to review the terms of the Injunction and take all steps necessary to ensure that he does not aid and abet his father in violating it.  *See United States v. Jiffy Cleaners of Hartsdale, Inc.*, No. 16-CV-

2428, 2020 WL 4284155, at *3–4 (S.D.N.Y. July 27, 2020) (Briccetti, J.) (defining actual notice as "where the person . . . either knows the particular facts in question or is conscious of having the means to know them" and noting that "[a]ctual notice embraces those things that reasonably diligent inquiry and exercise of the means of information at hand would disclose." (quoting *John Wiley & Sons*, 2009 WL 3003242, at *2)).

**B.    Paragraph 4(e) of the Injunction[8]**

Plaintiff alleges that Frank Brija violated Paragraph 4(e) of the Injunction when he, through Roffe, asserted a counterclaim in the TTAB to cancel the trademark PATSY'S PR SINCE 1944 for sauces, and that Respondent Roffe violated Paragraph 4(e) when he refused to withdraw the counterclaim after Plaintiff's counsel emailed him the Injunction.  The Court finds that Frank Brija and Respondent Brian Roffe are in contempt for violating Paragraph 4(e) of the Injunction.

**1.    Paragraph 4(e) of the Injunction Is Clear and Unambiguous**

With respect to the first element of civil contempt, the Court holds that Paragraph 4(e) of the Injunction is clear and unambiguous.  Paragraph 4(e) prohibits Defendants and their attorneys, along with others, "from opposing any application for registration or petitioning to cancel any registration of Plaintiff for trademark PATSY'S for sauces or other packaged food products or restaurant services[.]"  (Injunction ¶ 4(e).)  Paragraph 2 of the Injunction defines "PATSY'S for sauces," stating that "plaintiff is the owner of all right, title and interest, including trademark rights, in and to the trademark PATSY'S for sauces and is the owner of a valid U.S.

---

[8] Frank Brija states that he "relied entirely on advice and counsel from Brian Roffe, his attorney in the trademark proceedings over a mark for use on ovens . . . concerning that proceeding and the propriety of any counterclaims therein; and, as to Plaintiff's Injunction 4(e) allegations, Mr. Brija adopts the arguments and defenses in Mr. Roffe's April 11, 2024, opposition memorandum[.]"  (Defs.' Opp'n at 2.)  To the extent that the Court states that "Brija argues" or "Brija and Roffe argue" in this section, it is because Brija adopts the arguments contained in Roffe's papers.

trademark registration for *such mark*, Registration No. 1,874,789." (Injunction ¶ 2 (emphasis added).) A trademark registration number is a critical piece of information in trademark law. A simple search on the USPTO website shows that Registration No. 1,874,789 is associated with Plaintiff's trademark PATSY'S PR SINCE 1944 in International Class 30 for sauces. Furthermore, Paragraph 6 of the Injunction ordered Defendant Brija to withdraw his pending TTAB Cancellation Petition 28,142—a petition to cancel the PATSY'S PR SINCE 1944 trademark.[9] (Injunction ¶ 6.).

Paragraph 4(e) of the Injunction is therefore clear and unambiguous. It prohibits Defendants from petitioning to cancel the trademark PATSY'S PR SINCE 1944 in International Class 30 for sauces.

### 2.    Plaintiff Has Demonstrated Defendants' and Respondent Roffe's Noncompliance by Clear and Convincing Evidence

With respect to the second element of civil contempt, the Court finds, by clear and convincing evidence, that Frank Brija and Brian Roffe violated Paragraph 4(e) of the Injunction. There is no dispute that Frank Brija, through Roffe, asserted a counterclaim in the TTAB, petitioning to cancel Plaintiff's trademark PATSY'S PR SINCE 1944 for sauces, which is prohibited by the Injunction's clear and unambiguous language. (MacMull Mar. Decl. ¶¶ 17–18; *id.* Ex. 9 at 18–22, ¶¶ 34–55; Roffe Opp'n at 3.)

The parties now agree that Roffe first had notice of the Injunction on March 1, 2024, when Plaintiff's counsel emailed him a copy, and directed his attention specifically to Paragraph 4(e). (Roffe Apr. 11, 2024 Decl. ¶ 6, ECF No. 424; Pl.'s Suppl. Reply at 8, ECF No. 575.)

---

[9] Another court in this Circuit has observed that the PATSY'S PR SINCE 1944 trademark is the subject of the Injunction. *Patsy's Italian Rest., Inc. v. Banas*, 508 F. Supp. 2d 194, 203 (E.D.N.Y. 2007) ("I.O.B. filed a petition with the [TTAB] of the [USPTO] seeking to have Patsy's Brand's 1995 registration for the mark PATSY'S PR SINCE 1944 (stylized) for sauces cancelled (Registration No. 1,874,789). The petition received Cancellation Proceeding No. 92/028,142.").

Even after being specifically directed to Paragraph 4(e), Roffe refused to withdraw the TTAB counterclaim, repeating the same erroneous argument in each supplemental brief: that Paragraph 4(e) does not apply to Plaintiff's trademark PATSY'S PR SINCE 1944.  (Roffe Opp'n at 8–10; Roffe Post-Hearing Submission at 2–3, ECF No. 522; Roffe Suppl. Opp'n at 3–4, ECF No. 567.) This evidence demonstrates to a "reasonable certainty" that Roffe violated the Injunction.  *Levin*, 277 F.3d at 250.

### 3.    Defendants and Respondent Roffe Did Not Diligently Attempt to Comply

With respect to the third element of civil contempt, the Court finds that Frank Brija and Roffe did not diligently attempt to comply with Paragraph 4(e) of the Injunction.  First, Brija and Roffe's contention that their filing and maintenance of the counterclaim in the TTAB, petitioning to cancel PATSY'S PR SINCE 1944, represents "a good faith and reasonable interpretation of Paragraph 4(e) of the Injunction" is unpersuasive.  (Roffe Opp'n at 10.)  Brija and Roffe argue that Judge Martin's handwritten emendations to the Injunction narrowed the scope of Paragraph 4(e) to allow them to petition to cancel trademarks which incorporate "PATSY'S" for restaurant services or sauces, such as the PATSY'S PR SINCE 1944 trademark.  (Roffe Opp'n at 9–10.) Yet to accept Brija and Roffe's interpretation, Judge Martin would have had to do two inconsistent things at the same time: (1) find that "Brija infringed [the PATSY'S PR SINCE 1944 mark] and order[] him to withdraw his pending TTAB petition to cancel [that mark]," *and* (2) "'consciously narrow[]' paragraph 4(e) to allow Brija to petition the TTAB to cancel [the PATSY'S PR SINCE 1944 mark]."  (Pl.'s Roffe Reply at 2, ECF No. 436.)  This interpretation of the Injunction is nonsensical, and certainly not "a good faith and reasonable interpretation" of Paragraph 4(e).

Moreover, Respondent Roffe was not diligent in informing himself of the scope of the Injunction, which would have been necessary to advise his client correctly.  Instead of reviewing

the Injunction closely, and reading the underlying decisions in this case, he merely contacted his

non-lawyer client and asked if his client "remember[ed] anything about this decision," and asked

for his client's "thoughts."  (MacMull Apr. 2, 2025 Decl. Ex. 2.)  The bare minimum of due

diligence requires one to search for the underlying case law and to review the entirety of an

Injunction, not just one provision.  Roffe fails to address, through multiple rounds of briefing, the

fact that Paragraphs 2 and 6 of the Injunction clearly prohibit a petition to cancel the PATSY'S

PR SINCE 1944 mark.  Roffe's stunning lack of diligence was revealed when he admitted during

his deposition that he looked for, but did not find, a definition for "PATSY'S for sauces."  When

asked if he had discussed with Frank Brija in March 2024, any provisions of the Injunction

besides 4(e), Roffe stated:

> [N]o specific provisions.  What I recall doing was looking for definitions.  Usually
> when you have an agreement including an injunction, there might have been a
> definition of what . . . the trademark Patsy's is.  So we . . . talked about the other
> paragraphs in the sense that *none of them contained a definition to help us better
> understand paragraph 4(e)*.

(Roffe Dep. 124:23–125:8, ECF No. 559-1 (emphasis added).)  But if Roffe had turned back one

page in the Injunction, he would have found the clear and unambiguous definition he was

looking for, complete with a trademark registration number pointing to PATSY'S PR SINCE

1944 as the subject of the Injunction.  (Injunction ¶ 2.)  Roffe's actions were not reasonable, and

he therefore did not diligently attempt to comply with the Injunction.

Roffe's counsel raises, for the first time at oral argument, that Roffe could not have

withdrawn the TTAB counterclaim without potentially facing a malpractice suit from Frank

Brija.  Counsel argues that the counterclaim was not Roffe's to withdraw.  (July 25, 2025

Hearing Tr. 58:6-14.)  The Court agrees.  Roffe did not necessarily have to withdraw the

counterclaim to purge his contempt.  Because the petition to cancel was in Brija's name and

Roffe was merely the attorney of record, all Roffe had to do was withdraw *as counsel*, leaving

the petition to cancel in place and adequately protecting himself from any potential malpractice suit.

Regardless, these arguments overlook the reality that any diligent lawyer, after reading the Injunction, would have concluded that petitioning to cancel the trademark was expressly prohibited by Paragraph 4(e).  At the very least, Roffe should have advised Brija to withdraw it (and had Brija refused, Roffe should have then notified the TTAB that a conflict had arisen, and withdrawn as counsel in the case).  Not only did Roffe not do so; he advised Brija to the contrary.  (Roffe Dep. 84:25–85:9 (Roffe testifying that he told Brija that it was "not reasonable" to withdraw the TTAB counterclaim); *id.* 103:24–104:1 (Roffe agreeing that he advised Brija not to withdraw the counterclaim).)  Moreover, a diligent lawyer would have asked Plaintiff's counsel for more time to confer with his client and review the materials, investigate the circumstances underlying the Injunction, or even seek clarification from this Court.  Roffe did none of those things.  Instead, Roffe took a position: he advised his client that Paragraph 4(e) of the Injunction does not apply to the PATSY'S PR SINCE 1944 mark, and he has not deviated from that argument ever since.  It is clear, then, that absent an order from this Court, Roffe had no intention of withdrawing the counterclaim or advising his client to do so.

Frank Brija's contention that he relied on Roffe's interpretation of the Injunction does not absolve him of responsibility for violating the Injunction's clear and unambiguous language.  Reliance on the advice of counsel is not a defense to a charge of contempt.  Rather, reliance on the advice of counsel is relevant only in determining the appropriate sanctions for the contemnor's conduct.  *Patsy's Brand, Inc.*, 2021 WL 3418475, at *9 (collecting cases); *S.E.C. v. Musella*, 818 F. Supp. 600, 606 (S.D.N.Y. 1993) (Wood, J.) ("[T]he alleged contemnor [may not] rely on his own inadvertence, misunderstanding or advice from counsel" to avoid a finding of contempt).

####    4.    Laches

Roffe asks the Court to apply the equitable defense of laches with respect to his violation of Paragraph 4(e) because Plaintiff did not notify Roffe that his filing violated the Injunction until fourteen months after Roffe had filed the counterclaim, and only after the parties had litigated the merits of the counterclaim before the TTAB.  (Roffe Opp'n at 12–16.)

"The doctrine of laches protects defendants against unreasonable, prejudicial delay in commencing suit," *Zuckerman v. Metro. Museum of Art*, 928 F.3d 186, 193 (2d Cir. 2019) (internal quotation marks and alteration adopted) (quoting *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 333 (2017)), and it may be applied in the context of contempt proceedings.  *See, e.g.*, *Perez*, 347 F.3d at 426.  To invoke the laches defense, the person seeking its protection must establish that (1) the plaintiff knew of that person's misconduct; (2) the plaintiff inexcusably delayed in taking action; and (3) the person was prejudiced by plaintiff's delay.  *See Republic of Turkey v. Christie's Inc.*, 62 F.4th 64, 71 (2d Cir. 2023) (quoting *Ikelionwu v. United States*, 150 F.3d 233, 237 (2d Cir. 1998)).  "[P]rejudice ensues when a defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed."  *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192 (2d Cir.1996) (internal quotation marks and citation omitted).  The decision of whether to apply laches falls entirely within the district court's discretion.  *Fed. Treasury Enters. Sojuzplodoimport v. Spirits Int'l B.V.*, 809 F.3d 737, 746 (2d Cir. 2016) (citing *Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V.*, 17 F.3d 38, 44 (2d Cir. 1994)).

Plaintiff is deemed to have had knowledge of the misconduct in December 2022, when Frank Brija petitioned to cancel the PATSY'S PR SINCE 1944 trademark.  *See Howard Univ. v. Borders*, 588 F. Supp. 3d 457, 479 (S.D.N.Y. 2022) (Liman, J.) (holding that, for purposes of the first laches element, the party opposing the laches defense need not have actual knowledge of the

misconduct; rather, it is sufficient that the party *should have known* of the misconduct). However, Plaintiff did not move to hold Defendants and Respondent Roffe in contempt until March 2024.  Plaintiff states that the reason for the delay is that, when Brija asserted the counterclaim, Plaintiff "did not at that time recall paragraph 4(e)[.]"  (Pl.'s Mar. Mot. at 8.)

In the context of this lengthy litigation and the rigor with which Plaintiff's counsel has enforced the Injunction just recently, Plaintiff's inaction for fourteen months was an "inexcusable delay" under the second element of laches.  The counterclaim was filed in December 2022, just sixteen months after the Court found Defendants in contempt in 2021, and eight months after the Court awarded attorneys' fees and costs to Plaintiff's counsel in the same proceedings.  Although the cases cited by the parties deal with delays longer than fourteen months, the Court finds Plaintiff's fourteen-month delay unreasonable in the context of this case. *See, e.g.*, *Aris Isotoner Inc. v. Berkshire Fashions, Inc.*, 924 F.2d 465, 466–67 (2d Cir. 1991) (per curiam) (remanding for district court to consider two-and-a-half-year delay supporting laches); *Conopco, Inc.*, 95 F.3d at 192 (five-year delay supporting laches); *In re Lehman Bros. Inc.*, 617 B.R. 231, 247 (Bankr. S.D.N.Y. 2020) (eleven-year delay supporting laches); *see also In re Feldman*, 261 B.R. 568, 578 (Bankr. E.D.N.Y. 2001) ("The length of the delay is not dispositive, it is the reasonableness of the delay rather than the number of years that elapse which is the focus of inquiry." (citation omitted)).

However, with respect to the third laches element, the Court is not persuaded that Respondent Roffe was prejudiced by the delay.  Roffe asserts in his letters to the Court and in briefing that he has been prejudiced "by devoting time and resources in pursuing the Counterclaims on his client's behalf [and] chang[ing] his position in a way that would not have occurred had Plaintiff not unreasonably and inexcusably delayed in raising the Injunction." (Roffe Opp'n at 15.)  However, Roffe has never represented to the Court that he was not

compensated for his time and effort in the TTAB proceedings.  Roffe also suggests that had he known about Paragraph 4(e) earlier, he "may have counseled his client differently and/or taken different steps in the Opposition."  (*Id.* at 15–16.)  Roffe has never described what different advice he might have given or different steps he might have taken.  The obvious "different step" would have been to have never petitioned to cancel PATSY'S PR SINCE 1944 in the first place, something Roffe avoids stating because it would be a tacit admission that Paragraph 4(e) clearly and unambiguously prohibits petitioning to cancel that very mark.  In any event, based on Roffe's steadfast position that Paragraph 4(e) of the Injunction does not bar the counterclaim, the Court questions whether Roffe would have acted differently at all had he been sent a copy of, or conducted due diligence to find, the Injunction any earlier.

Roffe also argues that he has been prejudiced because he has been "forced to defend against this contempt proceeding and contend with its potentially negative monetary and reputational consequences."  (Roffe Suppl. Opp'n at 9.)  But this was a situation of Roffe's own making.  Once Roffe had notice of the Injunction, he was bound to act in such a way as to avoid violating this Court's order, but instead, he took a "wait and see" posture, and continued to advance the obviously incorrect argument that Paragraph 4(e) of the Injunction allowed him to petition to cancel Plaintiff's trademark.  Roffe has not been prejudiced by the delay.  Therefore, the Court, in its discretion, finds that the doctrine of laches does not apply.

To the extent that Frank Brija adopts Roffe's laches defense, *supra* note 8, such an argument is diluted by the fact that Brija himself knew that the petition to cancel Plaintiff's trademark violated Paragraph 4(e) of the Injunction, a fact he should have communicated to Roffe.  In addition, Brija knew that his previous attempt to cancel the same trademark had been foreclosed by Paragraph 6 of the Injunction, a fact he should have also communicated to Roffe.

III.    **Sanctions**

A.    **Reliance on the Advice of Counsel**

Frank Brija's argument that he relied on the advice of counsel in connection with his counterclaim to cancel Plaintiff's trademark PATSY'S PR SINCE 1944 is meritless.  To invoke the advice of counsel principle in mitigation of sanctions, a party must show that (1) he made a complete disclosure to counsel; (2) sought advice as to the legality of his conduct; (3) received advice that his conduct was legal; and (4) relied on that advice in good faith.  *Markowski v. S.E.C.*, 34 F.3d 99, 104–05 (2d Cir. 1994) (citing *S.E.C. v. Savoy Indus., Inc.*, 665 F.2d 1310, 1314 n.28 (D.C. Cir. 1981)).

Brija argues that he relied entirely on Roffe's advice with respect to petitioning to cancel the trademark.  (Defs.' Opp'n at 2, 6 n.7, 24.)  After Plaintiff's counsel emailed a copy of the Injunction to Roffe on March 1, 2024, Roffe and Frank Brija discussed Paragraph 4(e) in one email and on two phone calls on that same day.  (MacMull Apr. 2, 2025 Decl. Ex. 2; Oxenburg Oct. 28, 2024 Decl. Ex. 1 at 6–7.)  Roffe advised Brija that Paragraph 4(e) did not apply to the TTAB counterclaim because Judge Martin's emendations allowed petitions to cancel trademarks that incorporated the word "PATSY'S".  Brija asserts that he has not withdrawn the petition to cancel based on that advice.

This is not the first time Frank Brija has attempted to avoid contempt by invoking reliance on the advice of counsel.  *See Patsy's Brand, Inc.*, 2021 WL 3418475, at *12–15; *Patsy's Brand, Inc.*, 2002 WL 1988200, at *2.  In this instance, Brija's advice of counsel argument fails because (1) he did not make a complete disclosure to Roffe of all material facts and documents relevant to Paragraph 4(e) of the Injunction, and (2) he could not have relied on Roffe's advice in good faith because, as discussed above, no interpretation of the Injunction

would have permitted Brija to petition to cancel the very mark he was enjoined from petitioning to cancel.

Frank Brija failed to make a complete disclosure because he never sent Roffe a copy of the Injunction or brought its existence to Roffe's attention. Even after Roffe received the Injunction from Plaintiff's counsel, Brija did not provide Roffe with any relevant case documents in response to Roffe's request for "background information." (Roffe Dep. 60:15–61:6; 65:17–67:1; 75:7–76:17.) The Injunction was obviously relevant and material, not only because it concerned PATSY'S PR SINCE 1944, the trademark Brija petitioned to cancel through Roffe, but also because Paragraph 6 of the Injunction specifically ordered Brija to withdraw a pending petition to cancel that very mark. Brija additionally failed to make a complete disclosure by failing to tell Roffe that fact—that he had been previously forced by the court to withdraw a petition to cancel PATSY'S PR SINCE 1944.[10]

Even if Brija had made a complete disclosure, his reliance on the advice of counsel was not in good faith. As the Court has explained, no competent interpretation of the Injunction would have permitted Brija, through counsel, to petition to cancel the PATSY'S PR SINCE 1944 mark, not least of all because Paragraph 6 of the Injunction ordered him to withdraw a prior cancellation petition of the same mark. Brija, as a party to the Injunction and someone heavily engaged with litigation concerning this Injunction, undoubtedly knows this. He does not need an attorney to tell him otherwise and he cannot avoid liability by feigning reliance on the advice of counsel.

### B.    Sanctions Against Respondent Brian Roffe

In addition to seeking sanctions against Defendants I.O.B. Realty and Frank Brija,

---

[10] If Frank Brija hires other attorneys to represent him in matters relevant to Plaintiff's trademarks, he would be well-advised to provide those attorneys with copies of the Injunction and all court decisions in this case.

Plaintiff asks the Court to sanction attorney Brian Roffe for violating Paragraph 4(e) of the Injunction. Roffe, as Brija's attorney, is bound by the Injunction and may be found in contempt. *See* Fed. R. Civ. P. 65(d)(2). The Injunction itself enjoined, among others, "Defendants, their . . . attorneys, and all persons in active concert and participation with them, or any of them." (Injunction ¶ 4.) Roffe had notice of the Injunction beginning on March 1, 2024, when Plaintiff's counsel emailed it to him. (MacMull Mar. Decl. Ex. 10.) Despite receiving a copy of the Injunction, and having been alerted by Plaintiff that his and his client's conduct violated the Injunction, Roffe responded that the Injunction's prohibition against petitioning to cancel PATSY'S mark for sauces "obviously" did not apply to Plaintiff's trademark PATSY'S PR SINCE 1944. (*Id.* Ex. 11.) PATSY'S PR SINCE 1944 is the subject of the Injunction's clear and unambiguous language. Yet Roffe has not advised Brija to withdraw his counterclaim to cancel PATSY'S PR SINCE 1944 and has consistently maintained that Paragraph 4(e) does not apply. Roffe's argument that the TTAB proceeding is currently suspended, and that he is therefore not "continu[ing] to maintain the counterclaim," is unconvincing. (July 25, 2025 Hearing Tr. 58:6-9.) Thus, sanctions against Roffe are appropriate.

## C.    Coercive Sanctions

Monetary civil contempt sanctions are warranted against only Defendants I.O.B. Realty and Frank Brija. Civil contempt sanctions serve two purposes: "to coerce future compliance and to remedy any harm past noncompliance caused the other party." *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996). The objective of coercive sanctions is to force the contemnor to conform its conduct to the court's order. *N.Y. State Nat'l Org. for Women v. Terry*, 159 F.3d 86, 93 (2d Cir. 1998). In determining whether to impose coercive sanctions, courts consider "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's

financial resources and the consequent seriousness of the burden of the sanction upon him."
*Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir. 1987).  A coercive fine
must be substantial enough to make it more economical for a contemnor to comply than not to
comply.  *See Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982).  A
district judge, sitting in equity, "is vested with wide discretion in fashioning a remedy" to
encourage future compliance.  *See Vuitton et Fils S.A.*, 592 F.2d at 130.  "The contemnor bears
the burden of establishing a lack of financial resources to prevent imposition of monetary
sanctions."  *Jolen, Inc. v. Kundan Rice Mills, Ltd.*, No. 19-CV-1296, 2019 WL 2949988, at *4
(S.D.N.Y. July 9, 2019) (Castel, J.) (citing *Paramedics Electromedicina Comercial, LTDA v. GE
Med. Info. Techs., Inc.*, 369 F.3d 645, 658 (2d Cir. 2004)).

Each factor supports imposing sanctions against Defendants I.O.B. Realty and Frank
Brija.  With respect to the first factor, Plaintiff has demonstrated to a reasonable certainty that
Defendants violated the Injunction on three separate occasions.  Although the Paragraph 4(d)
violations caused little, if any, harm, because they were withdrawn soon after Plaintiff filed the
motion for contempt, both the Paragraph 4(d) and Paragraph 4(e) violations have once again
substantially diverted the attention of Plaintiff's executives from running their business.

The second factor—the probable effectiveness of a sanction in bringing about
compliance—calls for a substantial fine in the context of this decades-long litigation.  This is the
third time this Court has found Frank Brija in contempt.  This is the second time in only four
years that the Court has found him in contempt of Paragraph 4(d) specifically.  (Pl.'s Mar. Mot.
at 20.)  A substantial sanction is warranted to make it more economical for I.O.B. Realty and
Frank Brija to comply with the Injunction than to continue to disobey it.

As for the third factor, Defendants have not offered evidence that they are unable to pay
any potential sanctions.  *See Paramedics Electromedicina Comercial, LTDA*, 369 F.3d at 658.  In

fact, Defendants' business appears to be doing quite well.  *See* July 25, 2025 Hearing Tr. 20:16-20 (noting that Frank Brija has "buil[t] a small conglomerate in the food hospitality industry, with 17 locations spanning the country . . . reaching as far as South Florida" and Patsy's Pizzerias "as far as the European Union and Israel.").

In an effort to coerce future compliance with the Injunction, the Court holds that a sanction of $300,000 against Defendants I.O.B. Realty and Frank Brija is appropriate.  *See Patsy's Brand, Inc.*, 2021 WL 3418475, at *17 (warning in 2021 that Defendants would be sanctioned $100,000 for each future violation).  Sanctions shall be paid to the Clerk of Court rather than to Plaintiff because Plaintiff has "made no showing of compensable injury or actual loss due to [D]efendants' failure to obey the court order."  *Terry*, 886 F.2d at 1353–54 ("[S]ome proof of loss must be present to justify [a fine's] compensatory aspects."); *Su v. Berkshire Nursery & Supply Corp.*, No. 23-CV-275, 2024 WL 1636439, at *5 (S.D.N.Y. Apr. 16, 2024) (Briccetti, J.) ("Because plaintiff has not asserted loss from defendants' noncompliance, any fine shall be payable to the Clerk of Court.").

**Future violations of the Injunction may be met with sanctions of $300,000 or more for each violation.**  *See, e.g.*, *CBS Broad. Inc.*, 814 F.3d at 101–04.

In addition to coercive sanctions, Plaintiff asks the Court to consider initiating criminal contempt proceedings against Defendants.  (Pl.'s Mar. Mot. at 24–26.)  The Court declines to initiate criminal contempt proceedings at this time, but notes that the overwhelming evidence of Frank Brija's willfulness in violating the Injunction for a third time is likely sufficient to prove criminal contempt.  *See United States v. Twentieth Century Fox Film Corp.*, 882 F.2d 656, 659 (2d Cir. 1989) ("[C]riminal contempt sanctions may be imposed only if it is proven beyond a reasonable doubt that the contemnor willfully violated the specific and definite terms of a court

order.").  Should Frank Brija violate the Injunction again, criminal contempt proceedings may be necessary to adequately punish such complete disregard for this Court's authority.  *See id.* at 661.

The Court does not find that monetary coercive sanctions are necessary to coerce compliance from Respondent Roffe.  As counsel for Roffe stated at oral argument, this Court's order directing Roffe to withdraw the TTAB counterclaim is sufficient to effectively bring about compliance.  (*See* July 25, 2025 Hearing Tr. 61:1-5.)[11]

### D.    Attorneys' Fees and Costs

Plaintiff also requests attorneys' fees and costs.  A district court has discretion to award appropriate attorneys' fees and costs to the victim of contempt.  *Weitzman*, 98 F.3d at 719; *Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 147 (2d Cir. 2001).  The Second Circuit has not decided whether a court must find willfulness or bad faith before ordering attorneys' fees as a sanction for violating a court order.  *Jacobs v. Citibank, N.A.*, 318 F. App'x 3, 5 n.3 (2d Cir. 2008) (summary order); *Medina*, 2019 WL 581270, at *26 ("It remains an open question whether a finding of willfulness is required to award fees.").  However, a finding of willfulness strongly supports granting attorneys' fees and costs.  *Weitzman*, 98 F.3d at 719.  "A

---

[11] In addition to sanctions, Plaintiff requests non-monetary injunctive relief, including two injunctive decrees to (1) "forever bar Brija, his agents, or anyone in active concert with him, from filing or further prosecuting any trademark application with the USPTO, or from petitioning the Board (or later challenging the Board's determinations in a federal court) to oppose a trademark application or to cancel a trademark registration, including but not limited to, any of Patsy's Brand's existing trademark registrations or pending applications"; and (2) "forever bar Brija, his agents, or anyone in active concert with him from **using** the term 'PATSY'S,' alone or in conjunction with other words and in whatever form, in connection with sauces or any other packaged food products."  (Pl.'s Mar. Mot. at 24 (emphasis in original)).

The first request for an injunctive decree is new, but this Court rejected the second request in connection with Plaintiff's last motion as "procedurally improper."  *Patsy's Brand, Inc.*, 2021 WL 3418475, at *18 n.11.  The Court denies Plaintiff's requests because they are both overly broad, and the Court, sitting in equity, holds wide discretion to fashion a remedy it deems appropriate to coerce Defendants to comply with the Injunction.  *See Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994) ("Injunctive relief should be narrowly tailored to fit specific legal violations.  Accordingly, an injunction should not impose unnecessary burdens on lawful activity." (citations omitted)); *see also Victorinox AG v. B&F Sys., Inc.*, 709 F. App'x 44, 51 (2d Cir. 2017) (summary order) ("[A]n injunction is overbroad when it seeks to restrain the defendants from engaging in legal conduct, or from engaging in illegal conduct that was not fairly the subject of litigation." (quoting *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 145 (2d Cir. 2011)).

willful contempt is one where the contemnor had actual notice of the court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply." *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, No. 06-CV-85, 2007 WL 2982295, at *4 (S.D.N.Y. Oct. 10, 2007) (Sand, J.) (quoting *Bear U.S.A., Inc. v. Kim*, 71 F. Supp. 2d 237, 249 (S.D.N.Y. 1999) (Kaplan, J.)).

The Court finds that Plaintiff is entitled to attorneys' fees and costs incurred in litigating this motion because Defendants willfully violated the Injunction. *See, e.g.*, *Broker Genius Inc. v. Seat Scouts LLC*, No. 17-CV-8627, 2019 WL 2462333, at *4 & n.3 (S.D.N.Y. June 13, 2019) (Stein, J.). Defendants I.O.B. Realty and Frank Brija had notice of the Injunction, failed to seek to modify or clarify it before filing the two trademark applications that violated Paragraph 4(d), and before petitioning to cancel the PATSY'S PR SINCE 1944 trademark, in violation of Paragraph 4(e), and did not make a good faith effort to comply with the Injunction for the reasons explained above.

Although Respondent Roffe rendered incompetent legal advice, the Court acknowledges that Roffe found himself in a difficult position. When Plaintiff's counsel emailed Roffe a copy of the Injunction on March 1, 2024, the parties had been litigating the petition to cancel on the merits for fourteen months, and notably, Plaintiff's second motion to dismiss the counterclaim had just been denied by the TTAB in February 2024. (MacMull Mar. Decl. ¶ 18; Roffe Opp'n at 5.) Roffe's subsequent actions were thus influenced both by his client's lack of full disclosure and Plaintiff's delay in directing his attention to Paragraph 4(e) of the Injunction. Therefore, Defendants I.O.B. Realty and Frank Brija shall pay the full cost of Plaintiff's total attorneys' fees and costs attributable to the motion to hold Defendants *and* Respondent Roffe in contempt.

## CONCLUSION

For the foregoing reasons, Plaintiff's motions to hold Defendants I.O.B. Realty and Frank

Brija, and Respondents Nezaj, Memishaj, Roffe, and Adem Brija in civil contempt are

GRANTED IN PART and DENIED IN PART:

- By September 5, 2025, Defendants I.O.B. Realty and Frank Brija shall pay the Clerk of Court $300,000 in coercive sanctions.

- Defendants I.O.B. Realty and Frank Brija shall reimburse Plaintiff for the reasonable attorneys' fees and costs that it incurred in bringing the motion to hold Defendants and Respondent Brian Roffe in contempt. Defendants shall pay the full amount of Plaintiff's total attorneys' fees and costs attributable to them and to Respondent Roffe. By August 22, 2025, Plaintiff's counsel shall submit any supplemental documentation of reasonable attorneys' fees and costs that it incurred in this action after October 23, 2024, excising any time spent on the motion to hold Respondents Nexhmije Nezaj, Muharrem Memishaj, and Adem Brija in contempt. (*See* Pl.'s Fees Mem. at 23, ECF No. 516.) Defendants may submit a response by August 29, 2025. If Plaintiff wishes to submit a reply, it must do so by September 5, 2025.

- By September 5, 2025, Defendants I.O.B. Realty and Frank Brija are ORDERED to take all appropriate and necessary actions to comply with this Opinion & Order, including affirmatively abandoning the United States applications for "PATSY'S OF EAST HARLEM," U.S. Serial No. 97749994, and "PATSY'S OF HARLEM," U.S. Serial No. 97757387.

- By September 5, 2025, Defendants I.O.B. Realty and Frank Brija, and Respondent Roffe, are ORDERED to withdraw the counterclaim petitioning to cancel the PATSY'S PR SINCE 1944 trademark, which is pending before the TTAB in Opposition Proceeding No. 9221726.

The Clerk of Court is respectfully directed to close the pending motions at ECF Nos. 397

and 454. All other motions and requests are DENIED.

SO ORDERED.

Dated: New York, New York
      August 15, 2025                 _____*/s/ Kimba M. Wood*_____
                                      KIMBA M. WOOD
                               United States District Judge